```
                                                    USDC SDNY
                                                    DOCUMENT
                                                    ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                        DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                       DATE FILED: May 18, 2015
------------------------------------------------------------X
```

PHOENIX LIGHT SF LIMITED, in its own  :
right and in the right of BLUE HERON  :
FUNDING VI LTD., BLUE HERON           :
FUNDING VII LTD., KLEROS PREFERRED    :
FUNDING V PLC, SILVER ELMS CDO PLC,   :
SILVER ELMS CDO II LIMITED, C-BASS    :
CBO XIV LTD., and C-BASS CBO XVII LTD.,:
and each of BLUE HERON FUNDING VI     :        14-cv-10116 (KBF)
LTD., BLUE HERON FUNDING VII LTD.,    :
KLEROS PREFERRED FUNDING V PLC,       :
SILVER ELMS CDO PLC and SILVER ELMS   :        OPINION & ORDER
CDO II LIMITED, in their own right,   :
                                      :
                    Plaintiffs,       :
                                      :
            -v-                       :
                                      :
U.S. BANK NATIONAL ASSOCIATION and    :
BANK OF AMERICA, NA,                  :
                                      :
                    Defendants.       :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Plaintiffs—foreign entities incorporated under the laws of Ireland and the Cayman Islands—allege that they are assignees of a now-defunct German corporation's claims with regard to certificates in residential mortgage-backed securities ("RMBS") trusts with face value in excess of $510 million. (See Amended Complaint ("Am. Compl.") ¶¶ 3, 22, ECF No. 36.) The certificates are alleged to relate to 34 trusts. (See id. ¶ 1 & Ex. A.) Defendants U.S. Bank National Association and Bank of America, NA—trustees of these 34 trusts—are alleged to have breached their contractual, fiduciary, and statutory duties. (Id. ¶ 8.)

Before this Court is defendants' joint motion to dismiss the Amended Complaint on the basis that, inter alia, plaintiffs lack standing. (ECF No. 49.) For the reasons set forth below, defendants' motion is GRANTED on that basis. Defendants also argue that plaintiffs' statutory and tort claims should be dismissed. The Court declines to resolve the remaining issues at this time, as it will provide plaintiffs with a single opportunity to replead.[1]

I. STANDARD OF REVIEW

Standing is a jurisdictional question properly raised in a motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (quoting APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003)) (internal quotation marks omitted).

II. FACTUAL BACKGROUND[2]

Plaintiffs allege that they obtained their rights as to the RMBS certificates at issue in this action pursuant to an assignment. (Am. Compl. ¶ 22.) Plaintiffs allege that WestLB—a German corporation with its principal place of business in Düsseldorf, Germany—"initially purchased" the RMBS certificates. (Id.) In July

---

[1] If plaintiffs decide to replead within the timeframe set forth at the end of this Opinion & Order, defendants may seek to renew their substantive arguments pursuant to Rule 12(c).

[2] The Court sets forth only those facts that are relevant to the issue of plaintiffs' standing.

2

2012, "WestLB underwent a restructuring, pursuant to which WestLB transferred the majority of its remaining assets to a public winding-up agency known as Erste Abwicklungsanstalt." (Id.) "As a result of the restructuring measures, WestLB discontinued its banking business." (Id.) At some point, plaintiffs allegedly became the "assignees of all rights, title, interest, causes of action and claims regarding securities initially purchased by the assignor." (Id. ¶ 23.) Plaintiffs allege that "[t]he Certificates at issue in this case were severely damaged on or before the day they were transferred to Plaintiffs, and continue to be damaged, in an amount to be proven at trial." (Id.)

Plaintiffs claim to have standing to bring direct claims (Am. Compl. ¶¶ 15-20), and Phoenix Light SF Ltd. ("Phoenix Light") additionally claims to have standing to sue on behalf of its fellow co-plaintiffs and two non-plaintiff entities—C-BASS CBO XIV Ltd. and C-BASS CBO XVII Ltd. (collectively, "C-BASS entities")—because it allegedly "holds more than 50% of the controlling class of notes" issued by them (id. ¶ 24).

III.   DISCUSSION

No plaintiff has adequately pled or established that it has standing to bring this action—either directly or derivatively.

    A.   Direct Claims

Plaintiffs allege that they "bring their claims against Defendants as assignees of claims regarding Certificates that were initially purchased by WestLB." (Am. Compl. ¶ 22.) It is unclear whether plaintiffs (except perhaps Phoenix Light)

3

purchased or otherwise obtained their certificates from WestLB, Erste Abwicklungsanstalt, or some other third party.  It is unclear whether any restrictions were imposed on plaintiffs' rights as to these certificates at the time of transfer—and, if so, what those restrictions were.  It is unclear whether the transfer was made pursuant to German law or some other law—and whether whatever law applied allows the assignment of legal claims.[3]  Finally, it is unclear whether—if the applicable law allows for such an assignment—the documentation here was sufficient to effect one.

Accordingly, at the outset, there are insufficient allegations to support a proper assignment of legal claims as to any or all time periods for the certificates at issue.  Plaintiffs are incorrect that allegations that plaintiffs are current certificateholders that suffered damages as a result of defendants' breaches are sufficient to establish standing as to all claims, past and present.  Standing is a threshold question as to the Court's power to hear the case, Warth v. Seldin, 422 U.S. 490, 498 (1975)—and plaintiffs "must allege facts that affirmatively and

---

[3] Plaintiffs allege that they have standing "pursuant to Section 13-107 of the New York General Obligations Law." (Am. Compl. ¶ 23.)  However, plaintiffs provide no explanation as to why this New York statute applies to a transfer of certificates and/or claims from a German company in Germany to Irish and Cayman companies in Ireland and the Cayman Islands.  In fact, the RMBS purchase agreement between Phoenix Light and WestLB—which plaintiffs have submitted as part of their opposition to the instant motion—provides that it is governed by German law.  (See Declaration of Steven S. Fitzgerald in Support of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Fitzgerald Decl.") Ex. 24 at 112 (§ 8.1) ("This Agreement shall be governed by, and construed in accordance with, the laws of the Federal Republic of Germany, except to the extent that the transfer of any Acquired Underlying Asset forming part of the Portfolio is governed by another mandatory law due to conflict of law rules."), ECF No. 61.)  This distinguishes Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A., 2007 WL 950134, at *6 (S.D.N.Y. Mar. 28, 2007), which plaintiffs cite in their opposition, because in that case, there was "an express New York governing law provision," id.

plausibly suggest that [they have] standing to sue," Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam).  Here, the allegations leave too many questions unanswered.  Plaintiffs may be certificateholders, but what rights they have as certificateholders (and which state's or nation's law governs this issue) remains unclear.  This failure alone provides a basis to dismiss plaintiffs' direct claims.

In any event, materials appropriately reviewed on this 12(b)(1) motion[4]—the Indenture governing plaintiff Blue Heron Funding VII Ltd. (the "Blue Heron VII Indenture") and letters from Phoenix Light's counsel to the indenture trustees—indicate that plaintiffs are contractually barred from directly asserting claims as to the certificates at issue in this action, and that such claims belong to the indenture trustees.

The Blue Heron VII Indenture—which plaintiffs do not dispute is illustrative of the indentures governing other plaintiffs—provides:

> The Issuer [plaintiff] hereby Grants to the Indenture Trustee for the benefit of the Secured Parties, all of its right, title and interest in . . . all Underlying Assets [e.g., the RMBS certificates]. . . . [T]he Issuer does hereby constitute and irrevocably appoint the Indenture Trustee the true and lawful attorney of the Issuer, with full power . . . to exercise all rights of the Issuer . . . and to . . . file any claims or take any action or institute any proceedings which the Indenture Trustee may deem to be necessary or advisable.

---

[4] In connection with standing motions, this Court may consider documents outside the pleadings and make appropriate findings.  See Tandon, 752 F.3d at 243 ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." (quoting APWU, 343 F.3d at 627) (internal quotation marks omitted)).

(Declaration of Jacob S. Kreilkamp in Support of Defendants' Joint Motion to Dismiss ("Kreilkamp Decl.") Ex. 3 (Blue Heron Indenture) at 2-3, ECF No. 51.) Assignment of "all . . . right, title and interest" in the certificates—and the conveyance to the trustee of the "full power" to file actions as it deems necessary or advisable—constitutes a full assignment of the right to commence litigation as well as the discretion as to when any such suit should be brought.  See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 152 (2d Cir. 1995) (under New York law, a contract granting all "rights, title and interest" to another results in a "transfer" of claims).[5]  A full assignment of this type divests plaintiffs of any rights they otherwise may have had to commence litigation on their own behalf.  See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights . . . and leaves the assignor without standing to sue." (citation omitted)).

    The letters that Phoenix Light's counsel sent to the indenture trustees shortly before this case was filed suggest that plaintiffs recognize that they are contractually barred from filing claims.  These letters request that the trustees

---

[5] Plaintiffs argue that "as strangers to the CDO indentures, Defendants have no basis to invoke provisions of those agreements to challenge the right of CDO trust beneficiaries to pursue claims." (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Pls.' Opp.") at 2, ECF No. 60.)  As the Court must independently satisfy itself that plaintiffs have standing to pursue the claims before the Court, the fact that defendants are not parties to the Indentures is irrelevant.  Rajamin v. Deutsche Bank National Trust Co., 757 F.3d 79 (2d Cir. 2014), which plaintiffs cite (see Pls.' Opp. at 13-14), is inapposite because in that case, it was the plaintiffs who sought to assert claims based on contracts to which they were not parties.

assign their claims to Phoenix Light so that Phoenix Light could commence litigation:

> [W]e write to set forth . . . why, as Indenture Trustee for the CDOs, [you] . . . [should] step aside and assign to our client the right to commence litigation on behalf of the CDOs against the trustees . . . of certain residential mortgage-backed security . . . trusts that issued certificates purchased by the CDOs.

and

> [You] should consent to Phoenix Light asserting the subject claims on behalf of the CDOs and assign to Phoenix Light any rights [you have] to pursue such claims.

and

> [Your] broad power to exercise any and all rights with respect to the CDOs' collateral . . . plainly include[s] the power to assign legal claims of the CDOs to another entity. . . . Phoenix Light directs [you] to exercise [this] power to assign to Phoenix Light the claims described above.

(Fitzgerald Decl. Ex. 15 at 2-4; see also id. Exs. 16-17.) This letter suggests that plaintiffs themselves hold the view that the right to commence suit resides with the indenture trustees—and that only by way of assignment (which is not alleged to have occurred) would it vest in plaintiffs.

Accordingly, there is no basis for this Court to find that plaintiffs have standing to bring the instant claims on their own behalf.

    B.    <u>Derivative Claims</u>

Phoenix Light additionally claims to have standing to sue on behalf of its co-plaintiffs and two non-plaintiff C-BASS entities because it allegedly "holds more

than 50% of the controlling class of notes" issued by them.[6]  (Am. Comp. ¶ 24.)  Does Phoenix Light mean that it has sufficient independent interest in the certificates by virtue of its ownership of the other entities that it can assert their claims directly?  Or, does it really mean that it is suing—and may sue—derivatively?  Clarity on this point is required in order to properly assess standing.  In any event, the Amended Complaint must be dismissed under either theory.

To the extent Phoenix Light relies on its ownership of its co-plaintiffs and the C-BASS entities, the law is clear that the mere fact that a company owns a significant part of another does not give it an independent basis to bring suit on the other's behalf.  See Hudson Optical Corp. v. Cabot Safety Corp., No. 97-9046, 1998 WL 642471, at *3 (2d Cir. Mar. 25, 1998) (summary order) (a subsidiary is a "separate corporation," and thus the parent company "has no standing to assert [the subsidiary's] legal rights"); New Castle Siding Co. v. Wolfson, 468 N.Y.S.2d 20, 21 (N.Y. App. Div. 1983) ("Generally, corporations have an existence separate and distinct from that of their shareholders, and an individual shareholder cannot secure a personal recovery for an alleged wrong done to a corporation.  The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of

---

[6] The reason that Phoenix Light elected to assert claims "on behalf of" other entities is unclear: perhaps Phoenix Light initially acquired certain certificates by assignment, but later transferred them to the other entities without retaining specific rights—or perhaps Phoenix Light never acquired these certificates, and relies solely on its ownership interest in the other entities to assert claims as to these certificates.

either that indirect injury or the direct injury to the corporation." (citations omitted)), aff'd, 470 N.E.2d 868 (N.Y. 1984); cf. W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 109 (2d Cir. 2008) ("[Plaintiff's] power-of-attorney is not purported to be a valid assignment and does not confer a legal title to the claims [plaintiff] brings.  While [plaintiff] enjoys the authority to make some decisions concerning litigation, it does not have an ownership stake in any claims its clients might pursue against defendants.").

To the extent that Phoenix Light—or any other plaintiff—seeks to assert derivative claims, it must comply with Rule 23.1 of the Federal Rules of Civil Procedure by alleging "with particularity" either that it demanded that the suit be brought and the demand was wrongfully refused, or that it did not make a demand because doing so would have been futile.  See Fed. R. Civ. P. 23.1(b).  Plaintiffs have done neither.

Plaintiffs argue in their opposition that demand would have been futile because the indenture trustees "have been sued for [alleged] dereliction of their legal duties in lawsuits asserting the very same claims." (Pls.' Opp. at 15.)  To start, plaintiffs have not pled this theory in the Amended Complaint.  In any event, the fact that the indenture trustees may be parties to litigation similar to the instant action does not excuse demand.  See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011) ("[T]here is an important difference between asking the trustee to sue itself . . . and asking it to sue a third party." (citation and internal quotation mark omitted)).  There is no

9

necessary reason why the indenture trustees acting in their fiduciary capacity would affirmatively choose to take (or not take) an action based solely on their own corporate self-interest.

Plaintiffs also contend—pointing to Phoenix Light's letters to the indenture trustees—that they are entitled to bring this action because the indenture trustees "have failed to act following a demand by Plaintiffs to do." (Pls.' Opp. at 16.) Once again, plaintiffs have not pled this theory in the Amended Complaint. In any event, Phoenix Light's letters to the indenture trustees did not demand that the indenture trustees bring suit; rather, the letters asked the indenture trustees to "step aside and assign to [Phoenix Light]" the right to sue defendants. (Fitzgerald Decl. Ex. 15 at 2.)

IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED. Should plaintiffs seek to amend, they must file any proposed amendment—along with a motion pursuant to Rule 15 of the Federal Rules of Civil Procedure—within **21 days** from the date of this Opinion & Order. To allow for careful review of those allegations necessary to state a claim, any proposed Second Amended Complaint shall be not more than **75 pages** in length. (Additional background materials may be in an appendix.)

The Clerk of Court is directed to terminate the motion at ECF No. 49.

SO ORDERED.

Dated:      New York, New York
            May 18, 2015

                                                      _____
                                                         KATHERINE B. FORREST
                                                       United States District Judge