## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
|  |  |
|---|---|
| PHOENIX LIGHT SF DAC, BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC, SILVER ELMS CDO II LIMITED, C-BASS CBO XIV LTD. and C-BASS CBO XVII LTD., <br><br> Plaintiffs, <br><br> -against- <br><br> U.S. BANK NATIONAL ASSOCIATION and BANK OF AMERICA, N.A., <br><br> Defendants. | Case No. 14-cv-10116 (VSB) (DCF) |

------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF U.S. BANK'S
## MOTION FOR SUMMARY JUDGMENT

JONES DAY
David F. Adler
Louis A. Chaiten
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
(216) 586-3939; (216) 579-0212 (fax)
dfadler@jonesday.com
lachaiten@jonesday.com

Michael T. Marcucci
100 High Street, 21st Floor
Boston, Massachusetts  02110-1781
(617) 960-3939; (617) 449-6999 (fax)
mmarcucci@jonesday.com

Albert J. Rota
2727 N. Harwood Street, Suite 500
Dallas, Texas  75201-1515
(214) 220-3939; (214) 969-5100 (fax)
ajrota@jonesday.com

Andrew S. Kleinfeld
250 Vesey Street
New York, New York  10281-1047
(212) 326-3939; (212) 755-7306 (fax)
askleinfeld@jonesday.com

*Attorneys for Defendant U.S. Bank National Association*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

ARGUMENT ....................................................................................................................... 7

I.      PLAINTIFFS LACK STANDING .......................................................................... 7

II.     U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON
        VIRTUALLY ALL OF PLAINTIFFS' PRE-EOD R&W CLAIMS ..................... 8

        A.      U.S. Bank's Loan-Specific Approach to Discovery and Its Notice and
                Enforcement Duties Was Consistent with the Governing Agreements ......... 9

                1.      Discovery or written notice of loan-specific breaches ................. 9

                2.      Notice and enforcement .............................................................. 11

        B.      Plaintiffs' Much Broader View of "Discovery" and Trustee
                Enforcement Obligations Is Wrong ............................................................ 13

                1.      Plaintiffs are wrong about inquiry notice ................................... 13

                2.      Plaintiffs are wrong about U.S. Bank's enforcement
                        obligations ................................................................................. 16

        C.      In All Events, Plaintiffs Have No Evidence of Bad Faith, Which
                Independently Compels Summary Judgment ............................................. 18

III.    U.S. BANK IS ALSO ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' PRE-EOD CLAIMS RELATING TO DOCUMENT
        DEFECTS .............................................................................................................. 20

IV.     U.S. BANK IS LIKEWISE ENTITLED TO SUMMARY JUDGMENT
        ON THE VAST MAJORITY OF PLAINTIFFS' POST-EOD CLAIMS ........... 22

        A.      For 47 Trusts, There Is No Evidence That an EOD Actually
                Occurred ................................................................................................... 22

                1.      There were no EODs for the 30 trusts requiring written notice ... 24

                2.      There were no EODs for the 17 trusts requiring either written
                        notice or actual knowledge ........................................................ 24

i

3.    Plaintiffs cannot hide behind the prevention doctrine to avoid their evidentiary obligations ...................................................................24

4.    Plaintiffs' alternative EOD theories for eight of the 47 trusts are meritless ...............................................................................26

B.    For the Same 47 Trusts, There Is No Evidence that U.S. Bank Had Actual Knowledge or Received Written Notice of an EOD .........................27

1.    For nine trusts, Plaintiffs have no evidence that U.S. Bank received the requisite written notice .........................................27

2.    For 38 trusts, Plaintiffs have no evidence that U.S. Bank had either actual knowledge or written notice of an EOD.........................28

C.    Plaintiffs' Post-EOD Claims Fail for Two Additional Trusts As Well .........................................................................................29

V.    NO-ACTION CLAUSES BAR PLAINTIFFS' CLAIMS AS TO NINE TRUSTS.......................................................................................29

VI.    C-BASS CBO XVII LTD. RELEASED ITS CLAIMS AS TO WMALT 2005-9............30

VII.    THE PSAs FOR 32 TRUSTS BAR THE DAMAGES PLAINTIFFS SEEK ..................31

VIII.    PLAINTIFFS' CLAIMS ON MANY CERTIFICATES ARE TIME-BARRED.............33

CONCLUSION.....................................................................................................35

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amies v. Wesnofske*,
   174 N.E. 436 (N.Y. 1931) ................................................................................25

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*,
   *N.A.*, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) .......................................14, 15

*Bruchman v. Standard Chartered Bank*, *PLC*,
   997 F. Supp. 481 (S.D.N.Y. 1998) ..................................................................18

*Carco Grp., Inc. v. Maconachy*,
   383 F. App'x 73 (2d Cir. 2010) ......................................................................31

*Carco Grp., Inc. v. Maconachy*,
   718 F.3d 72 (2d Cir. 2013) .............................................................................32

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
   738 F. Supp. 2d 450 (S.D.N.Y. 2010) ............................................................18

*Change Healthcare Operations, LLC v. WebMD Health Corp.*,
   2017 WL 6610411 (N.Y. Sup. Ct. Dec. 27, 2017) ..........................................19

*Commerce Bank v. Bank of N.Y. Mellon*,
   35 N.Y.S.3d 63 (N.Y. App. Div. 2016) ....................................................15, 24, 28

*Commerzbank AG v. U.S. Bank, N.A.*,
   277 F. Supp. 3d 483 (S.D.N.Y. 2017) ............................................................30

*Cornejo v. Bell*,
   592 F.3d 121 (2d Cir. 2010) ...........................................................................25

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992) ...........................................................................30

*Eighth Ave. Coach Corp. v. City of New York*,
   35 N.E.2d 907 (N.Y. 1941) .........................................................................14, 17

*Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*,
   838 F.2d 66 (2d Cir. 1988) ..............................................................................4

*Fid. Brokerage Servs., LLC v. Bank of China*,
   192 F. Supp. 2d 173 (S.D.N.Y. 2002) ............................................................18

*Fixed Income Shares: Series M. v. Citibank, N.A.*,
   157 A.D.3d 541 (N.Y. App. Div. 2018) .......................................................15, 25

*Fixed Income Shares: Series M v. Citibank N.A.*,
   2018 WL 1449580 (S.D.N.Y. Mar. 22, 2018) .....................................................12, 13, 19, 34

*Hogan v. Fischer*,
   738 F.3d 509 (2d Cir. 2013)...............................................................................................35

*In re Bankers Tr. Co.*,
   450 F.3d 121 (2d Cir. 2006).................................................................................................25

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   616 F. App'x 442 (2d Cir. 2015) .........................................................................................35

*L-7 Designs, Inc. v. Old Navy, LLC*,
   964 F. Supp. 2d 299 (S.D.N.Y. 2013)...................................................................................18

*McKenna v. Forsyth & Forsyth*,
   720 N.Y.S.2d 654 (N.Y. App. Div. 2001) .............................................................................6

*MMS USA Holdings, Inc. v. PricewaterhouseCoopers LLP*,
   2013 WL 1154932 (N.Y. Sup. Ct. Mar. 19, 2013) ........................................................32, 33

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura
   Credit & Capital Inc.*, 30 N.Y.3d 572 (2017)......................................................................31

*Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.*,
   2006 WL 1720429 (E.D.N.Y. June 21, 2006) .................................................................18, 19

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
   2018 WL 1382105 (S.D.N.Y Mar. 16, 2018) ........................................................................25

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
   2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017)......................................1, 2, 9, 10, 15, 27, 28, 29

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*,
   172 F. Supp. 3d 700 (S.D.N.Y. 2016)....................................................................................1

*PNC Bank, N.A. v. Wolters Kluwer Fin. Servs., Inc.*,
   73 F. Supp. 3d 358 (S.D.N.Y. 2014).....................................................................................31

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013)...................................................................................................35

*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*,
   2013 WL 5328181 (S.D.N.Y. Sept. 23, 2013).......................................................................22

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y.
   Mellon*, 775 F.3d 154 (2d Cir. 2014) .............................................................................1, 4, 9

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)........................................................................1, 10

*Royal Park Invs. SA/NV v. HSBC Bank USA Nat'l Ass'n*,
  2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) ...................................................................10, 14

*Schonfeld v. Hilliard*,
  218 F.3d 164 (2d Cir. 2000)............................................................................................31, 33

*Sterling Fed. Bank, F.S.B. v. Bank of N.Y. Mellon*,
  2012 WL 3101699 (N.D. Ill. July 30, 2012)........................................................................30

*Stuart v. Am. Cyanamid Co.*,
  158 F.3d 622 (2d Cir. 1998)................................................................................................33

*Tradex Europe SPRL v. Conair Corp.*,
  2008 WL 1990464 (S.D.N.Y. May 7, 2008) ........................................................................31

*U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec., Inc.*,
  205 F. Supp. 3d 386 (S.D.N.Y. 2016)..................................................................................10

*Unilever U.S., Inc. v. Johnson Controls, Inc.*,
  2017 WL 622209 (N.D. Ill. Feb. 15, 2017) ........................................................................32

*Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC*,
  651 F. App'x 5 (2d Cir. 2016) ............................................................................................35

*Varga v. McGraw Hill Fin., Inc.*,
  48 N.Y.S.3d 24 (N.Y. App. Div. 2017) ..............................................................................35

*W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*,
  2017 WL 3392856 (Ohio Ct. Com. Pl. Aug. 4, 2017)............................................................1

*W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*,
  2017 WL 3392855 (Ohio Ct. Com. Pl. Aug. 4, 2017)....................................................15, 16

*Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*,
  735 F. Supp. 1205 (S.D.N.Y. 1990)....................................................................................15

## RULES

Fed. R. Civ. P. 12(c) ................................................................................................................24

Fed. R. Civ. P. 15(c)(1)............................................................................................................35

Fed. R. Civ. P. 56.1................................................................................................................4, 8

**STATUTES**

N.Y. C.P.L.R. § 202 ................................................................................................................33

N.Y. C.P.L.R. § 213(2) ..........................................................................................................33

**OTHER AUTHORITIES**

Dan B. Dobbs, Law of Remedies § 12.2(3) (2d ed. 1993) ............................................32

Dan B. Dobbs, Law of Remedies § 12.4(1) (2d ed. 1993) ............................................32

## INTRODUCTION

Litigation against residential mortgage backed securities ("RMBS") trustees has followed a now-predictable pattern. Sophisticated investors generically allege they lost money because the trustee failed to "nose to the source" of alleged problems with the collateral underlying the RMBS. Courts typically allow the cases to proceed to discovery. But in doing so courts uniformly warn that, while generalized allegations might suffice for pleading purposes, plaintiffs will have to prove their claims "loan-by-loan and trust-by-trust."[1] Put to that test, plaintiffs have not fared well. In the only RMBS trustee case to proceed to trial, prosecuted by Plaintiffs' counsel, the court found "no merit in any of the claims of the plaintiffs." *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, 2017 WL 3392856, at *1-2 (Ohio Ct. Com. Pl. Aug. 4, 2017). In the first case in this district to proceed to summary judgment, Judge Caproni granted summary judgment against Plaintiffs on nearly all claims because Plaintiffs could not "prove that they have evidence to support their claims 'loan-by-loan and trust-by-trust.'" *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951, at *9 (S.D.N.Y. Sept. 7, 2017) ("*Phoenix Light v. BNYM*") (quoting *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*Policemen's v. BNYM*")). The claims here are cut from the same cloth. Plaintiffs have taken discovery for a year and a half, yet have no triable issues.

*Standing*. As an initial matter, Plaintiffs are in the peculiar position of trying to litigate claims they do not hold. To be sure, they alleged that they were assigned the right to bring this litigation, and Judge Forrest deferred adjudicating the validity of those assignments until

---

[1] *E.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) ("*Royal Park v. Deutsche Bank*") ("Defendant correctly notes that, to prevail on its claims, Plaintiff must demonstrate such breach on a 'loan-by-loan and trust-by-trust' basis. This, however, is not a pleading standard."); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016) ("To prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a 'loan-by-loan and trust-by-trust basis.' But this is not a pleading requirement.").

summary judgment. But the undisputed evidence demonstrates that the assignments are self-negating, champertous, and ineffectual, thus leaving Plaintiffs without standing.

*Pre-Event of Default ("EOD") Representation & Warranty ("R&W") claims.* Even if Plaintiffs have standing, the vast majority of their claims fail on the merits, beginning with their pre-EOD R&W claims. Plaintiffs allege that U.S. Bank discovered material breaches of R&Ws made by sellers and originators but failed to provide notice to deal parties and enforce the warrantors' repurchase obligations. While these kinds of allegations of "generalized knowledge of breaches may be sufficient at the pleadings stage," courts have been clear that, "[a]t summary judgment, Plaintiffs must prove that they have evidence to support their claims loan-by-loan and trust-by-trust." *Phoenix Light v. BNYM*, 2017 WL 3973951, at *8, 9. After a year and a half of discovery, that loan-specific evidence has failed to materialize. Lack of standing aside, Plaintiffs may have a triable pre-EOD claim with respect to 309 out of the roughly 200,000 loans backing these trusts. In every other instance, U.S. Bank either never learned of a loan-specific breach or it gave any required notice and took any required enforcement action. In all events, for Plaintiffs to survive summary judgment on these claims, Plaintiffs must show not just that U.S. Bank's interpretation of its duties violated the agreements, but that it was so unreasonable and dishonest as to constitute bad faith. That is an insurmountable barrier. U.S. Bank complied with the contracts, but even if it somehow strayed, Plaintiffs have no evidence of bad faith.

*Pre-EOD document-defect claims.* Plaintiffs' document-defect claims should meet the same fate. Plaintiffs allege that U.S. Bank learned of document defects (a missing or defective mortgage note, assignment, title insurance, or the like) around the time the trusts closed yet failed to take action. But U.S. Bank did not have the duties alleged, did not and could not know whether a particular document issue was material, was not trustee for many of the trusts when

any document duties arose, and, in any event, cannot be held liable under New York's statute of limitations for duties breached, if at all, long ago.

*Post-EOD claims.*  U.S. Bank is likewise entitled to summary judgment on Plaintiffs' post-EOD claims as to all but four trusts.  Plaintiffs claim that U.S. Bank breached post-EOD prudent-person duties.  But to trigger those duties, Plaintiffs must produce evidence that (i) a contractually defined EOD occurred *and* (ii) U.S. Bank had actual knowledge or received written notice of it.  For 47 trusts, that evidence is non-existent on both prongs.  For two additional trusts, U.S. Bank did not have prudent-person obligations for other reasons.

*No-action clauses.*  All of Plaintiffs' claims as to nine trusts fail for the independent reason that Plaintiffs failed to comply with the governing agreements' no-action clauses.  Those clauses prohibit Plaintiffs from suing unless they provide written notice of an EOD to a specified party, assemble a specified percentage of holders, demand that a specified deal party sue, and offer indemnification for the suit.  Plaintiffs have no evidence they complied with the clauses, and, for nine of the trusts, no triable issue as to whether that failure is excused.

*Released claims.*  Plaintiff C-BASS XVII has no claims regarding WMALT 2005-9 because they were released as part of a settlement in another case.

*Damages.*  For 32 trusts, Plaintiffs cannot recover the damages they seek—investment losses—because those damages are consequential rather than direct, and the agreements for those trusts expressly preclude trustee liability for consequential damages.

*Statute of limitations.*  Many claims are untimely.  The first complaint Plaintiffs had standing to file (assuming they ever had standing) was filed July 2, 2015.  Claims older than July 2, 2009—which are many—are time-barred under New York's six-year limitations period.

The Court should grant U.S. Bank's motion for summary judgment.

## BACKGROUND

This case concerns U.S. Bank's role as RMBS trustee of 53 RMBS securitization trusts. Stmnt. ¶ 2.[2]  An RMBS securitization involves bundling together mortgage loans and selling interests in the resulting revenue streams to investors.  *See Policemen's v. BNYM*, 775 F.3d at 156.  An originator makes mortgage loans to borrowers.  Stmnt. ¶ 1.1.  A sponsor then pools the mortgage loans together and sells them to a depositor, which in turn sells the loans to a trust pursuant to a Pooling and Servicing Agreement ("PSA").  *Id.* ¶¶ 1.1-1.4.  The trust then issues securities or "certificates."  *Id.* ¶ 1.4.  After an underwriter sells the securities to investors, a servicer, sometimes overseen by a master servicer, collects payments on the underlying mortgage loans and sends the funds to a trustee, which passes on the payments to investors.  *Id.* ¶ 1.5.

Notwithstanding the misnomer "trustee," an RMBS trustee's duties bear no resemblance to those of a common-law trustee.  Instead, as Judge Forrest confirmed earlier in this case, U.S. Bank's duties are strictly limited to those specifically set forth in the PSAs.  Order at 5, ECF No. 105; *see Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (duties "strictly defined and limited to the terms of" the governing agreements).  The PSAs "expressly disclaim any implied obligations," Order at 21, ECF No. 105; Stmnt. ¶¶ 8, 13.  They provide that U.S. Bank's duties must be "determined solely by the express provisions of th[e] Agreement," and include "only such duties as are *specifically* set forth in th[e] Agreement." Stmnt. ¶ 8.  They state that U.S. Bank's rights shall not be construed as duties, *id.* ¶ 12.  And, of particular importance, they declare that, before a contractually defined EOD, U.S. Bank "shall not be bound to make any investigation" absent direction and indemnification by holders.  *Id.*

---

[2] "Stmnt." in this brief refers to U.S. Bank's Separate Statement of Undisputed Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York, submitted herewith.  "Exhibit" or "Ex." refers to the Exhibits to the Declaration of Michael T. Marcucci in Support of U.S. Bank's Motion, submitted herewith.

¶ 10.  Indeed, at all times, U.S. Bank may "conclusively rely" on the truth of statements and correctness of opinions in documents furnished to it.  *Id.* ¶ 14.  And in all events, even if U.S. Bank violates the agreements, it is protected from liability unless it has failed to act in good faith—*i.e.*, acts in bad faith.  *Id.* ¶ 15.

Claiming that U.S. Bank breached its limited duties, Plaintiffs—Phoenix Light, a special-purpose investment vehicle created to hold another company's distressed assets, and seven CDOs formed to issue notes backed by RMBS certificates—sued U.S. Bank in December 2014. Stmnt. ¶ 19; ECF No. 1.  These shell-entity Plaintiffs claim that they acquired RMBS certificates in the 53 trusts at issue between 2005 and 2009.  Third Am. Compl. ("TAC") ¶ 21 & Ex. B. Whatever Plaintiffs acquired, they assigned away their certificates and any right to bring claims on the certificates to the CDO trusts' indenture trustees.  Stmnt. ¶ 26, 28-30.  Because Plaintiffs divested themselves of any right to sue, Judge Forrest dismissed their claims for lack of standing. ECF No. 71 at 6.  Afterwards, Plaintiffs convinced the respective trustees to enter into agreements purporting to assign the litigation rights back to Plaintiffs.  Stmnt. ¶ 37-40.  With these supposed assignments-back in hand, Plaintiffs filed their Second Amended Complaint on July 2, 2015, asserting numerous statutory and common-law claims against U.S. Bank.  *See* ECF No. 77.  Following U.S. Bank's motion to dismiss and the filing of the TAC, all that remains are Plaintiffs' breach-of-contract claims.  *See* ECF No. 105 at 24.

Plaintiffs claim that U.S. Bank breached its obligations in two general ways.

*First*, Plaintiffs say U.S. Bank breached its pre-EOD duties.  One pre-EOD theory relates to R&Ws made by sponsors and originators (sometimes referred to as "warrantors").  Plaintiffs claim that warrantors breached their R&Ws regarding the underlying loans and that each breach "materially and adversely affect[ed]" the loan's value or certificateholders' interests (a "Material

R&W Breach").  According to Plaintiffs, U.S. Bank discovered Material R&W Breaches and thus should have given notice of those breaches and tried to enforce warrantors' obligations "including through litigation."  TAC ¶ 62, 164(e); Ex. 97 (Resp. to Interrog. No. 16.).  To prevail on this claim, Plaintiffs must first prove on a loan-by-loan basis a Material R&W Breach.  Stmnt. ¶ 61-65.  Plaintiffs next must show that U.S. Bank learned of each loan-specific breach, because any notice and enforcement duties arise only upon U.S. Bank's "discovery" or receipt of written notice of a breach as to a particular loan.  *Id.*  Plaintiffs then must show that U.S. Bank failed to fulfill these duties, which for claims that U.S. Bank should have litigated requires showing that U.S. Bank was directed and indemnified to do so.  *See id.* ¶¶ 81-82, 85-86.  Layered on top of all this, even if Plaintiffs prove that U.S. Bank violated the PSAs, Plaintiffs must show that U.S. Bank's reading of the PSAs was so unreasonable as to amount to bad faith.  *See id.* ¶ 84.

Plaintiffs' other pre-EOD theory relates to U.S. Bank's purported duties concerning missing or materially defective documents in the Mortgage File ("document defects").  These duties arose, if at all, around the time the trusts closed.  *Id.* ¶ 123.  Plaintiffs claim that U.S. Bank knew about document defects and should have forced warrantors to cure them and repurchase or replace the loan if they did not.  TAC ¶ 112-14, 164(a).  To prevail on this claim, as with their R&W claims, Plaintiffs must show U.S. Bank knew about the document defects for a particular loan yet failed to give notice or take the necessary enforcement action.

If Plaintiffs clear these hurdles as to their pre-EOD claims, they still must prove that U.S. Bank's failure to give notice or to enforce repurchase obligations proximately caused them harm. This requires showing either that (a) the repurchase demand would have caused the warrantor to repurchase or replace the loan, or (b) if the warrantor refused to repurchase or replace the loan, a lawsuit would have succeeded and U.S. Bank would have collected on any damages awarded.

*McKenna v. Forsyth & Forsyth*, 720 N.Y.S.2d 654, 657-58 (N.Y. App. Div. 2001); *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, 2017 WL 3392855, at *13 (Ohio Ct. Com. Pl. Aug. 4, 2017).

*Second*, Plaintiffs separately assert that for each trust an EOD triggered U.S. Bank's duty to act as a prudent person, a duty that Plaintiffs interpret to mean investigating and finding R&W breaches and taking other actions ("post-EOD Claims").  TAC ¶¶ 65, 109; Ex. 97 (Resp. to Interrog. No. 17).  Plaintiffs allege that a variety of EODs occurred.  *See id.*  The first kind of EOD is based on servicer or master servicer breaches.  These EODs require Plaintiffs to prove that (i) a servicer or master servicer materially breached its duties under the PSAs, (ii) any of several designated deal parties gave the servicer or master servicer written notice of the material breach, and (iii) the servicer or master servicer failed to cure within a specified period.  Plaintiffs also assert that EODs occurred based on cumulative loss triggers, servicer or master servicer downgrades, and servicer or master servicer receiverships.  Ex. 97 (Resp. to Interrog. No. 17).  Claims based on these EODs require Plaintiffs to prove the predicate facts triggering these EODs—for example, that the servicer was in receivership for the requisite time period.  *See* Stmnt. ¶ 151.  For all of their post-EOD claims, to prevail, Plaintiffs must also show that U.S. Bank or a contractually defined Responsible Officer received written notice or had actual knowledge of the particular EOD.  *Id.* ¶ 152-54.

## ARGUMENT

### I.      PLAINTIFFS LACK STANDING.

All of Plaintiffs' claims falter at the starting gate for a most fundamental reason: Plaintiffs lack standing.  Plaintiffs are shell entities that hold no legal claims or other assets.  They assigned all "right, title, and interest" in the certificates, including any legal claims, to indenture trustees.  Stmt. ¶ 26, 28-30.  Judge Forrest twice held that these granting clauses "divest[ed] plaintiffs of any rights they otherwise may have had to commence litigation"

regarding the trusts.  ECF No. 71 at 6; ECF No. 105 at 14-15.  So Plaintiffs cajoled the respective trustees into signing agreements that purport to assign litigation rights back to Plaintiffs, and Judge Forrest deferred adjudicating the validity of those assignments until summary judgment.  Summary judgment is at hand.  And, as explained in our Rule 56.1 Statement and Defendant Bank of America's concurrently filed Memorandum of Law (we will not burden the Court with duplicative legal argument), the undisputed evidence demonstrates that those supposed assignments-back are self-negating, champertous, and ineffectual.  Stmnt. ¶¶ 31-48; Bank of Am.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 242, at 12-16 (Mar. 30, 2018).  The inescapable conclusion is that Plaintiffs lack standing and the Court should grant summary judgment as to all claims.

There is an additional trust-specific reason why Plaintiffs lack standing as to three trusts—CBASS 2005-CB3, MABS 2005-NC1, and WMALT 2005-6—regardless of how the Court decides the assignment-back issue.  Plaintiffs have produced no evidence that they *ever* owned certificates in these three trusts.  Plaintiffs claim they acquired certificates via "Forward Sales Agreements."  Stmnt. ¶ 49.  But those agreements say nothing about these certificates.  The unidentified certificates "to be sold under" the Forward Sales Agreements are supposedly those specified in non-existent exhibits that Plaintiffs concede "were never prepared."  Ex. 30 at 2. Plaintiffs thus have no evidence that they acquired certificates in these three trusts in the first instance, rendering all claims concerning them subject to summary judgment.

## II.    U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON VIRTUALLY ALL OF PLAINTIFFS' PRE-EOD R&W CLAIMS.

Even if Plaintiffs have standing, U.S. Bank is entitled to summary judgment on the vast majority of Plaintiffs' claims, starting with their pre-EOD R&W claims.  Plaintiffs generally allege that U.S. Bank violated the governing agreements by discovering material breaches of

R&Ws but failing to provide the required notice and to enforce repurchase obligations.

Generalized allegations might be enough to survive a motion to dismiss in these cases, but not a

motion for summary judgment.  Plaintiffs must produce evidence that U.S. Bank learned of

specific breaches regarding specific loans—"loan-by-loan."  *Phoenix Light v. BNYM*, 2017 WL

3973951, at *8, 9.  Measured by this standard, Plaintiffs may have a triable pre-EOD R&W

claim with respect to 309 out of the roughly 200,000 loans backing the trusts.  Ex. 35.  In any

event, Plaintiffs further must show that U.S. Bank's approach not only violated the agreements,

but was so unreasonable and dishonest as to constitute bad faith.  And the evidence of U.S.

Bank's good faith is overwhelming, while the evidence of bad faith is non-existent.

### A.      U.S. Bank's Loan-Specific Approach to Discovery and its Notice and Enforcement Duties Was Consistent with the Governing Agreements.

The undisputed evidence demonstrates that U.S. Bank's pre-EOD approach to breaches

of R&Ws was entirely consistent with the governing agreements.  Where U.S. Bank learned of a

specific Material R&W Breach as to a specific loan, in virtually all cases it provided notice to the

deal parties specified in the governing agreements.  Where the governing agreement imposed

enforcement obligations on U.S. Bank (not all did), it fulfilled them by demanding repurchase.

Where the warrantor disputed the claim, U.S. Bank awaited direction and indemnity before

taking actions, like litigation, that would have been expensive and that were not specifically

required by the agreements.  And where U.S. Bank was directed to take those actions and

indemnified, it promptly did so.

### 1.      Discovery or written notice of loan-specific breaches.

U.S. Bank correctly read the agreements not to impose any notice or enforcement duties

regarding R&W breaches unless it discovered or received written notice of *specific* breaches as

to *specific* loans.  *See* Stmnt. ¶¶ 62-64.  The case law overwhelmingly supports that approach.

9

The Second Circuit has held that these kinds of claims against RMBS trustees require loan-specific proof. *Policemen's v. BNYM*, 775 F.3d at 162. Multiple judges in this district have held that, at summary judgment, plaintiffs' proof must be loan-specific. *Phoenix v. BNYM*, 2017 WL 3973951, at *7-8 (requiring "loan-by-loan and trust-by-trust" proof of "a specific breach" and trustee's "knowledge of [the] breach"); *Royal Park v. Deutsche Bank*, 2016 WL 439020, at *6 (same). Judge Caproni's decision in *Phoenix Light v. BNYM* is particularly instructive. She granted summary judgment on this very ground against many of these same Plaintiffs raising the same claims under the same kinds of agreements. She held that "plaintiffs cannot rely on generalized proof," but rather must present "loan- or Trust-specific proof relative to [the trustee]'s knowledge of any breach." *Phoenix Light v. BNYM*, 2017 WL 3973951, at *8. The plaintiffs' failure to offer that proof was "fatal to their claims" there, as it is here. *Id.*

The governing agreements require knowledge of specific breaches as to specific loans because the remedies Plaintiffs say U.S. Bank should have pursued are themselves loan-specific. "The [contractual] repurchase remedy . . . rests on the ability of an RMBS trustee to undertake defined, concrete measures" as "to a specific defect, in a specific loan." *Royal Park Invs. SA/NV v. HSBC Bank USA Nat'l Ass'n*, 2017 WL 945099, at *6 (S.D.N.Y. Mar. 10, 2017) ("*Royal Park v. HSBC*"). For example, U.S. Bank could not enforce a seller's duty to "repurchase the affected Mortgage Loan" (the breaching loan) "at the Purchase Price" without loan-specific knowledge. *See, e.g.*, Ex. 3 § 2.03; *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec., Inc.*, 205 F. Supp. 3d 386, 424 (S.D.N.Y. 2016) ("Section 2.03 provides for a loan-specific repurchase remedy" that "appl[ies] to breaches on an individualized loan-by-loan basis."). "Taken together, these breach and remedy provisions make clear that breaches must be discovered (and remedied) relative to the particular mortgage loans in breach." *Phoenix Light v. BNYM*, 2017 WL 3973951, at *8.

U.S. Bank can learn of a loan-specific breach in only two ways—perform its own investigation or learn of it from someone else. Stmnt. ¶ 63. The agreements are clear that U.S. Bank *has no duty to investigate* unless directed and indemnified by a certain percentage of investors. *Id.* ¶¶ 10, 64. That leaves being told about loan-specific breaches by an investor who has done an investigation or by another party that has more information than U.S. Bank. Having no obligation to investigate, U.S. Bank properly awaited receiving such loan-specific information from other parties or investors before acting. *Id.* ¶ 64.

Measured against these standards, Plaintiffs have no evidence that U.S. Bank discovered or received written notice of an R&W breach as to the vast majority of loans at issue—indeed, all loans except those identified in Exhibit 36. Stmnt. ¶ 68. For five trusts—Bayview 2006-B, CBASS 2005-CB3, CMALT 2006-A7, WMABS 2006-HE1, WMALT 2005-9—Plaintiffs have no evidence U.S. Bank discovered or received written notice of an R&W breach for *any* loan.

## 2.     Notice and enforcement.

Where U.S. Bank was told about a loan-specific R&W breach, the record shows it satisfied any notice and enforcement duties in almost all cases. There is no dispute that U.S. Bank gave notice to the PSA-designated parties for all of the loans listed in Exhibit 36, thus satisfying any notice obligation. Stmnt. ¶ 68. That leaves a potentially triable issue with respect to 309 loans for which U.S. Bank received notice of a loan-specific breach but for which (for whatever reason) there is no record of notice to the PSA-designated parties. Ex. 35.

U.S. Bank likewise complied with any enforcement duties. For 26 trusts, U.S. Bank has no duty to enforce other deal parties' obligations to repurchase loans due to R&W breaches. For five of these, the servicer is the party with the duty to enforce. Stmnt. ¶ 73. As to 15 others, the PSA is silent as to the party with the duty to enforce, and because the trustee's duties are limited to those explicit in the agreement, *id.* ¶ 74, the trustee has no enforcement duty. For the last six

11

trusts, the trustee has a duty to enforce, but only after receiving written notice from certain deal parties that the obligated party failed to cure, substitute, or repurchase.  Stmnt. ¶ 75.  For these six trusts, there is no evidence that U.S. Bank ever received that written notice.  *Id.* ¶ 90.

For trusts in which U.S. Bank arguably does have an enforcement duty and received notice of a loan-specific R&W breach, there is no triable issue about U.S. Bank's compliance with those duties—at least for all but 309 loans with respect to which we are not moving for summary judgment.  Stmnt. ¶ 127; Ex. 35.  U.S. Bank fulfilled its enforcement obligations by demanding repurchase.  Stmnt. ¶ 98.  It was not required to take further and potentially expensive actions not specifically required by the agreements.  Stmnt. ¶¶ 97, 99.  In particular, where the warrantor responded with a document disputing the existence or materiality of a breach, U.S. Bank could not, and under the express terms of the governing agreements was not required to, resolve the dispute.  *Id.* ¶¶ 98, 101-105.  It was expressly permitted to accept the document contesting the existence or materiality of the breach as true.  Stmnt. ¶¶ 14, 86, 101.  It therefore had no further enforcement obligations unless and until it was directed by certificateholders to do more and indemnified for costs.  *Id.* ¶¶ 81-82, 85-86.  Where holders directed U.S. Bank to do more, including litigate, it did so.  Stmnt. ¶ 91.

For three trusts, U.S. Bank had no enforcement obligations for the additional reason that the warrantor(s) had entered into either bankruptcy or receivership, and U.S. Bank either filed proofs of claim or was not yet trustee.  An RMBS trustee has no obligation to enforce repurchase obligations where the trustee is "precluded from taking any meaningful action as trustee by virtue of the fact that [warrantors] had filed for bankruptcy."  *Fixed Income Shares: Series M v. Citibank N.A.*, 2018 WL 1449580, at *4 (S.D.N.Y. Mar. 22, 2018) (granting trustee summary judgment).  That is indisputably the case here for WAMU 2006-AR17.  Both warrantors for that

trust entered receivership in 2008, Stmnt. ¶¶ 95.1, 95.2, and U.S. Bank became trustee over two

years *after* the deadline for filing claims against the warrantors in receivership, *id.* ¶¶ 95.3, 95.4.

To the extent Plaintiffs say that U.S. Bank breached by failing to do more before the bankruptcy

deadline, those claims would be time-barred, because they would be "predicated on actions that

[the trustee] allegedly could have or should have taken *before*" 2008. *Fixed Income*, 2018 WL

1449580, at * 6.  Likewise, for CBASS 2005-CB3 and CBASS 2006-CB2, the sole warrantor

and obligated repurchase party filed for bankruptcy in 2010, Stmnt. ¶¶ 96.1, 96.2, and proofs of

claim were due by January 31, 2011, *id.* ¶ 96.2.  U.S. Bank filed a proof of claim for both trusts,

*id.* ¶ 96.3, 96.4, so there is no triable issue as to any loan included in the proof of claim.

Plaintiffs' enforcement claims fail as to several loans for the additional and obvious

reason that, for these loans, U.S. Bank received a notice that the loans would be repurchased, or

were actually repurchased, shortly after the trusts closed.  Ex. 40 (Chart 15A) ; Stmnt. ¶ 100.

In sum, there is no triable pre-EOD R&W claim with respect to virtually all of the loans

at issue.  Where U.S. Bank learned of a specific Material R&W Breach as to a specific loan, it

provided notice to the PSA-designated deal parties and took any required enforcement action.

For disputed claims of material breach, where U.S. Bank was directed and indemnified to take

further action, including to litigate, it promptly did so.

### B.   Plaintiffs' Much Broader View of "Discovery" And Trustee Enforcement Obligations is Wrong.

Plaintiffs will assert that U.S. Bank (i) had inquiry notice of, and thus "discovered," all

supposed R&W breaches and (ii) had broader enforcement duties than U.S. Bank believed.  But

Plaintiffs are wrong on both counts.

### 1.   Plaintiffs are wrong about inquiry notice.

Seeking a way to enlarge the universe of loans at issue and their hoped-for payday,

Plaintiffs have a theory—that constructive knowledge or inquiry notice based on generalized information is enough to show "discovery."  They claim that publicly available information about problems in the industry and sponsors' and originators' "pervasive" breaches in other trusts "provided the 'scent' of a problem with the loans" here.  TAC ¶¶ 88, 89.  And they insist U.S. Bank had "to nose to the source" and "investigate" those suspected breaches.  *Id.* ¶¶ 88, 100, 164.  Nothing could be further from the truth.

The agreements squarely foreclose this standard.  They provide, in no uncertain terms, that "[p]rior to the occurrence of a Servicer Event of Default . . . , the Trustee *shall not be bound to make any investigation* . . . , unless requested in writing to do so by the Holders of Certificates" representing a specific percentage of the voting rights.  *See, e.g.*, Ex. 30 § 8.02(iv) (WMALT 2007-OA2).  Reading the agreement "as a whole," *Eighth Ave. Coach Corp. v. City of New York*, 35 N.E.2d 907, 909 (N.Y. 1941), as the Court must, "discovery" simply cannot require the trustee to investigate suspected breaches.  An agreement that expressly disclaims a trustee duty to investigate is self-evidently incompatible with a trustee duty to inquire.  *See BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, 2017 WL 3610511, at *9 (S.D.N.Y. Aug. 21, 2017) ("*Blackrock v. Wells Fargo*") ("[B]ecause Defendant cannot be required to investigate under the parties' contracts, Defendant cannot be held liable for breach on the basis of constructive knowledge.").  In urging an inquiry-notice standard, Plaintiffs seek to rewrite the PSAs to impose duties for which the parties did not bargain.  *Royal Park v. HSBC*, 2017 WL 945099, at *7 ("Equating 'discovery' with constructive knowledge is also inconsistent with the bargained-for terms of the PSAs.").

Indeed, even if the "discovery" and "no investigation" clauses, taken together, were somehow ambiguous as to the trustee's obligations, that ambiguity must be resolved in U.S.

Bank's favor.  The PSAs include their own built-in canon of construction, limiting the trustee's duties to only those duties that are "*express[ly]*" and "*specifically*" set forth in the agreements. Stmnt. ¶ 8, 13; *see Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1217 (S.D.N.Y. 1990) ("prophylactic rules of construction" in contracts are "enforceable").  By any measure of specificity, the discovery and no-investigation clauses cannot be reconciled in a way that *specifically and expressly* requires U.S. Bank to inquire into suspected breaches.  U.S. Bank thus did not have, and never thought it had, such a duty.

Unsurprisingly, Plaintiffs' sweepingly broad interpretation of "discovery" has received a cold judicial reception.  Courts in this district have held that "'discovery' requires more than inquiry notice" and that RMBS trustees "cannot be held liable . . . on the basis of constructive knowledge." *BlackRock v. Wells Fargo*, 2017 WL 3610511, at *9.  The First Department has held that an RMBS trustee "does not have a duty to nose to the source." *Commerce Bank v. Bank of N.Y. Mellon*, 35 N.Y.S.3d 63, 65 (N.Y. App. Div. 2016).  And in the only RMBS trustee case to have gone to trial, where Plaintiffs' counsel asserted the same theories they espouse here, the court found that "it is not enough that a party 'should know that [a] breach has occurred.'" *W. & S. v. BNYM*, 2017 WL 3392855, at *9.

At any rate, the trigger for "discovery" must be *loan-specific.  See supra* at 1, 10.  Thus, decisions suggesting that "discovery" might mean something less than "actual knowledge" are not contrary to U.S. Bank's approach. *See Phoenix Light v. BNYM*, 2017 WL 3973951; *Blackrock v. Wells Fargo*, 2017 WL 3610511, at *10; *Fixed Income Shares: Series M. v. Citibank, N.A.*, 157 A.D.3d 541, 542 (N.Y. App. Div. 2018).  The trustee needs to be told about a specific material breach.  The trustee might not have actual knowledge that there truly is a breach that truly is material; it can assume that the asserted material breach is a material breach without

15

actually knowing itself whether that is the case.  But in all events, it needs to be told of a specific material breach in order to act.  Thus, generalized information—things like "[m]edia reports, poor loan performance, government investigations, and other publicly available information"— "do[es] not provide a basis for discovery of a loan-specific breach."  *W. & S. v. BNYM*, 2017 WL 3392855, at *11.

By contrast, loan-specific information stating that there were specific material breaches, in virtually all cases, led U.S. Bank to issue the PSA-specified notice and take any necessary enforcement action.  In full candor, for an additional group of self-titled "Potential Breach Notices," which collectively relate to 158 loans, Stmnt. ¶ 70, U.S. Bank responded by explaining that it needed more:  "To the extent you have knowledge of an actual breach of a representation and warranty under the Agreement, please respond back to the Trustee specifying the document, applicable section reference and the party responsible for curing the breach or repurchasing the mortgage loan."  *Id*.  Because these notices did not purport to identify actual breaches, they did not amount to discovery.  If discovery requires something less, Plaintiffs might have a triable issue as to them.  Either way, the universe of loans surviving summary judgment would be a miniscule fraction of the loans upon which Plaintiffs have sued.

### 2.    Plaintiffs are wrong about U.S. Bank's enforcement obligations.

Plaintiffs will further contend that "shall enforce" requires U.S. Bank to take further action at all costs up to and including litigation—regardless of whether and on what basis the warrantor disputes the claim and whether certificateholders direct and indemnify U.S. Bank.  Ex. 97 (Resp. to Interrog. No. 16).  Plaintiffs' position again finds no support in the agreements.

Even where the agreements provide that U.S. Bank "shall enforce" repurchase obligations, where the warrantor rejects the repurchase demand, the agreements allow U.S. Bank to await direction and indemnity before taking actions, like litigation, that are expensive and not

16

expressly required by the agreements.  To determine what "shall enforce" requires, once again the "contract must be read as a whole," *Eighth Ave. Coach*, 35 N.E.2d at 909, and any ambiguity as to whether the trustee has a duty must be resolved against finding a duty, Stmnt. ¶ 8, 13 (trustee has only those duties "express[ly]" and "specifically" set forth in the agreements).

No provision specifically requires the trustee to take further enforcement action.  And several related provisions make clear that the trustee need not continue to enforce, much less litigate, disputed claims absent direction and indemnity.  The agreements say that, when the trustee receives a document—such as a document from a warrantor disputing either that a breach occurred or that it is material—the trustee may conclusively rely on its correctness.  Stmnt. ¶ 14. The agreements say that the trustee has no obligation to investigate such a document to determine who is right.  Stmnt. ¶ 10.  The agreements say that the trustee is not required to "institute, conduct or defend any litigation . . . at the request, order or direction of any of the Certificateholders" unless adequately indemnified.  Stmnt. ¶ 81-82.  And the agreements say that, while the trustee might have a right to file suit, rights cannot be construed as duties.  Stmnt. ¶ 12.  Read as a whole, these provisions allow a trustee to await direction and indemnification before continuing to enforce, including through litigation or other expensive actions.  At a minimum, they do not *unambiguously* require U.S. Bank to take further steps absent direction and indemnity, which, under the bargained-for ground rules for interpreting U.S. Bank's duties, means U.S. Bank has no such duty.

This makes perfect sense.  When a warrantor disputes that a breach occurred or the materiality of it, the trustee is in no position to resolve that dispute.  *See* Stmnt. ¶ 98, 101-05. And it is expensive to do so, and even more expensive to sue—expenses ultimately borne by investors.  Investors therefore will have different perspectives on further enforcement.  Stmnt.

17

¶ 87-88.  The agreements thus sensibly leave to others the decision whether the trustee should take steps not specified in the agreements, like resolving the existence and materiality of disputed pre-EOD R&W claims and deciding when to sue.  *Id.* ¶ 64, 83.

      **C.**      **In All Events, Plaintiffs Have No Evidence of Bad Faith, Which Independently Compels Summary Judgment.**

Even if U.S. Bank's approach to discovery, notice, and enforcement somehow deviated from the agreements, that would not help Plaintiffs avoid summary judgment.  The agreements provide that U.S. Bank cannot be "liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized."  Stmnt. ¶ 15, 84.  To survive summary judgment, then, Plaintiffs must have evidence not just that U.S. Bank breached its duties, but that its interpretation of the agreements was so unreasonable and dishonest as to constitute bad faith. *See L-7 Designs, Inc. v. Old Navy, LLC,* 964 F. Supp. 2d 299, 307-08 (S.D.N.Y. 2013) ("good faith requires 'honesty in fact'").  Courts have regularly granted summary judgment on good-faith grounds,[3] including in favor of U.S. Bank as trustee, *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 473 (S.D.N.Y. 2010).

There is nothing close to a triable issue here.  For reasons explained above, U.S. Bank's approach—to require information regarding a specific Material R&W Breach to trigger notice duties, to demand repurchase where required, and to await direction and indemnity before taking

---

[3] *See, e.g.*, *L-7 Designs, Inc.*, 964 F. Supp. 2d at 307-08 (granting summary judgment on good faith); *Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.*, 2006 WL 1720429, at *6, 8 (E.D.N.Y. June 21, 2006) (granting summary judgment to defendant on bad-faith claim where its reading of an "ambiguous" term was "reasonable"); *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 181-82 (S.D.N.Y. 2002) (granting summary judgment where the defendant "presented evidence to support its good faith belief" that it was acting in accordance with an order of attachment, regardless of whether that belief was "mistaken," and the plaintiff "failed to present sufficient probative evidence from which a jury could reasonably find that [the defendant's action] was taken in bad faith."); *Bruchman v. Standard Chartered Bank, PLC*, 997 F. Supp. 481, 491-92 (S.D.N.Y. 1998) (granting summary judgment to defendants on a claim premised on bad faith where the defendant "presented evidence supporting its position that it acted in good faith" and the plaintiff "failed to present any . . . evidence" to raise a "genuine issue of material fact with regard to defendant's alleged bad faith").

further action, such as litigation, not specifically required by the agreements—was at a minimum

a reasonable reading of the agreements, even if the Court ultimately concludes it was not the best

one.  Put differently, if the requirements of these agreements are ambiguous—particularly the

meaning of terms like "discovery" that have "bedeviled courts in this District and in the state

courts," *Fixed Income Shares: Series M,* 2018 WL 1449580, at *4—then U.S. Bank's approach

was reasonable as a matter of law, *see Nouveau Elevator Indus., Inc.*, 2006 WL 1720429, at *6, 8

(summary judgment on bad-faith claim because defendant's reading of "ambiguous" term was

"reasonable"); *Change Healthcare Operations, LLC v. WebMD Health Corp.*, 2017 WL

6610411, at *11 (N.Y. Sup. Ct. Dec. 27, 2017) (where agreement at issue was "ambiguous,"

court, as a matter of law, could not "reasonably infer that [the defendant] lacked a good faith

basis for its actions" because the agreement at issue was "ambiguous").

Nor do Plaintiffs have any evidence of even a hint of dishonesty.  U.S. Bank's reading of

the agreements is not some disingenuous *post hoc* litigating position.  To the contrary, the

evidence is undisputed that U.S. Bank genuinely held these views at all relevant times.  Stmnt.

¶ 89.  The same cannot be said of Plaintiffs' litigating position.  Indeed, before these cases were

ginned up, Plaintiffs not only understood what U.S. Bank's approach was, but believed it was

correct, as reflected in the testimony and documents of their controlling investors and Collateral

Managers and in the notices they received from U.S. Bank.  *Id.* ¶ 88.  Here, for instance, is how

Phoenix's Collateral Manager described an RMBS trustee's duties:

> The PSAs significantly limit the Trustee's obligations to pursue [R&W] claims. . . .
> Under the PSAs, the Trustee is not required to expend any of its own funds to pursue
> claims or perform its duties; it is not required to assume any financial risk in the
> performance of its duties; it is not obligated to investigate any fact unless instructed to do
> so by the holders of 25% of the Voting Rights; and, it is not under any obligation to
> exercise any of the trusts, rights or powers vested in it by this Agreement or to institute,
> conduct or defend any litigation . . . at the request of the Certificateholders . . . unless
> such Certificateholders shall have offered to the Trustee reasonable security or indemnity

> satisfactory to the Trustee against the costs, expenses and liabilities which may be incurred. . . . Under these agreements, the Trustee does not have—and will never have— an obligation to expend its own funds to pursue years of contentious and difficult litigation on behalf of the Trusts.

Stmnt. ¶ 88.2.  Plaintiffs have produced not a single document suggesting they believed

otherwise.  Yet here they are, years after the fact, claiming U.S. Bank's approach was not just

wrong, but so wrong as to be unreasonable and dishonest.  The assertion rings hollow, to put it

politely.  If there is bad faith afoot, it is not U.S. Bank's.

In sum, indisputable evidence shows that U.S. Bank complied with its pre-EOD duties

regarding R&Ws.  Even if the Court disagrees with U.S. Bank's view of its duties, there is zero

evidence of bad faith.  U.S. Bank is thus entitled to summary judgment on virtually all of

Plaintiffs' pre-EOD R&W claims.

## III.    U.S. BANK IS ALSO ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PRE-EOD CLAIMS RELATING TO DOCUMENT DEFECTS.

Plaintiffs also allege that U.S. Bank learned about document defects relating to Mortgage

Files—the file containing things like the mortgage, assignments, and title insurance policy—yet

failed to give notice and demand that the document defects be cured or the loan be replaced or

repurchased.  *See* TAC ¶¶ 8, 112, 114; Stmnt. ¶ 108.  Plaintiffs will presumably say U.S. Bank

learned of these defects through "exception reports" listing missing or defective documents.

Stmnt. ¶ 121.[4]  These claims fail because for many trusts U.S. Bank did not have the duties

Plaintiffs say it had, and for all trusts Plaintiffs' claims are time-barred.

U.S. Bank did not have notice and enforcement duties in all of the trusts.  For a full 40

trusts, the trustee had no duty to enforce repurchase obligations relating to document defects.

---

[4] The Mortgage Files containing these documents and the exception report related to them are not to be confused with the origination file containing documents relating to the loan's underwriting.  *Id.* ¶ 64.  The trustee virtually never has the latter.

For five of these trusts, the servicer has the duty to enforce, and for 20 others, neither the trustee nor any other party is assigned such a duty, meaning, at a minimum, the trustee has no express duty to enforce specifically assigned to it.  Stmnt. ¶¶ 116-17.  For another 15 trusts, the trustee has an enforcement duty, but it assumes that duty only upon specified written notice.  For six of these trusts, the trustee must receive written notice from a specified deal party that the obligated party failed to cure, substitute, or repurchase within the allotted period.  *Id.* ¶ 118.  For the other nine, the duty is triggered only "[u]pon . . . receipt of written notice" of "any materially defective document" or, post-custodian certification, of any "missing" document.  *Id.* ¶ 119.  For these 15 trusts, Plaintiffs have no evidence U.S. Bank received the requisite written notice, and thus the duty was never triggered.  *Id.* ¶ 118-19.[5]

Plaintiffs do no better to the extent that they cast their document-defect claims as claims for R&W breaches.  For at least 12 trusts, there was no R&W that all documents required to be delivered had in fact been delivered, Stmnt. ¶ 125, and so for these trusts document defects cannot amount to R&W breaches.  In any event, Plaintiffs have no evidence U.S. Bank discovered a breach that "materially and adversely affected" the loan's value or holders' interests.  Plaintiffs presumably will rely on exception reports.  *See* Ex. 97 (Resp. to Interrog. No. 17.)  But unlike the loan-specific notices of R&W breaches discussed above, which stated there was a specific and material breach and upon which U.S. Bank could therefore rely to pursue enforcement, the exception reports did not tell U.S. Bank whether a document defect was material.  Stmnt. ¶ 125.  To "discover" a Material R&W Breach from exception reports, then, U.S. Bank would have had to investigate.  But U.S. Bank had no duty to do so absent direction

---

[5] As to notice, the PSAs governing three of the trusts—CMALT 2006-A7, CSAB 2006-1, and CSMC 2006-3—place any document-defect notice duty on the custodian, not the trustee.  Stmnt. ¶ 110.

and indemnification from holders, of which Plaintiffs have no evidence.  *See infra*.

However characterized, there are two additional grounds for granting summary judgment on Plaintiffs' claims relating to document defects, both stemming from the fact that the relevant trustee duties arose no later than September 2008.  Stmnt. ¶ 124.

*First*, for 22 trusts, BANA, not U.S. Bank, was the trustee when these duties arose—the earliest that U.S. Bank succeeded as trustee was October 2008.  *Id.* ¶ 125.  "The relevant contractual documents" relating to U.S. Bank's succession "unambiguously leave any liability for breaches of the predecessor trustee's obligations (if any) with that predecessor trustee [*i.e.*, with BANA]."  *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*, 2013 WL 5328181, at *6 (S.D.N.Y. Sept. 23, 2013).  And "[i]n the absence of any binding obligations, there can be no breach."  *Id.*

*Second*, for all 53 trusts, Plaintiffs' document-defect claims are time-barred because they arose outside of New York's six-year limitations period, as explained in Section VIII below.

## IV.   U.S. BANK IS LIKEWISE ENTITLED TO SUMMARY JUDGMENT ON THE VAST MAJORITY OF PLAINTIFFS' POST-EOD CLAIMS.

Plaintiffs claim that U.S. Bank breached post-EOD duties.  For U.S. Bank to have post-EOD duties, Plaintiffs must show that (i) a contractually defined EOD occurred and (ii) U.S. Bank had actual knowledge or received written notice of it.  For 47 trusts, they have evidence of neither. Their post-EOD claims fail for two additional trusts for trust-specific reasons.  U.S. Bank is therefore entitled to summary judgment on all post-EOD claims as to 49 of the 53 trusts.

### A.   For 47 Trusts, There Is No Evidence That an EOD Actually Occurred.

An RMBS trustee cannot have post-EOD duties, much less breach them, unless an EOD occurs to trigger those duties.  For an EOD to have occurred, Plaintiffs must offer proof of all of the contractually defined elements of an EOD, including that the servicer or master servicer had

written notice or (alternatively for some trusts) actual knowledge of a material servicing breach and failed to cure within a specified period.  Plaintiffs have no evidence these contractually defined elements of an EOD occurred with respect to 47 trusts.  And as the First Department recently held, the so-called "prevention doctrine" offers Plaintiffs no refuge.

### 1.    There were no EODs for the 30 trusts requiring written notice.

The PSAs governing 30 trusts provide that only written notice of breach to the servicer and/or master servicer can trigger the cure period that must precede an EOD.  Stmnt. ¶  148.2.1.  But for 11 of these trusts, there is no evidence of any written notice whatsoever, and thus no evidence of an EOD.  Stmnt. ¶¶ 139, 210, 246, 258, 350, 355, 360, 365, 540, 581, 630.

For 19 others, ostensible notice letters were sent to servicers and/or master servicers, but those letters were not written notice of breaches.  Seven of the 19 trusts were the subject of letters from the Kasowitz law firm asserting that an EOD had occurred.  But the letters were written in terms so vague that they did not permit the servicers or master servicers to determine precisely how they had allegedly breached their duties.  Stmnt. ¶¶ 265-73, 279-83, 335-41, 545-49, 555-61, 671-78, 698-705.  Two trusts discussed in the Kasowitz letters, as well as three additional trusts, were the subject of a December 2011 letter to U.S. Bank sent by the law firm Gibbs & Bruns ostensibly on behalf of certain holders.  Stmnt. ¶¶ 596-601, 645-49, 666-70, 694-97, 721-24.  The letter did not even purport to inform of a specific servicer breach—it relied only on allegations of "widespread, readily available information suggesting large numbers of ineligible mortgage loans were sold or deposited into the RMBS pools underlying the Trusts" and merely "instruct[ed]" U.S. Bank to investigate alleged servicer misconduct.[6]  Stmnt. ¶¶ 596,

---

[6] U.S. Bank, though, has no duty to monitor or investigate servicer conduct.  Stmnt. ¶ 9; *see Commerce Bank*, 35 N.Y.S.3d at 65 (RMBS trustee "does not have a duty to 'nose to the source'" of "systematic improper servicing").

645, 666, 694, 721.  Finally, the remaining 9 trusts were addressed in a September 2012 letter,

also from Gibbs & Bruns on behalf of certain holders, purporting to give notice of master

servicer breaches that would ripen into EODs.  But in fact the letter could not be written notice to

the master servicer (and thus the cure clock did not begin to run) because the holders represented

by Gibbs & Bruns did not amount to the requisite number of holders under the PSAs.  Stmnt.

¶¶ 370-73, 389-92, 408-11, 427-30, 446-49, 465-68, 484-87, 503-06, 521-24.

>2. **There were no EODs for the 17 trusts requiring either written notice or actual knowledge.**

The PSAs for an additional 17 trusts provide that either written notice to or actual

knowledge of the servicer or master servicer can start the cure period that can create an EOD.

Stmnt. ¶ 148.2.2.  For 15 of the 17 trusts, there is no evidence of either, and therefore no EOD.

Stmnt. ¶¶ 159, 164, 169, 226, 231, 236, 241, 294, 299-300, 305-06, 311-12, 317-18, 323-24,

329-30, 615.  The story is similar for the remaining two, ABSHE 2006-HE7 and CMLTI 2006-

AMC1.  Although the servicer or master servicer received the same letters U.S. Bank did from

the Kasowitz law firm on purported behalf of certain holders, those letters suffered from the

same fatal defects as the Kasowitz letters discussed directly above.  Stmnt. ¶¶ 174-81, 216-20.

*See supra* at 23.  Accordingly, no EOD occurred as to these trusts.

>3. **Plaintiffs cannot hide behind the prevention doctrine to avoid their evidentiary obligations.**

Plaintiffs have no evidence that a contractually defined EOD occurred with respect to

these 47 trusts.  They will instead claim that, under the so-called "prevention doctrine," an EOD

that did not occur can be *deemed* to have occurred.  According to Plaintiffs, if the trustee could

have given notice of a breach that might have triggered an EOD if uncured, the trustee somehow

loses the ability to rely on the lack of an EOD.  This issue was the subject of an unadjudicated

Rule 12(c) motion in this case.  *See* ECF No. 193.  Since then, the First Department definitively

resolved the issue.  In *Fixed Income*, the First Department held that the prevention doctrine generally does not apply in litigation against an RMBS trustee.  157 A.D.3d at 542.  As the court explained, for the prevention doctrine to apply, a trustee would need to have (i) a *duty* to give notice to the servicer or master servicer to trigger an EOD or (ii) *actively hindered* another from giving notice.  *Id.*; *see In re Bankers Tr. Co.*, 450 F.3d 121, 128 (2d Cir. 2006) ("Where a promisor has no duty to bring about the condition precedent to his promise, only active conduct by the promisor to frustrate the occurrence of the condition precedent constitutes waiver of that condition precedent."); *Amies v. Wesnofske*, 174 N.E. 436, 438 (N.Y. 1931) (same).

Plaintiffs have no evidence of either here.  U.S. Bank did not actively prevent others from giving notice to the servicer or master servicer—at most, it failed to give notice, and "failure to send a notice to cure to the servicers is not 'active conduct.'"  *Fixed Income*, 157 A.D.3d at 542.

Nor did U.S. Bank have a duty to give the notice, because the agreements either imposed no such duty or imposed a duty that was not triggered.  For 38 of the 47 trusts, under no circumstances did U.S. Bank have a duty to give the written notice necessary to start the cure clock.  Stmnt. ¶ 148.  A provision referring to what happens if notice "shall have been given" to the servicer or master servicer by the trustee "does not require [the trustee] to give notice to cure; it merely defines 'Event of Default.'"  *Fixed Income*, 157 A.D.3d at 542.  And implying a notice duty is improper, because the PSAs "bar[] covenants from being implied" against the trustee. *Id.*; Stmnt. ¶ 8, 13.[7]

---

[7] A recent decision from this district concluded that "shall have been given" imposed a duty to give notice and thus applied the prevention doctrine.  *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 2018 WL 1382105, at *10 (S.D.N.Y. Mar. 16, 2018).  But that decision is directly contrary to, and does not even cite, the First Department's controlling decision in *Fixed Income*, 157 A.D.3d at 542.  This Court is bound to apply *Fixed Income* over contrary authority from this district on matters of New York law.  *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) (A federal court is "bound to apply the law [of New York] as interpreted by New York's intermediate appellate courts . . . unless [it] find[s] persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion.").

For nine of the 47 trusts, the trustee does have a notice duty, but only if a U.S. Bank Responsible Officer had "actual knowledge or written notice" of the master servicer's breach. Stmnt. ¶ 148.2.3.  And there is no evidence a Responsible Officer learned of a master servicer breach in these trusts.[8]  While Plaintiffs may point to the September 2012 Gibbs & Bruns letter, it was too general to provide actual knowledge or written notice of a breach, as U.S. Bank and the master servicer explained at the time.  Stmnt. ¶ 374-79, 393-98, 412-17, 431-36, 449-55, 469-74, 488-93, 507-12, 525-30.  And in any event, the letter was sent directly to the master servicer, so any "failure" by U.S. Bank to provide the same notice caused Plaintiffs no harm.

### 4.   Plaintiffs' alternative EOD theories for eight of the 47 trusts are meritless.

For eight of the 47 trusts Plaintiffs have alternative EOD theories.  For all eight of them, Plaintiffs allege that "the appointment of the [FDIC] as receiver for Washington Mutual Bank on September 25, 2008 and the ensuing repudiation of repurchase obligations under the PSAs by the transferee of Washington Mutual Bank's assets and liabilities constituted an Event of Default" for each trust "for which Washington Mutual Bank [("WaMu")] or its affiliate was either a Sponsor, Depositor, or Servicer."  TAC ¶ 130.  But that argument does not hold water.  WaMu was the servicer for eight trusts, Stmnt. ¶¶ 254, 588, 610, 622, 637, 658, 686, 713, and the PSAs for these trusts do provide that bankruptcy, receivership, and the like as to the servicer can ripen into EODs, Stmnt. ¶ 151; Ex. 103 (Chart 34B).  But they also provide that an EOD arises only once a servicer receivership has "*remained in force* undischarged or unstayed for the period of *60 days*."  *Id.* (emphasis added).  That did not happen here.  WaMu's servicing business was

---

[8] To the extent Plaintiffs claim U.S. Bank should have given notice of the master servicers' alleged failure to give notice of R&W breaches, TAC ¶¶ 6, 8, that claim fails.  For the only nine trusts for which U.S. Bank had any duty to give notice of master servicer breaches, the master servicer had no duty to give notice of R&W breaches and so could not have breached by failing to give that notice.  Stmnt. ¶ 61.

acquired by JPMorgan Chase, which thereby became the servicer, the same day WaMu entered receivership.  Stmnt. ¶ 254, 588, 610, 622, 637, 658, 686, 713.  The same-day replacement of WaMu with a servicer not under receivership means that no EOD could have occurred.  And JPMorgan Chase's alleged repudiation of WaMu's repurchase duties was not an EOD, because to the extent WaMu had repurchase duties, it did not have them as servicer.  Stmnt. ¶ 72.  In any case, for all these trusts except CSMC 2006-3, BANA was trustee on the date of the receivership. Stmnt. ¶ 589, 611, 623, 638, 659, 687, 714.  For these trusts, then, had any EOD arisen it would have been BANA's responsibility to fulfill the trustee's duties.

Also for CSMC 2006-3, Plaintiffs assert that a servicer downgrade triggered an EOD. TAC ¶ 130.  But Plaintiffs have pointed to no admissible evidence demonstrating that a servicer downgrade occurred.  Stmnt. ¶ 260.  Even if a servicer was downgraded, there is no evidence the servicer "provide[d] written notice to the Master Servicer within one Business Day" as required by the agreement to trigger the EOD.  Ex. 102.

### B.   For the Same 47 Trusts, There is No Evidence That U.S. Bank Had Actual Knowledge or Received Written Notice of an EOD.

Plaintiffs' post-EOD claims as to these 47 trusts fail for an additional reason.  Plaintiffs have no evidence that U.S. Bank either received the requisite written notice or obtained actual knowledge of any EODs.  *See Phoenix Light v. BNYM*, 2017 WL 3973951, at *16-18.

#### 1.   For nine trusts, Plaintiffs have no evidence that U.S. Bank received the requisite written notice.

The PSAs for nine trusts provide that "the Trustee shall not be deemed to have actual knowledge of an Event of Default until a Responsible Office of the Trustee shall have *received written notice* thereof."  Stmnt. ¶ 152 (emphasis added).  As Judge Caproni recently held in analyzing identical contractual provisions, absent "written notice of an Event of Default, the Trustee lacks 'knowledge' and is not subject to a prudent person duty."  *Phoenix Light v. BNYM*,

2017 WL 3973951, at *16.  In other words, the trustee's "actual knowledge" for these trusts "is

irrelevant."  *Id.* at *17; *Commerce Bank*, 35 N.Y.S.3d at 64-65 (affirming dismissal where

written-notice provisions were not satisfied).

For five of these nine trusts, Plaintiffs offer nothing to show U.S. Bank received written

notice of an EOD.  Without that, their post-EOD claims for these five trusts cannot survive

summary judgment.  Ex. 104.  For the remaining four trusts, Plaintiffs may point to letters sent

by Kasowitz purporting to notify the trustee of an EOD in those trusts.  *E.g.*, Stmnt. ¶¶ 265-73.

But at most, these letters inform the trustee of events "that, with time, might ripen into Events of

Default," and so are not written notice of an EOD.  *Commerce Bank*, 35 N.Y.S.3d at 64-65.  And

for reasons explained above, they do not amount to notice even of that.  *Supra* at 23.  To the

extent Plaintiffs claim these letters are notice of pervasive breaches, that gets Plaintiffs nowhere.

They "cannot rely at summary judgment on evidence of pervasive breaches" to prove that the

trustee had written notice of EODs.  *Phoenix Light v. BNYM*, 2017 WL 3973951, at *18 n.32.

> **2.      For 38 trusts, Plaintiffs have no evidence that U.S. Bank had either
>           actual knowledge or written notice of an EOD.**

For 38 trusts, the trustee has no post-EOD duties unless the trustee or "a Responsible

Officer of the Trustee at the Corporate Trust Office" obtains actual knowledge or "receives

written notice" of the EOD.  Stmnt. ¶ 153-154.

For 21 of these trusts, Plaintiffs have no evidence that U.S. Bank had actual knowledge or

received written notice of an EOD.  *E.g.*, Stmnt. ¶¶ 161; Ex. 104.  For the other 17 trusts,

Plaintiffs may again rely on letters that U.S. Bank received from counsel for investors, *see, e.g.*,

Stmnt. ¶ 174-81, but those letters don't help them.  As explained, just as the Kasowitz letters

cannot be written notice of an EOD, neither can they give the trustee actual knowledge of an

EOD.  Letters from Gibbs & Bruns are equally insufficient, for the same reasons that they were

inadequate to give the trustee actual knowledge or written notice of any servicer and master servicer breaches.  Stmnt. ¶¶ 666-70, 694-97.  *See supra* 23-24.[9]

### C.     Plaintiffs' Post-EOD Claims Fail for Two Additional Trusts As Well.

*CBASS 2005-CB3.*  Plaintiffs allege that CBASS 2005-CB3 experienced an EOD "in 2008 or 2009."  TAC ¶ 129.  But Plaintiffs have no evidence of this.  Summary judgment should be granted as to any claims for this trust premised on a 2008 EOD.  U.S. Bank concedes an EOD occurred in 2014 for CBASS 2005-CB3.  Stmnt. ¶ 200.  Plaintiffs, however, offer no evidence that U.S. Bank had written notice or actual knowledge of the EOD, and so any prudent-person claims premised on a 2014 EOD fail as well.  *Id.* ¶ 203.[10]

*CBASS 2006-CB2.*  Plaintiffs also say that an EOD occurred in CBASS 2006-CB2 "when cumulative loss levels exceed[ed] specified levels in the PSA."  TAC ¶ 129.  Plaintiffs are correct that the PSA defines a "Servicer Event of Default" as occurring when "[t]he aggregate amount of cumulative Realized Losses" exceeds certain percentages.  Stmnt. ¶ 205.  But for this trust, prudent-person duties are triggered only by a "Servicer Event of Termination," not a "Servicer Event of Default."  *Id.*  Plaintiffs do not identify a Servicer Event of Termination, so their post-EOD claims fail as to this trust as well.

## V.     NO-ACTION CLAUSES BAR PLAINTIFFS' CLAIMS AS TO NINE TRUSTS.

Plaintiffs' claims as to nine trusts fail for an additional reason:  Plaintiffs did not comply with the PSAs' no-action clauses.  Those clauses prohibit Plaintiffs from pursuing legal action related to the agreements unless Plaintiffs first provide written notice of an EOD to one or more

---

[9] To the extent Plaintiffs invoke the prevention doctrine to show that U.S. Bank had actual knowledge or written notice of an EOD, Plaintiffs' argument has already been rejected.  *Phoenix Light v. BNYM*, 2017 WL 3973951, at *17 ("The prevention doctrine makes little sense in considering whether [the trustee] had knowledge [of an EOD] because the PSA's [EOD] knowledge provision does not require [the trustee] to give any written notice.").

[10] Even if U.S. Bank had prudent-person duties, they did not include enforcing repurchase obligations—by 2014, the sole warrantor had long since entered bankruptcy, leaving nothing for U.S. Bank to do.

specific parties, assemble the support of the required percentage of other holders, demand that the specified deal party initiate the suit, and offer indemnification for that suit.  Stmnt. ¶ 128. No-action clauses are "strictly" enforced against would-be plaintiffs.  *Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992).

Plaintiffs have no evidence they complied with these no-action clauses and, thus, no evidence that they can sue regarding these nine trusts.  Plaintiffs presumably will argue that *Cruden* excuses their non-compliance.  *Cruden* held that "it would be absurd to require the [investors] to ask the Trustee to sue itself."  *Id.* at 968.  But unlike in *Cruden*, for these nine trusts the trustee either is not a demand party or is not the only demand party.  The trusts' no-action clauses require that notice be given, and demand be made, to the *trust administrator*, removing the trustee from the no-action-clause equation.  Stmnt. ¶¶ 129-32.  "[T]here is nothing 'absurd' about asking [a] Trust Administrator to sue [the] Trustee," and demand therefore cannot be excused.  *Sterling Fed. Bank, F.S.B. v. Bank of N.Y. Mellon*, 2012 WL 3101699, at *2 (N.D. Ill. July 30, 2012).  As Judge Pauley recently concluded in dismissing claims for just this reason, "[b]ecause the trust administrators . . . are not the Trustees, [plaintiff] was required to make a demand on them to initiate suit."  *Commerzbank AG v. U.S. Bank, N.A.*, 277 F. Supp. 3d 483, 496 (S.D.N.Y. 2017) (dismissing claims for failure to make demand on trust administrators).

## VI.   C-BASS CBO XVII LTD. RELEASED ITS CLAIMS AS TO WMALT 2005-9.

Plaintiff C-BASS XVII's claims regarding WMALT 2005-9 fail because they were released as part of the settlement in another case, *Policemen's Annuity & Benefit Fund of Chicago v. Bank of Am.*, No. 12-CV-2865 (S.D.N.Y.).  *See* Stmnt. ¶ 135-37.  The settlement required anyone not wanting to be bound by it to opt out.  *Id.* ¶¶ 138, 141.  C-BASS XVII did not.  *Id.* ¶¶ 139, 140, 145.  The court then dismissed the claims with prejudice.  *Id.* ¶ 141.  The Final Judgment stated that the "Settlement Class" agreed to release all "Subject Claims" against

the "Released Parties." *Id.* ¶¶ 141-44.  C-BASS XVII was a member of the Settlement Class

because it had purchased certificates issued by WMALT 2005-9 and it did not opt out.  *Id.* ¶ 137,

145.  U.S. Bank was a "Released Party."  *Id.* ¶ 144.  And the "Subject Claims" encompass C-

BASS XVII's breach-of-contract claims here.  *Id.* ¶ 142.  The *Policemen's* settlement therefore

bars all of C-BASS XVII's claims against U.S. Bank as to the WMALT 2005-9 trust.  Plaintiff

C-BASS XVII's claims regarding WMALT 2005-9 must be dismissed.

## VII.   THE PSAs FOR 32 TRUSTS BAR THE DAMAGES PLAINTIFFS SEEK.

Plaintiffs cannot recover the damages they seek—investment losses—for 32 trusts

because they are expressly barred under the PSAs for those trusts.  Stmnt. ¶¶ 146-47.  The

governing agreements for those trusts expressly bar consequential damages.  *Id.* ¶ 147; *e.g.*, Ex.

98 (CSAB 2006-1, PSA § 9.05) ("[I]n no event shall the Trustee be liable for special, indirect or

consequential loss or damage of any kind whatsoever").  "[C]ourts must honor contractual

provisions that limit liability or damages" under New York law.  *Nomura Home Equity Loan,*

*Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581 (N.Y. 2017); *see*

*Tradex Europe SPRL v. Conair Corp.*, 2008 WL 1990464, at *3 (S.D.N.Y. May 7, 2008).

These clauses bar Plaintiffs' damages claims because the investment-loss damages

Plaintiffs seek are consequential damages.  New York recognizes "two types of damages" for

breach-of-contract claims: (1) general damages and (2) consequential damages.  *PNC Bank, N.A.*

*v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 370 (S.D.N.Y. 2014).  "General damages

seek to compensate the plaintiff for the value of the very performance promised, often

determined by the market value of the good or service to be provided."  *Carco Grp., Inc. v.*

*Maconachy*, 383 F. App'x 73, 75 (2d Cir. 2010).  Consequential damages, by contrast, "seek to

compensate a plaintiff for additional losses (other than the value of the promised performance)

that are incurred as a result of the defendant's breach."  *Schonfeld v. Hilliard*, 218 F.3d 164, 176

(2d Cir. 2000).  Put another way, consequential damages are "one step removed from the naked performance promised by the defendant."  *Id.* at 177.

As to service contracts specifically, "general damages refer to damages based upon the value of performance, not on the value of the consequences of that performance, or the failure to perform."  *MMS USA Holdings, Inc. v. PricewaterhouseCoopers LLP*, 2013 WL 1154932, at *5 (N.Y. Sup. Ct. Mar. 19, 2013) (citing Dan B. Dobbs, Law of Remedies § 12.4(1) (2d ed. 1993)).  Thus, if a defendant contracts to provide guard services for a warehouse full of goods, "the performance promised is to provide the guard service."  Dan B. Dobbs, Law of Remedies § 12.2(3) (2d ed. 1993).  If the defendant fails to guard the goods, general damages are the price paid for the unperformed services, not the value of any goods stolen due to the guard's failure.  *Id.*  Courts applying New York law consistently adhere to this principle.  *See, e.g.*, *MMS USA Holdings*, 2013 WL 1154932, at *4 (tax effects of accountant's faulty tax services were consequential damages, whereas the "fees paid for the allegedly improper service" were general damages); *Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 81-82 (2d Cir. 2013) (general damages for breach of employment agreement constituted the salary paid the employee, not the business loss caused by the employee's failure to perform); *Unilever U.S., Inc. v. Johnson Controls, Inc.*, 2017 WL 622209, at *4-6 (N.D. Ill. Feb. 15, 2017) (diminution in facility's property value due to thefts resulting from defendant's breach of a guard service contract are consequential damages).

Here, Plaintiffs seek damages for investment losses—diminution in the market value of their certificates, TAC ¶¶ 155, 157, and reduced cash flow, *id.* ¶¶ 69, 131, 156; Stmnt. ¶ 146.  These alleged investment losses are consequential damages, all of which were caused, if at all, most directly by breaches by the warrantors and servicers.  U.S. Bank as trustee is responsible, if at all, only derivatively for failing to act to address these third parties' conduct.  *See* TAC ¶ 129.

32

Plaintiffs claim, for example, that *if* U.S. Bank had provided notice of R&W or servicing breaches, it *would have* caused the warrantors to repurchase the breaching loans or the servicers to replace the "looted" trust assets, *id.* ¶ 158, which *would have* reduced the "loss severities" on the loans and *would have* ensured that certificates "retained their market value as highly rated bonds," *id.* ¶¶ 155-56.  These damages are multiple "step[s] removed from the naked performance promised by the defendant."  *Schonfeld*, 218 F.3d at 177.  Plaintiffs thus are seeking to obtain "the value of the consequences of [U.S. Bank's] failure to perform," *MMS USA Holdings*, 2013 WL 1154932, at *5, measured by lost income from their investment—a classic example of consequential damages, *see Schonfeld*, 218 F.3d at 175-76.

U.S. Bank is thus entitled to summary judgment on the damages claim for these 32 trusts.

## VIII.   PLAINTIFFS' CLAIMS ON MANY CERTIFICATES ARE TIME-BARRED.

Because this case was filed in New York, New York's six-year limitations period applies to Plaintiffs' contract claims.[11]  *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998); N.Y. C.P.L.R. § 213(2).  Plaintiffs filed their contract claims (which they purported to acquire from the various indenture trustees in 2015) on July 2, 2015.  Claims older than July 2, 2009 are therefore untimely.  Measured against this date, many of Plaintiffs' claims cannot survive.

*Document-Defect Claims*.  As discussed, Plaintiffs contend that U.S. Bank breached notice and enforcement duties relating to missing or defective loan documents.  Even assuming U.S. Bank had those duties for all trusts (and for many trusts it did not), U.S. Bank's duties— whether cast as loan-documentation duties or duties relating to R&W breaches—would have arisen and allegedly been breached no later than September 2008.  Stmnt. ¶ 124.  Starting with

---

[11] That includes New York's borrowing statute, which requires that claims be timely under *both* New York's limitations period and that of the jurisdiction where the claim accrued.  *Stuart*, 158 F.3d at 626; N.Y. C.P.L.R. § 202.  The claims here may have accrued in jurisdictions with a limitations period shorter than New York's.  But for purposes of this Motion, we address only the New York limitations period.

Plaintiffs' claim that U.S. Bank should have given notice of loan-documentation problems, any notice duty was triggered by the trustee's discovery of the problems.  And the only time that the trustee could have discovered problems would have been either during its review of the mortgage files (if it performed that task) or, at the latest, on delivery of the final certification, both of which occurred no later than a year after the trusts' closing.  *E.g.*, Ex. 89, Ex. 90.

Any duty to enforce repurchase rights for loans with missing or defective documents arose, and any breach occurred, around the same time.  The trustee's notice to the seller of the document defects triggered the seller's duty to cure or repurchase within 60 to 120 days, depending on the trust.  *E.g.*, Ex. 87, 88, 90.  And the trustee's duty to enforce would have arisen, at the latest, at the end of that period, the latest the seller would have failed to act.  *See id.* This would have been well before July 2, 2009, and the claims are therefore time-barred.

*R&W Breach Claims.*  Certain of Plaintiffs' R&W-breach claims also are untimely. Claims as to the 352 loans repurchased before July 2, 2009, *see* Ex. 40 (Chart 15A), are barred, because any claims necessarily accrued before repurchase.  Likewise, for the 836 loans for which U.S. Bank received notice or potential notice earlier than July 2, 2009, *see* Ex. 36, Ex. 40 (Chart 15B), any claim that U.S. Bank failed to fulfill its duties after receiving the notice is time-barred, *see Fixed Income*, 2018 WL 1449580, at *4 ("Plaintiffs' claims would be time-barred if Citibank acquired knowledge of the alleged breaches . . . six years before they filed their Complaint."). And as previously explained, for WAMU 2006-AR17, the deadline for filing claims against the warrantors in receivership was December 30, 2008.  After that date, the trustee could have taken no further action, and so Plaintiffs' claims necessarily accrued at the latest by December 30, 2008, outside of the limitations period.  And any claim based on U.S. Bank's failure to do more before the bankruptcy deadline likewise would be time-barred.  *See id.*

Plaintiffs will presumably argue that the relevant filing date is December 24, 2014, when they initially filed.  But that would be wrong.  It ignores that Plaintiffs lacked standing when they filed the original complaint.  *See* Order at 14, ECF No. 105.  The only claims they have now are the ones that the indenture trustees assigned to them.  Plaintiffs did not even purport to acquire these claims until 2015, and did not sue on them until July 2, 2015.  *See* ECF No. 77.

For similar reasons, Plaintiffs' claims do not relate back to the earlier-filed complaint.  *See* Fed. R. Civ. P. 15(c)(1); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (explaining when state law applies to relation back).  Because Plaintiffs lacked standing when they filed the action in December 2014, there is nothing to which the amendment could relate back—the complaint was a "nullity from the beginning."  *Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC*, 651 F. App'x 5, 7 (2d Cir. 2016); *see Varga v. McGraw Hill Fin., Inc.,* 48 N.Y.S.3d 24, 26 (N.Y. App. Div. 2017) ("Plaintiffs' lack of standing was not cured by the master funds' subsequent assignment of their claims, and the proposed amended complaint by plaintiffs, as assignees, does not relate back to the earlier filed complaint.").  Put differently, Plaintiffs cannot relate their claims back to a "nonexistent lawsuit."  *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 111 n.20 (2d Cir. 2013); *see also In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) (claims in a consolidated amended complaint did not relate back to an original complaint filed by plaintiffs who lacked standing).  Based on the July 2, 2015 filing date, many of Plaintiffs' claims are time-barred.

## CONCLUSION

The Court should grant U.S. Bank's motion for summary judgment.

Dated:  March 30, 2018                    Respectfully submitted,


                                          /s/ David F. Adler_____
                                          JONES DAY
                                          David F. Adler
                                          Louis A. Chaiten
                                          North Point
                                          901 Lakeside Avenue
                                          Cleveland, Ohio  44114-1190
                                          (216) 586-3939; (216) 579-0212 (fax)
                                          dfadler@jonesday.com
                                          lachaiten@jonesday.com

                                          Michael T. Marcucci
                                          100 High Street, 21st Floor
                                          Boston, Massachusetts  02110-1781
                                          (617) 960-3939; (617) 449-6999 (fax)
                                          mmarcucci@jonesday.com

                                          Albert J. Rota
                                          2727 N. Harwood Street, Suite 500
                                          Dallas, Texas  75201-1515
                                          (214) 220-3939; (214) 969-5100 (fax)
                                          ajrota@jonesday.com

                                          Andrew S. Kleinfeld
                                          250 Vesey Street
                                          New York, New York  10281-1047
                                          (212) 326-3939; (212) 755-7306 (fax)
                                          askleinfeld@jonesday.com

                                          *Attorneys for Defendant U.S. Bank National Association*