**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHOENIX LIGHT SF DAC et al., | Case No. 14-cv-10116-VSB-DCF |
| Plaintiffs, | |
| - against - | |
| U.S. BANK NATIONAL ASSOCIATION and BANK OF AMERICA, N.A., | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF BANK OF**
**AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT**

MUNGER, TOLLES & OLSON LLP
James C. Rutten
Jacob S. Kreilkamp
Wesley T.L. Burrell
Adam P. Barry
Matthew K. Donohue
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071-3426
(213) 683-9100; (213) 687-3702 (fax)
james.rutten@mto.com
jacob.kreilkamp@mto.com
wesley.burrell@mto.com
adam.barry@mto.com
matthew.donohue@mto.com

SIDLEY AUSTIN LLP
David F. Graham
Mark C. Brown
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000; (312) 853-7036 (fax)
dgraham@sidley.com
mark.brown@sidley.com

SIDLEY AUSTIN LLP
Isaac S. Greaney
Daniel Gimmel
Jon W. Muenz
787 Seventh Avenue
New York, New York  10019
(212) 839-5300; (212) 853-5599 (fax)
igreaney@sidley.com
dgimmel@sidley.com
jmuenz@sidley.com

*Attorneys for Defendant Bank of America, N.A.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ........................................................................................................................2

    A.    Plaintiffs' Claims Against BANA Are Time-Barred ..............................................2

        1.    New York's Statute of Limitations Bars Plaintiffs' Claims in Their Entirety as to Nine Trusts, and in Part as to Five Trusts............................2

        2.    Delaware's Statute of Limitations Bars Plaintiffs' Claims as to Six Trusts ....................................................................................................4

    B.    Plaintiffs Lack Standing To Assert Claims Against BANA ....................................6

        1.    The Assignments Are Champertous and Therefore Unenforceable ...........6

        2.    The Assignments Violate the Indentures and Therefore Are Self-Defeating ...................................................................................................7

    C.    Plaintiffs' Pre-EOD Claims Fail On The Merits ..................................................10

        1.    Plaintiffs' Pre-EOD Claims Relating to Custodial Duties Fail .................10

            (a)    For the non-MSM trusts, Plaintiffs concede that BANA is entitled to summary judgment .......................................................10

            (b)    For the MSM trusts, Plaintiffs have no evidence that BANA "received" "written notice" of material document deficiencies ...................................................................................11

        2.    Plaintiffs' Pre-EOD Claims Relating to R&Ws Fail .................................12

            (a)    Collateral file exception reports are not evidence of discovery of material R&W breaches, and could support only a time-barred claim in any event.............................................13

            (b)    Notices alleging the *possibility* of R&W breaches do not constitute trustee discovery of *actual* breaches .............................15

            (c)    Even under the *Phoenix v. BNYM* relaxed summary judgment standard for "discovery" of R&W breaches, BANA is entitled to summary judgment on more than 99% of the loans at issue ........................................................................17

    D.    Plaintiffs' Post-EOD Claims Fail On The Merits ................................................18

1.      Plaintiffs Have No Evidence of an EOD While BANA Was
        Trustee.................................................................................................................18

2.      Plaintiffs Have No Evidence That a "Responsible Officer" of
        BANA Had "Written Notice" or "Actual Knowledge" of an EOD...........20

CONCLUSION............................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Argonaut P'Ship L.P. v. Bankers Tr. Co.*,
2001 WL 585519 (S.D.N.Y. May 30, 2001) ..........................................................12

*Bank of N.Y. Mellon Trust Co., Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*,
2013 WL 3146824 (S.D.N.Y. June 19, 2013) .........................................................14

*In re Bankers Trust*,
450 F.3d 121 (2d Cir. 2016)..................................................................................18

*In re Barclays Bank PLC Sec. Litig.*,
2016 WL 3235290 (S.D.N.Y. June 9, 2016) ...........................................................4

*Bensinger v. Denbury Res. Inc.*,
2013 WL 3353975 (E.D.N.Y. July 3, 2013)............................................................4

*BSC Assocs., LLC v. Leidos, Inc.*,
91 F. Supp. 3d 319 (N.D.N.Y. 2015) ......................................................................7

*Chrebet v. Cty. of Nassau*,
2014 WL 1836835 (E.D.N.Y. May 8, 2014) .......................................................3, 4

*Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns, S.A.R.L.*,
790 F.3d 411 (2d Cir. 2015).................................................................................4

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016)...................................................................................3

*DiLaura v. Power Auth.*,
982 F.2d 73 (2d Cir. 1992)....................................................................................7

*In re Enron Corp.*,
298 B.R. 513 (Bankr. S.D.N.Y. 2003)...................................................................17

*Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*,
2000 WL 1099866 (S.D.N.Y. Aug. 4, 2000)..........................................................4

*Hunt Constr. Grp., Inc. v. Brennan Beer Gorman/Archs., P.C.*,
607 F.3d 10 (2d Cir. 2010)....................................................................................5

*Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co.*,
660 F. App'x 554 (10th Cir. 2016) .........................................................................5

*Levy v. U.S. Gen. Accounting Office*,
   175 F.3d 254 (2d Cir. 1999) (per curiam)...................................................................4

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*,
   137 F. Supp. 3d 430 (S.D.N.Y. 2015)........................................................................2

*Nat'l Credit Union Admin. Bd. v. U.S. Bank N.A.*,
   – F.3d –, 2018 WL 3650830 (2d Cir. Aug. 2, 2018) ...............................................10

*Phoenix Light SF Ltd. (BlackRock) v. Wells Fargo Bank, N.A.*,
   2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017)...........................................................13

*Phoenix Light SF Ltd. (Royal Park Invs. SA/NV) v. HSBC Bank USA, N.A.*,
   109 F. Supp. 3d 587 (S.D.N.Y. 2015)......................................................................16

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
   2017 WL 3973951 (S.D.N.Y. Sep. 7, 2017)....................................................1, 13, 20

*Phoenix Light SF Ltd. v. U.S. Bank N.A.*,
   2015 WL 2359358 (S.D.N.Y. May 18, 2015) ......................................................4, 6, 9

*Phoenix Light SF Ltd. v. U.S. Bank N.A.*,
   2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016) .........................................................8, 17

*Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*,
   2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018)..............................................................5

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
   2018 WL 1088020 (S.D.N.Y. Feb. 12, 2018).............................................................16

*Stichting v. Schreiber*,
   407 F.3d 34 (2d Cir. 2005).........................................................................................3

*In re Trusteeship*,
   2014 WL 3858506 (S.D.N.Y. July 24, 2014) ..............................................................5

*U.S. Bank N.A. v. UBS Real Estate Sec., Inc.*,
   2017 WL 2437290 (S.D.N.Y. Apr. 21, 2017)............................................................14

*U.S. Bank N.A. v. UBS Real Estate Sec. Inc.*,
   205 F. Supp. 3d 386 (S.D.N.Y. 2016).......................................................................14

*In re Vivendi Universal, S.A. Securities Litigation*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009).........................................................................4

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015).........................................................................8

*Williams & Sons Erectors, Inc. v. S.C. Steel Corp.*,
   983 F.2d 1176 (2d Cir. 1993) ................................................................................9

**STATE CASES**

*2138747 Ontario, Inc. v. Samsung C&T Corp.*,
   – N.E.3d –, 2018 WL 2898710 (N.Y. June 12, 2018) ...........................................5

*Commerce Bank v. Bank of N.Y. Mellon*,
   141 A.D.3d 413 (2016) ........................................................................................13

*Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*,
   2015 WL 7625829 (N.Y. Sup. Ct. 2015) ..............................................................5

*Deutsche Bank National Trust Co. v. Barclays Bank PLC*,
   156 A.D.3d 401 (2017) ..........................................................................................5

*Fixed Income Shares: Series M v. Citibank, N.A.*,
   157 A.D.3d 541 (2018) ........................................................................................19

*Hazzard v. Chase Nat'l Bank*,
   287 N.Y.S. 541 (N.Y. Sup. Ct. 1936) ..................................................................16

*Quadrant Structured Prods. Co. v. Vertin*,
   23 N.Y.3d 549 (2014) ..........................................................................................17

*Trans-Res., Inc. v. Nausch Hogan & Murray*,
   298 A.D.2d 27 (2002) ............................................................................................2

*Trust for Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love
   Funding Corp.*,
   13 N.Y.3d 190 (2009) ........................................................................................6, 7

*W. & S. Life Ins. v. Bank of N.Y. Mellon*,
   2017 WL 3392855 (Ohio Ct. Common Pleas Aug. 4, 2017)................................19

**FEDERAL STATUTES**

28 U.S.C. § 2072(b) ....................................................................................................3

**FEDERAL RULES**

Fed. R. Civ. P. 15 ................................................................................................2, 3, 4

Fed.R. Civ. P. 17 ......................................................................................................3, 4

Fed. R. Civ. P. 30(b)(6) ............................................................................................16

**RULES - OTHER**

Local Rule 56.1(b) ........................................................................................................1

## TABLE OF DEFINED TERMS

| | |
|---|---|
| BANA: | Defendant Bank of America, N.A. |
| Barry Decl. | Declaration of Adam P. Barry filed April 2, 2018 (ECF No. 249) |
| BNYM: | Bank of New York Mellon |
| CDO: | Collateralized debt obligation |
| Donohue Decl. | Declaration of Matthew K. Donohue filed herewith |
| EOD: | Event of Default |
| Fitzgerald Decl. | Corrected Declaration of Steven Fitzgerald filed July 5, 2018 (ECF No. 324) |
| Mot.: | Memorandum of Law in Support of BANA's Motion for Summary Judgment (ECF No. 242) |
| Opp'n: | Memorandum of Law in Opposition to BANA's Motion for Summary Judgment (ECF No. 320) |
| Phoenix: | Plaintiff Phoenix Light SF DAC (f/k/a Phoenix Light SF Ltd.) |
| PSA: | Pooling and servicing agreement |
| R&W: | Representation and warranty |
| RMBS: | Residential mortgage-backed securities |
| Sep. Stmt.: | BANA's Separate Statement of Undisputed Facts (ECF No. 245) |
| TAC: | Plaintiffs' Third Amended Complaint (ECF No. 209) |
| U.S. Bank: | Defendant U.S. Bank National Association |

## PRELIMINARY STATEMENT

Bank of America, N.A.'s ("BANA") motion demonstrates that summary judgment must be granted on numerous straightforward grounds. Plaintiffs' opposition papers—including the nearly 30,000 pages of exhibits and the 82-page "short and concise statement of additional material facts," Local Rule 56.1(b)—largely do not respond to those arguments, instead obfuscating matters in the apparent hope that the Court will throw up its hands and conclude there must be a triable issue somewhere.[1] Plaintiffs ignore BANA's early resignations as trustee, which render their claims time-barred. Plaintiffs improperly reargue Judge Forrest's standing rulings, which are the law of the case. They fail to grapple with the text of the pooling and servicing agreements ("PSAs"), which foreclose the duties Plaintiffs seek to manufacture. And they flee from the decisions of numerous courts in this District, which have dismissed or granted summary judgment in similar RMBS trustee cases—indeed, *in Plaintiffs' very own cases*.

Most fundamentally, Plaintiffs do not seriously dispute that "[a]t summary judgment, [they] must prove that they have evidence to support their claims loan-by-loan." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951, at *9 (S.D.N.Y. Sep. 7, 2017) (Caproni, J.). Though Plaintiffs try to meet this burden by asserting that BANA received letters alerting it to loan-specific representation and warranty ("R&W") breaches, they make this claim as to *only 568 loans out of more than 50,000 at issue*. Plaintiffs' meager showing fails to create a triable issue even as to the loans they identify; but even if the Court were to accept that showing, summary judgment still would have to be granted for BANA as to more than 99% of the loans at issue. Because Plaintiffs' claims fail in their entirety, summary judgment for BANA should be granted.

---

[1] Throughout this brief, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted unless otherwise indicated.

## ARGUMENT

A.    **Plaintiffs' Claims Against BANA Are Time-Barred**

1.    **New York's Statute of Limitations Bars Plaintiffs' Claims in Their Entirety as to Nine Trusts, and in Part as to Five Trusts**[2]

Plaintiffs expressly agree that a six-year statute of limitations applies to their claims regarding the MSM, MLMI, and OWNIT trusts.[3]  Further, Plaintiffs do not dispute that the only claims they now allege are time-barred to the extent set forth in BANA's motion unless they relate back to Plaintiffs' December 2014 filing of the original Complaint.[4]  But relation back is unavailable here.

*First*, Plaintiffs do not respond to BANA's showing that relation back is unavailable under FRCP 15(c)(1)*(A)* because state law precludes relation back in the circumstances here.[5]

*Second*, Plaintiffs do not respond to BANA showing that relation back is unavailable under Rule 15(c)(1)*(B)* because the claims were time-barred when they allegedly were assigned.[6] Plaintiffs ignore that the assignments did not occur until more than six years after BANA resigned as trustee, and that "[a]n assignee takes a cause of action subject to all the infirmities . . . and defenses that could have been asserted against the assignor."  *Trans-Res., Inc. v. Nausch Hogan & Murray*, 298 A.D.2d 27, 30 (2002).  Plaintiffs cannot use Rule 15 to revive the claims because that would deprive BANA of a defense it would have had if the indenture trustees had

---

[2] Plaintiffs' opposition brief abandons their claims against BANA as to MSM 2007-2AX, MSM 2007-1XS, and MSM 2006-12XS.  (*See* Pls.' Mem. of L. in Opp'n to BANA's Mot. for Summ. J. ("Opp'n") (ECF No. 320) at 3 n.2.)  Consequently, Plaintiffs now sue BANA on only 17 trusts.  Nevertheless, for consistency and to avoid confusion, BANA uses the trust numbers from the headings of its opening brief in this reply brief.

[3] *See* Opp'n at 13 n.11.

[4] Plaintiffs halfheartedly argue in a footnote that equitable tolling applies as to MLMI 2006-RM4 (*see* Opp'n at 13 n.12), but offer no evidence of the required elements under New York limitations law, including (i) that BANA did something beyond failing to disclose alleged breaches concerning MLMI 2006-RM4; and (ii) that such additional action caused Plaintiffs' indenture trustees not to assert the claims within the limitations period.  *See Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 471 (S.D.N.Y. 2015).

[5] *See* Mem. of L. in Supp. of BANA's Mot. for Summ. J. ("Mot.") (ECF No. 242) at 9-11.

[6] *See id.* at 10-11 & n.32; BANA's Sep. Stmt. of Undisputed Facts ("Sep. Stmt.") (ECF No. 245) ¶ 7.

filed the claims, in derogation of BANA's substantive rights under assignment law and the Rules

Enabling Act's command not to "abridge, enlarge or modify any substantive right."  28 U.S.C.

§ 2072(b); *see also Stichting v. Schreiber*, 407 F.3d 34, 49 (2d Cir. 2005) (Rules Enabling Act

precludes use of Rule 17(a) to achieve result contrary to state assignment law).[7]

*Third*, Plaintiffs cannot obtain relation back under Rule 15(c)(1)*(C)* because it can apply

only if, *inter alia* (i) "the amendment changes the party," and Plaintiffs concede that "there has

been no change in the identity of the Plaintiffs";[8] and (ii) Plaintiffs made "a mistake concerning

the proper party's identity," which as explained below they did not.  Fed. R. Civ. P. 15(c)(1)(C).

*Fourth*, Plaintiffs' effort to invoke Rule 17(a)(3) is meritless.  That Rule can apply only

"when an *understandable mistake* has been made in selecting the party in whose name the action

should be brought."  *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 412 (2d Cir.

2016) (emphasis in original).  Plaintiffs do not meaningfully respond to BANA's showing that

the indenture trustees' failure to appear as plaintiffs did not "plausibly result[] from mistake."

*Chrebet v. Cty. of Nassau*, 2014 WL 1836835, at *12, (E.D.N.Y. May 8, 2014).[9]

Plaintiffs' footnoted assertion of "mistake" offers no such evidence.[10]  On the contrary,

Plaintiffs' witness who oversaw the filing of this suit testified that he was fully aware of case law

in this District holding that a CDO lacks standing if it has transferred its claims to its indenture

trustee.[11]  Accordingly, before Plaintiffs filed suit, they demanded that their indenture trustees

---

[7] Rule 15(c)(1)(B) is inapplicable in any event because, as Plaintiffs assert (Opp'n at 4 n.5), the post-filing assignments from the indenture trustees are akin to attempting to correct a real-party-in-interest problem under Rule 17(a).  The last paragraph of the Advisory Committee's 1966 comments on Rule 15(c) makes clear that this requires compliance with the rules regarding amendments changing a party (now Rule 15(c)(1)(C)) and/or Rule 17(a).

[8] Opp'n at 13 n.9.

[9] *See* Mot. at 11 n.32.

[10] *See* Opp'n at 13 n.9.

[11] *See* Enno Balz Depo. Tr., attached as Ex. 208 to the Corrected Decl. of Steven S. Fitzgerald ("Fitzgerald Decl.") (ECF No. 324), at 213-15 ("Q.  Do you recall there was a time when Plaintiffs requested that the Plaintiffs' trustees

assign the claims to them—which, Judge Forrest found, shows that "plaintiffs *recognize[d]* that they [we]re contractually barred from filing claims." *Phoenix Light SF Ltd. v. U.S. Bank N.A.*, 2015 WL 2359358, at *3 (S.D.N.Y. May 18, 2015) ("*Phoenix I*"). Only after Plaintiffs' indenture trustees' failure to provide the assignments left Plaintiffs no other choice did they take a crack at bringing the claims on their own. The failure of Plaintiffs' chosen strategy does not permit them to call the whole thing a "mistake which prohibited [them] from inserting [each trustee] as a party earlier." *Chrebet*, 2014 WL 1836835, at *22 (Rule 17(a) does not apply when plaintiff knew the proper party before filing and there was no evidence that a mistake prevented insertion of that party).[12]

### 2.   Delaware's Statute of Limitations Bars Plaintiffs' Claims as to Six Trusts

Plaintiffs largely do not dispute that if the PSAs for the WaMu, WMALT, and WMABS trusts select Delaware's three-year statute of limitations, then Plaintiffs' claims on these trusts are time-barred.[13] And Plaintiffs acknowledge that at least one federal circuit has held that

---

step aside and assign any claims they held against RMBS trustees to the Plaintiffs? . . . A. Yes, I think – the situation actually resulted from a lawsuit called House of Europe I . . . and at the motion to dismiss stage Judge Sullivan from the New York Federal Court said that the CDO trust did not have standing to file this claim against the collateral manager because these rights and obligations had been passed on to the CDO trustee.").

[12] In any event, Rule 17(a)(3) does not apply where, as here, Plaintiffs allege a new assignment. *See Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns, S.A.R.L.*, 790 F.3d 411, 424 (2d Cir. 2015). Plaintiffs' various cited cases also do not assist them. In *In re Vivendi Universal, S.A. Securities Litigation*, 605 F. Supp. 2d 570 (S.D.N.Y. 2009), the defendant did not dispute that a mistake had been made. *Vivendi* also was decided before *Cortlandt*. Three other cited cases involved amendments adding new plaintiffs under Rule 15(c)(1)(C), which does not apply here for the reasons stated above. Also, in each such case there either was a mistake as to the proper party's identity, or the court held—contrary to Second Circuit authority, *see, e.g.*, *Levy v. U.S. Gen. Accounting Office*, 175 F.3d 254, 255 (2d Cir. 1999) (per curiam)—that no mistake was required under Rule 15(c)(1)(C). *See In re Barclays Bank PLC Sec. Litig.*, 2016 WL 3235290, at *3 (S.D.N.Y. June 9, 2016); *Bensinger v. Denbury Res. Inc.*, 2013 WL 3353975 (E.D.N.Y. July 3, 2013); *Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*, 2000 WL 1099866, at *9-10 (S.D.N.Y. Aug. 4, 2000). And the cases Plaintiffs lifted from a footnote in *Cortlandt* (*see* Opp'n at 13) are irrelevant because *Cortlandt* concluded that the Second Circuit had not yet adopted the rule in those cases, *see* 790 F.3d at 425 n.8, and because those cases do not dispense with the mistake requirement.

[13] For two trusts, WAMU 2006-AR17 and WMALT 2005-9, Plaintiffs contend that class action tolling from *Policemen's Annuity & Benefit Fund v. Bank of America, N.A.*, S.D.N.Y. No. 1:12-cv-02865-KBF, can save their claims. (*See* Opp'n at 15-16.) But even with class action tolling, claims on these trusts are time-barred unless they relate back to Plaintiffs' original complaint (which, as discussed above, they do not). (*See* chart re class action tolling attached as Ex. 1 to the Decl. of Matthew K. Donohue ("Donohue Decl.") filed herewith.) And even if the

where, as here, a contract selects a particular state's law to govern the "rights *and remedies*" of the parties, it incorporates the chosen state's statute of limitations:

> [T]he Loan Purchase Agreements . . . . implicitly include selection of New York's limitations period by stating that the "obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York." *This language includes New York's limitations period because the length of time to sue is something that affects the parties' "rights and remedies."* Thus, when the parties chose New York's law on remedies, their choice effectively included New York's period of limitations . . . .

*Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co.*, 660 F. App'x 554, 558-59 (10th Cir. 2016); *see generally 2138747 Ontario, Inc. v. Samsung C&T Corp.*, – N.E.3d –, 2018 WL 2898710, at *3 (N.Y. June 12, 2018) ("statutes of limitations are considered 'procedural' *because they are deemed as pertaining to the remedy*").

The cases Plaintiffs cite are not to the contrary. In both *Deutsche Bank National Trust Co. v. Barclays Bank PLC*, 156 A.D.3d 401 (2017), and *Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018), *appeal docketed* No. 18-1074 (2d Cir. Apr. 13, 2018), the choice-of-law clauses were limited to "the *substantive* laws" of the chosen state.[14] *In re Trusteeship*, 2014 WL 3858506 (S.D.N.Y. July 24, 2014), did not address whether "remedies" incorporates the statute of limitations, and "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Hunt Constr. Grp., Inc. v. Brennan Beer Gorman/Archs., P.C.*, 607 F.3d 10, 18 (2d Cir. 2010).

---

claims relate back, claims on WAMU 2006-AR17 still would be barred because such claims were not tolled until a plaintiff with standing to assert claims on that trust was added to the *Policemen's* case on November 1, 2013. (*See id.*) Although courts have disagreed on whether tolling applies when the original plaintiff lacked standing, "the better reasoned view" is that "tolling is inapplicable because the original court's subject matter jurisdiction was never invoked as to the claims that the plaintiff lacked standing to assert." 1 McLaughlin on Class Actions § 3:15 (14th ed. 2017).

[14] *See Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 2015 WL 7625829, at *1 n.1 (N.Y. Sup. Ct. 2015); Compl. Ex. A at § 12.03, in *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 1:14-cv-04394-AJN (S.D.N.Y. June 18, 2014), ECF No. 1-1.

B.     **Plaintiffs Lack Standing To Assert Claims Against BANA**

1.     **The Assignments Are Champertous and Therefore Unenforceable**

Plaintiffs do not dispute that they extracted assignments from their indenture trustees, under threat of litigation, for the sole purpose of asserting claims that were not otherwise being asserted, and that that is exactly what the champerty statute prohibits.[15]  Though Plaintiffs do not dispute that all the elements of champerty are present here, they attempt to invoke an exception to the champerty statute, recognized in *Trust for Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 195 (2009), by which an otherwise champertous assignment can be valid if its purpose was to pursue a claim on a "debt instrument in which [the assignee] holds a preexisting proprietary interest."  Plaintiffs cannot invoke this exception.

In *Love Funding*, the defendant originated a loan and sold it to Paine Webber with accompanying R&Ws.  *Id.*  Paine Webber, in turn, sold the loan to the plaintiff, and Paine Webber's successor thereafter assigned claims for breaches of the R&Ws to the plaintiff.  *Id.* at 196-97.  The plaintiff thus consolidated its *existing* ownership of the loan with its *new* ownership of the related claims.

Judge Forrest's rulings show that the facts are precisely the opposite here.  She found that Plaintiffs did not own any of the RMBS when they obtained the assignments; rather, Plaintiffs' indenture trustees owned all "right, title and interest" in the RMBS.  *Phoenix I*, 2015 WL 2359358, at *2.  As her rulings make clear, the purported assignments thus did not purport to consolidate existing ownership of the RMBS with new ownership of the claims, but on the contrary, purported to "*split off* [the claims] from the other assets of [the assignor]" to enable the

---

[15] Sep. Stmt. ¶¶ 11-13.

assignees to pursue a "settlement or an award of damages." *BSC Assocs., LLC v. Leidos, Inc.*, 91 F. Supp. 3d 319, 329 (N.D.N.Y. 2015). This "falls squarely within [the statutory] prohibition on [parties] speculating in lawsuits. . . . [and] violate[s] the doctrine of champerty." *Id.*

Plaintiffs' arguments effectively ask the Court to reverse Judge Forrest's rulings, but they are unsupported by the facts, and in any event, legally improper: "Under the doctrine of law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992). Plaintiffs' arguments also amount to asking the Court to expand *Love Funding* to pass-through entities that *once* held the underlying assets before transferring them to others. Plaintiffs' request has no case law support, would impermissibly expand the "preexisting proprietary interest" exception, and would encourage precisely the kind of "trafficking . . . in lawsuits" that the champerty statute prohibits. *BSC*, 91 F. Supp. 3d at 327, 329.

### 2.   The Assignments Violate the Indentures and Therefore Are Self-Defeating

Plaintiffs do not dispute that their indentures define the claims purportedly assigned to them as "Collateral." Plaintiffs also do not dispute that the indentures provide in substantively identical terms that, for the protection of Plaintiffs' investors, the indenture trustees "shall not, *except in accordance with the provisions of this Indenture*, release any portion of the Collateral from the lien of this Indenture."[16] Plaintiffs do not point to any provision in the indentures that authorized the indenture trustees to assign the claims to them, and their various arguments in lieu of making that mandatory showing are easily dispatched:

The 'It's Not a Release of Collateral' Argument: Plaintiffs argue that the assignments do not release Collateral because "the proceeds of the claims (called 'net recoveries' [in the

---

[16] Sep. Stmt. ¶¶ 19-21.

assignments]) must be turned over to the CDO indenture trustees."[17]  This turns the indentures on their heads.  Plaintiffs' indenture trustees hold the Collateral in part to protect it from claims by Plaintiffs' creditors.[18]  If Plaintiffs default on their obligations to their investors, those investors will be first in line to access the Collateral.[19]  But if Plaintiffs' indenture trustees can freely transfer to them what Plaintiffs call "hundreds of millions of dollars" in legal claims[20]—thereby allowing Plaintiffs to pursue those claims, take a cut of any recovery for what the assignments call "costs and expenses," and remit only what the assignments call "net recoveries"—then Plaintiffs' investors will have lost their first-lien position.[21]  Because Plaintiffs' self-serving interpretation of the indentures is contrary to their clear terms and their express purpose of protecting Plaintiffs' investors, it must be rejected.  *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 173 (S.D.N.Y. 2015) ("[C]ourts must reject interpretations of agreement provisions that are commercially unreasonable or illogical.").

The 'Judge Forrest Ruled Our Way' Argument: Plaintiffs also assert that Judge Forrest "rejected" the proposition that the assignments constitute an "impermissible release of collateral."[22]  This misstates her ruling; she concluded only that "this issue need not be resolved at the pleadings stage."  *Phoenix Light SF Ltd. v. U.S. Bank N.A.*, 2016 WL 1169515, at *7 (S.D.N.Y. Mar. 22, 2016) ("*Phoenix II*").[23]  Since her ruling, discovery has not turned up any

---

[17] Opp'n at 8.

[18] *See* Mot. at 15 n.44 & evidence cited therein.

[19] *See id.*

[20] Plaintiffs' Third Am. Compl. ("TAC") (ECF No. 209) ¶ 9.

[21] Ex. 26 to the Decl. of Adam P. Barry ("Barry Decl.") (ECF No. 249-26) (assignment document from BNYM) at 3; *id.* Exs. 27-28 (ECF Nos. 249-27 & 249-28) (assignment documents from Deutsche Bank) at 2; *id.* Ex. 29 (ECF No. 249-29) (assignment document from Wells Fargo) at 2.

[22] Opp'n at 7.

[23] Plaintiffs also misstate when they claim that Judge Forrest held that the assignment to Phoenix Light SF DAC ("Phoenix") "was not even required" (Opp'n at 8-9); if she had so held, she would not have dismissed for lack of standing.  Also, Plaintiffs' contention that Phoenix's Amended and Restated U.S. Security Agreement is

8

evidence supporting Plaintiffs' position, but *has* revealed evidence confirming that the indenture trustees are contractually prohibited from releasing legal claims from the lien of the indenture.[24] If the Court were to conclude that the indentures are ambiguous on this point, their meaning is a matter of law for the Court to decide based on the record now presented. *See Williams & Sons Erectors, Inc. v. S.C. Steel Corp.*, 983 F.2d 1176, 1184 (2d Cir. 1993).

The 'Phoenix Can Instruct' Argument: Plaintiffs argue that the indentures allow Phoenix to instruct the indenture trustees, such that "[t]here is no way that the assignments would ever be void."[25] This misstates the indentures, which do not permit Phoenix to act contrary to the interests of Plaintiffs' investors in this manner; the indentures permit Phoenix to instruct the trustees "*provided that . . . such direction shall not conflict with . . . this Indenture.*"[26] Because Phoenix's instruction to release Collateral from the liens conflicted with the indentures, the instruction provision is inapplicable.

The 'BANA Is Not a Party to the Indentures' Argument: Plaintiffs argue that the Court must indulge the fiction that assignments occurred, even if they did not, on the theory that because BANA is not a party to the indentures, BANA lacks standing to raise the issue. This improperly seeks to relitigate Judge Forrest's rulings; she held that because "the Court must independently satisfy itself that plaintiffs have standing to pursue the claims before the Court, the fact that defendants are not parties to the Indentures is irrelevant." *Phoenix I*, 2015 WL 2359358, at *2 n.5. It also misstates BANA's argument; BANA is not challenging the

---

[24] *See* Mot. at 15 & evidence cited therein.

[25] Opp'n at 10.

[26] Barry Decl. Exs. 31-37 (ECF Nos. 249-31 to 249-37) (non-Phoenix indentures) § 5.13(a).

inapplicable here is incorrect. (*See id.* at 9 n.6.) That agreement expressly governs, *inter alia*, the RMBS (and associated legal claims) acquired from entities known as Kestrel and Harrier—claims Phoenix purports to assert in this lawsuit. (*See* Barry Decl. Ex. 38 (ECF No. 249-38) (Phoenix Restated U.S. Security Agreement) at § 2.1(a)(i); TAC (ECF No. 209) ¶¶ 23, 28 (alleging RMBS acquisitions from Kestrel and Harrier).)

9

enforceability of the assignment agreements, but is pointing out that *by their express terms they do not assign anything* because they provide they are self-defeating if they would contravene the indentures. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank N.A.*, – F.3d –, 2018 WL 3650830, at *9 (2d Cir. Aug. 2, 2018) (rejecting a similar "standing" argument from Plaintiffs' counsel here, because BANA and U.S. Bank were "simply relying on the [contracts] to demonstrate" who now holds the claims). Plaintiffs' further argument that the assignment agreements' prohibition on violating the terms of the indentures is limited to acts occurring *after the assignments were executed* ignores the assignments' drafting history,[27] and is nonsensical given that the documents contain *other* provisions expressly governing post-execution conduct.[28] Because Plaintiffs did not acquire any claims by assignment, summary judgment must be granted.

## C.     Plaintiffs' Pre-EOD Claims Fail On The Merits

Plaintiffs allege that BANA breached two categories of duties existing or potentially existing prior to a contractually defined Event of Default ("EOD"): (i) certain custodial or "Post-Closing Review" duties related to loan collateral files, as summarized in Part C.1.a. of BANA's opening brief; and (ii) certain duties triggered upon the trustee's "discovery" of a material loan-level R&W breach by the seller of the loan or the sponsor of the securitization, as discussed in Part C.2 of BANA's opening brief. Both categories of claims fail as a matter of law, warranting summary judgment for BANA.

### 1.     Plaintiffs' Pre-EOD Claims Relating to Custodial Duties Fail

#### (a)     For the non-MSM trusts, Plaintiffs concede that BANA is entitled to

---

[27] *See* Opp'n at 10.

[28] *See, e.g.*, Barry Decl. Ex. 27 (ECF No. 249-27) (assignment document from Deutsche Bank) at 2 ("[T]he Trustee shall have no duties or obligations with respect to the Assigned Rights, other than to distribute the net recoveries on receipt pursuant to the terms of the Indentures.").

**summary judgment**

Plaintiffs' opposition brief abandons all claims against BANA (i) related to the Post-Closing Review period; and (ii) related to Post-Closing Review duties except duties in the MSM trusts.  Plaintiffs say that they "do not allege a PSA breach by BANA in connection with any early custodial duties or the post-closing review."[29]

### (b)      For the MSM trusts, Plaintiffs have no evidence that BANA "received" "written notice" of material document deficiencies

Plaintiffs do not dispute that, under the PSAs for the MSM trusts, once the Post-Closing Review Period expired, the trustee's duties relating to document exceptions could arise *only* upon the trustee's "receipt of written notice" of a "materially defective" or "missing" document.[30]  Yet Plaintiffs offer no evidence that BANA received such written notice from any other deal party.  Plaintiffs argue, however, that because BANA (in its capacity as custodian for some trusts) logged loan sellers' cures of document exceptions in a database, BANA (in its capacity as trustee) somehow should be deemed to have "received written notice of the seller's failure to cure" *other* exceptions.[31]  This argument fails to create a triable issue of fact.

Maintenance of a database of cures does not constitute "receipt of written notice" of anything, much less of *uncured* document exceptions.  A "receipt of written notice" requirement serves a specific purpose: "to specify a particular single act . . . which must occur before [the defendant] is charged with knowledge of the [issue] or obliged to exercise any remedies, rather than leaving questions of the timing and amount of its knowledge (and hence its obligation to

---

[29] Opp'n at 21.  As a result, BANA is entitled to summary judgment on Plaintiffs' pre-EOD claims relating to custodial duties for MLMI 2006-AR1, MLMI 2006-HE6, MLMI 2006-RM4, MLMI 2006-WMC2, OWNIT 2006-3, OWNIT 2006-4, WAMU 2006-AR17, WMABS 2006-HE1, WMALT 2005-6, WMALT 2005-9, WMALT 2006-AR8, and WMALT 2006-AR9.

[30] *See* Mot. at 21, 23; Barry Decl. Ex. 5 (chart quoting MSM trust PSA provisions re custodial review process).

[31] Opp'n at 22.

act) to the uncertainties of later litigation over when such knowledge should be imputed." *Argonaut P'Ship L.P. v. Bankers Tr. Co.*, 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001). The custodian's maintenance of a database of cures does not fulfill this purpose, nor does it constitute "receipt" of "written notice" by the trustee at all, let alone as defined in the PSAs.[32]

Moreover, the trustee's duties could arise only upon receipt of written notice of *materially* defective or missing documents, not, as Plaintiffs seem to assume, *any* uncured document exception.[33]  Yet BANA's custodial department logged cures without regard to materiality.[34]  Even if BANA's maintenance of a database tracking cures could be said to have constituted "receipt" of "written notice" of uncured document exceptions, it could not constitute "receipt" of "written notice" of *material* uncured exceptions, and thus, could not have triggered duties related to any such exceptions.  Indeed, as BANA pointed out in its opening papers—and as Plaintiffs do not dispute—it was only "other deal parties [who], unlike the trustee, had the expertise to determine which, if any, of the exceptions were material."[35]

Plaintiffs have not raised a triable issue as to Post-Closing Review duties.

### 2.  Plaintiffs' Pre-EOD Claims Relating to R&Ws Fail

Plaintiffs attempt to sidestep their lack of evidence that BANA discovered a particular R&W breach as to a particular loan by essentially saying, 'Don't worry about it.'  According to Plaintiffs, BANA should be *deemed* to have discovered whatever R&W breaches Plaintiffs ultimately argue in this case, on the theory that BANA could have "nose[d] to the source" and

---

[32] *See* Donohue Decl. Ex. 2 (chart quoting PSA provisions requiring notices be in writing and sent to specific Chicago address, in some cases by specified means of delivery).

[33] Barry Decl. Ex. 5 (chart quoting MSM trust PSA provisions re custodial review process).

[34] *See* Fitzgerald Decl. Ex. 765 (ECF No. 324-765) (BANA's Supp. Resps. to 2d Set of Interrogs.) at 6-7 ("[I]t was BANA's practice as Custodian to log cures of items identified as document exceptions (whether or not they actually addressed defects in the collateral loan files as defined in applicable PSAs and/or were material) . . . .").

[35] Mot. at 19.

"performed an inquiry when it learned of facts suggestive of a breach" from generalized

information in the marketplace and in aggregate loan data.[36]  Though Plaintiffs' "nose to the

source" theory sometimes has been accepted as a means of *pleading* discovery of R&W

breaches, it consistently has been rejected as a means of *proving* such discovery—including in

Plaintiffs' case before Judge Caproni.  *See Phoenix v. BNYM*, 2017 WL 3973951, at *8-9.[37]  The

reason is simple: The PSAs provide that "the Trustee . . . *shall [not] be bound to make any*

*investigation*" unless both *directed* by certificateholders and *indemnified* for the costs of the

investigation.[38]  *See Commerce Bank v. Bank of N.Y. Mellon*, 141 A.D.3d 413, 415-16 (2016)

("[T]he trustee of an RMBS . . . trust does not have a duty to 'nose to the source.'").

Although Plaintiffs quibble about whether BANA had sufficient indemnity to undertake

an investigation, they offer no evidence or argument whatsoever that BANA was *directed* to do

so by the contractually required percentage of certificateholders.[39]  Plaintiffs thus "cannot [hold

the trustee] liable for breach on the basis of constructive knowledge," *Phoenix Light SF Ltd.*

*(BlackRock) v. Wells Fargo Bank, N.A.*, 2017 WL 3610511, at *9 (S.D.N.Y. Aug. 21, 2017), and

instead must proffer evidence that BANA actually discovered particular R&W breaches as to

particular loans.  As shown below, Plaintiffs have no such evidence.

    **(a)**      **Collateral file exception reports are not evidence of discovery of**
                **material R&W breaches, and could support only a time-barred claim**
                **in any event**

Plaintiffs argue that BANA's receipt of collateral file exception reports gave rise to

"discovery" of material R&W breaches.  As BANA showed in its opening brief, however,

---

[36] Opp'n at 24.

[37] *See also* Mot. at 23-25 & n.68 and authorities cited therein.

[38] Barry Decl. Ex. 40 (ECF No. 249-40) (WaMu 2006-AR17 PSA) § 8.02(iv); *see also* Barry Decl. Ex. 11 (ECF No. 249-11) (chart quoting PSA provisions concerning no duty to investigate).

[39] *See* Opp'n at 24-25.

numerous courts have rejected this argument.[40]  BANA further showed that, in any event,

Plaintiffs' claims that BANA failed to notify other deal parties of such "discovery" are time-

barred:[41] Every PSA required BANA to "*promptly* notify" the other deal parties, such that if any

such duty arose, it necessarily was breached, if at all, shortly after BANA received the collateral

file exception reports during the Post-Closing Review Period in 2006 and 2007—more than six

years before Plaintiffs first attempted to file this litigation.[42]  *See Bank of N.Y. Mellon Trust Co.,*

*Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*, 2013 WL 3146824, at *23 (S.D.N.Y. June

19, 2013) ("Eighteen months after discovery of all relevant facts is [not] prompt . . . .").

        Plaintiffs try to shoehorn their claims into the limitations period by saying that BANA

had a "reasonable time" beyond the Post-Closing Review Period to enforce the obligations of the

loan sellers or securitization sponsors to repurchase the affected loans or otherwise cure the

R&W breaches.[43]  This ignores the process prescribed by the PSAs: If the trustee or another

specified deal party discovered a R&W breach, the discovering party would promptly notify the

seller and/or sponsor so as to trigger an obligation on the part of the seller/sponsor to cure the

breach or repurchase the loan, and if the seller/sponsor failed to do so, *then* the trustee could

enforce the obligation.[44]  Thus, under the process prescribed by the PSAs, if notice was not first

given to the seller/sponsor, the seller/sponsor had no repurchase obligation for the trustee to

enforce.  The contracts thus make clear that even if BANA discovered a R&W breach upon

receipt of a collateral file exception report (which it did not), any breach on BANA's part

---

[40] *See* Mot. at 25 n.70; *see also U.S. Bank N.A. v. UBS Real Estate Sec., Inc.*, 2017 WL 2437290, at *3 (S.D.N.Y. Apr. 21, 2017) (special master decision noting that in *U.S. Bank N.A. v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386 (S.D.N.Y. 2016), Judge Castel reviewed a sample of loans for R&W breaches and "did not find that a missing document-related breach caused a material and adverse effect").

[41] *See* Mot. at 25-26.

[42] *See id.* and evidence cited therein.

[43] Opp'n at 21.

[44] *See* Sep. Stmt. ¶¶ 39-42.

necessarily would have consisted of failing to *promptly notify* the seller/sponsor so as to trigger the seller/sponsor's obligations, *not* of failing to enforce obligations that never came into existence.[45]  Any such breach thus necessarily occurred, if at all, more than six years before Plaintiffs filed this case.

### (b)     Notices alleging the *possibility* of R&W breaches do not constitute trustee discovery of *actual* breaches

Plaintiffs also attempt to show that BANA discovered loan-specific R&W breaches by pointing to a smattering of letters that they characterize as having informed BANA of "578 loans . . . with breaches of R&Ws."[46]  But most of those letters did not even *assert* that a R&W breach had occurred.  For 465 of the 578 loans that Plaintiffs identify,[47] the associated letter merely requested access to loan files for purposes of investigating *whether* breaches had occurred.[48]  And the bulk of the remaining letters merely asserted "*possible* contract breach[es]," "a *potential* breach of an individual [R&W]," or breaches of *other agreements* such as insurance policies or mortgage loan purchase agreements.[49]

Plaintiffs cannot use these letters to create a triable issue concerning whether BANA discovered that a particular R&W actually had been breached as to a particular loan.  Because Plaintiffs cannot charge BANA with constructive knowledge for the reasons stated in Part C.2 above,[50] they must "prove, on a loan-by-loan basis, that the trustee had *actual* knowledge of the

---

[45] Plaintiffs do not argue or offer evidence that BANA breached any duty to enforce the obligations of the seller/sponsor after notice was first given to the seller/sponsor.

[46] Opp'n at 22-23.

[47] *See* Corrected Plaintiffs' Counter-Statement of Undisputed Facts (ECF No. 323) ¶¶ 309-310.

[48] *See* Fitzgerald Decl. Ex. 779 (ECF No. 324-779) (Ltr. from ING Direct) at BANA-PHXLT000136815.

[49] *See, e.g.*, Fitzgerald Decl. Ex. 804 (ECF No. 324-804) (alleged breach of master insurance policy); *id.* Ex. 805 (ECF No. 324-805) ("potential breach" of mortgage loan purchase agreement); *id.* Exs. 806-07 (ECF Nos. 324-806 & 324-807) ("Possible Breach Claim"); *see also* Donohue Decl. Ex. 3 (chart listing Plaintiffs' letters identifying alleged R&W breaches).

[50] *See also* Mot. at 23-25, 27-28.

specific nonconforming loans as to which it allegedly failed in its contractual duty." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2018 WL 1088020, at \*3 (S.D.N.Y. Feb. 12, 2018) (emphasis omitted); *accord Phoenix Light SF Ltd. (Royal Park Invs. SA/NV) v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 602-03 (S.D.N.Y. 2015).  And Plaintiffs bear this burden as to four trusts for an even more elemental reason: Those PSAs *define* "discovery" of a R&W breach to mean "in the case of the Trustee, having actual knowledge thereof."[51]

Plaintiffs also bear the burden of showing actual knowledge because the PSAs provide that BANA "shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized" by the contracts.[52]  Susan Franklin, a 23-year BANA veteran and former trustee officer,[53] testified that her "personal understanding" was that BANA's duties arose only upon "[a]ctual knowledge of [a R&W] breach, not just an allegation."[54]  And she testified to why and how she reached this conclusion: She spent nine years in the "contract review" group for RMBS products, "reviewing the governing agreements" when the trusts closed, and then advising trust administrators regarding such agreements on an "ongoing" basis.[55]  Her knowledge is imputed to BANA under basic agency principles, *see Hazzard v. Chase Nat'l Bank*, 287 N.Y.S. 541, 561 (N.Y. Sup. Ct. 1936), and there is no evidence that this was not a good-faith belief.  Nor can her belief be considered unreasonable,[56] given the plethora of decisions from this District holding that BANA's belief was not just reasonable, but *correct*.[57]

---

[51] Barry Decl. Ex. 6 (chart quoting PSA provisions concerning the knowledge requirement for R&W breaches, including as to WaMu 2006-AR17, WMABS 2006-HE1, WMALT 2006-AR8, and WMALT 2006-AR9).

[52] *Id.* Ex. 3 (ECF No. 249-3) (chart quoting PSA provisions concerning no liability for acts taken or omitted in good faith).

[53] *See* Fitzgerald Decl. Ex. 755 (Tr. of Depo. of BANA's Rule 30(b)(6) Witness) at 7-11.

[54] Sep. Stmt. ¶¶ 43-44; *see also* Barry Decl. Ex. 43 (ECF No. 249-43) (Susan Franklin Depo. Tr.) at 90-91.

[55] Fitzgerald Decl. Ex. 755 (Tr. of Depo. of BANA's Rule 30(b)(6) Witness) at 8-11.

[56] *See* Opp'n at 25.

[57] *See* Mot. at 23-25, 27 & authorities cited therein.

Because the letters Plaintiffs cite did not give BANA actual knowledge of a loan-specific R&W breach, and because, in any event, BANA reasonably and in good faith believed that such knowledge was required, the letters do not create a triable issue even as to the loans identified therein.  Accordingly, summary judgment must be granted on the entirety of Plaintiffs' pre-EOD R&W-related claims.[58]

### (c)   Even under the *Phoenix v. BNYM* relaxed summary judgment standard for "discovery" of R&W breaches, BANA is entitled to summary judgment on more than 99% of the loans at issue

Plaintiffs observe that in *Phoenix v. BNYM*, Judge Caproni found a triable issue as to loans identified in letters received by the trustee as allegedly breaching specific R&Ws.[59]  For the reasons stated above and in BANA's opening brief, BANA respectfully disagrees with this aspect of the decision, and in any event, Judge Caproni did not address the "good faith" issue that separately requires summary judgment here as discussed above.  But *even under the*

---

[58] Plaintiffs extensively discuss allegations in a lawsuit brought by U.S. Bank (as trustee of MLMI 2006-RM4) against BANA (as predecessor trustee) to the effect that BANA developed a conflict of interest in that trust when its parent agreed to acquire a Merrill Lynch entity.  (*See* Opp'n at 17-18.)  As an initial matter, the PSA for that trust contains a "no-action clause" (*see* Ex. 91 to the Corrected Decl. of Michael T. Marcucci (ECF No. 267-95) § 10.08), which bars Plaintiffs from pursuing this claim, particularly given that U.S. Bank *already is pursuing it* on behalf of the trust.  *See Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 567 (2014) ("[T]he purpose of the no-action clause [is] to avoid duplicative suits and protect the majority interests by mandating that actions be channeled through the Trustee.").  And even if, *arguendo*, BANA had developed a conflict in the MLMI 2006-RM4 trust, Plaintiffs fail to point to any provision of the PSA that would have been breached thereby, and Judge Forrest previously dismissed Plaintiffs' tort claims alleging that BANA was "acting under a conflict of interest."  *Phoenix II*, 2016 WL 1169515, at *5; *see also id.* at *9-10.  Plaintiffs separately argue that BANA breached pre-EOD obligations relating to the Ownit bankruptcy.  (Opp'n at 20.)  But any claim premised on BANA's failure to include document deficiency claims is time-barred because it perforce accrued when BANA filed its original Ownit proofs of claim on June 15, 2007 (*see* Exs. 4 & 5 to the Donohue Decl. filed herewith)—not, as Plaintiffs contend, when BANA filed *amended* proofs of claim in February 2009, because post bar-date amendments are not permitted when their "purpose is to create an entirely new claim."  *In re Enron Corp.*, 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003); *see also* Order Establishing June 15, 2017 as the General Bar Date, *In re Ownit Mortg. Solutions, Inc.*, No. 1:06-bk-12579-VK (C.D. Cal. Apr. 9, 2007), ECF No. 239.  More fundamentally, and as described above, there is no evidence that BANA discovered material R&W breaches or document defects in the Ownit trusts such that BANA was required to include document deficiency claims in the proofs of claim, or to "prosecute" what Plaintiffs vaguely call "the true extent of the loan quality R&W defects."  (Opp'n at 20.)

[59] Opp'n at 1; *see also id.* at 23-24.  Plaintiffs identify 106 loans for which they claim BANA received purported notices of a R&W breach.  Plaintiffs did not identify five of those loans in discovery, but only for the first time in their Opposition brief, so BANA's opening brief referenced 101, not 106, such loans.  (*See* Mot. at 3, 29; Donohue Decl. Ex. 3 (chart listing Plaintiffs' letters identifying alleged R&W breaches).)

*standard she applied*, BANA is entitled to summary judgment as to *every loan in this case* except the 106 loans for which BANA received notices asserting potential R&W breaches.[60]

## D.   Plaintiffs' Post-EOD Claims Fail On The Merits

### 1.   Plaintiffs Have No Evidence of an EOD While BANA Was Trustee

Plaintiffs spend pages and pages arguing one of the predicate elements of an EOD, namely, a material breach of duty by the servicer (or in some trusts, the master servicer or depositor).[61]  But BANA did not move for summary judgment based on this element.  Rather, BANA moved for summary judgment based on Plaintiffs' failure of proof on a separate element: written notice from a designated deal party to the servicer (or master servicer or depositor) of its breach.[62]  As BANA pointed out—and as Plaintiffs do not dispute—Plaintiffs have no evidence that any authorized deal party ever provided such notice.  Because BANA thus has shown that no EOD occurred while it was trustee, it is entitled to summary judgment on the post-EOD claims.

Plaintiffs argue, however, that under the "prevention doctrine," notice should be *deemed* given even though it was not.  Plaintiffs do not dispute BANA's showing that to invoke the prevention doctrine, they must show either (i) that BANA engaged in "active conduct . . . to frustrate" the giving of notice by another party; or (ii) that BANA was not only authorized, but affirmatively required, to give the notice itself.  *In re Bankers Trust*, 450 F.3d 121, 128 (2d Cir. 2016).  Plaintiffs do not argue or offer evidence that BANA engaged in such "active conduct,"

---

[60] *See* Sep. Stmt. ¶¶ 45-46.  Plaintiffs say that Judge Caproni's standard saves their claims as to 578 loans, not 106, but their evidence as to all but the 101 loans BANA identified in its opening papers (and five additional loans Plaintiffs identified in their Opposition, *see supra* n.59) does not meet even Judge Caproni's standard.  Four hundred sixty-five loans (that is, all but seven of the additional loans to which Plaintiffs point) are referenced in a September 23, 2009 letter from an investor named ING Direct.  (*See* Fitzgerald Decl. Ex. 779 (ECF No. 324-779) (Ltr. from ING Direct).)  But this letter asked for access to the loan origination files so that ING Direct could "re-underwrit[e] the related Mortgage Loans to determine *whether* breaches of representations and warranties exist."  (*Id.*)  This letter does not meet Judge Caproni's standard for creating a triable issue.

[61] *See* Opp'n at 27-31.

[62] *See* Mot. at 29-31.

and instead rest solely on the notion that BANA had a duty to provide the notice or that no notice

was required at all.  Plaintiffs' arguments fail:

- Plaintiffs argue that "[s]ixteen of the PSAs provide that written notice of breaches by the servicer 'shall have been given by the trustee.'"[63]  Plaintiffs seize on the word "shall," but ignore BANA's showing that this is used in the *definition* of an EOD, and the phrase "shall have been given" is not in the imperative, but rather is in the present-perfect tense, such that it connotes not a duty, but rather a condition.[64]  Plaintiffs simply ignore binding New York authority holding that this language does *not* require notice because it "merely defines 'Event of Default.'" *Fixed Income Shares: Series M v. Citibank, N.A.*, 157 A.D.3d 541, 542 (2018).

- Plaintiffs argue that "[t]he MSM trusts expressly provide that the trustee must provide notice of servicer breaches."[65]  But that does not mean that Plaintiffs can use the prevention doctrine to manufacture an EOD where none occurred. Controlling New York authority holds that where, as here, other deal parties— including certificateholders themselves—were authorized to provide the notice,[66] the trustee cannot be deemed to have "prevented" the giving of notice, and the prevention doctrine thus cannot apply.  *See Fixed Income*, 157 A.D.3d at 543 ("In any event, under the PSA, the Holders of Certificates entitled to at least 25% of the Voting Rights could have sent notice of the servicers' failure."); *see also, e.g.*, *W. & S. Life Ins. v. Bank of N.Y. Mellon*, 2017 WL 3392855, at *21 (Ohio Ct. Common Pleas Aug. 4, 2017) (declining to apply the prevention doctrine because "investors remained able to notify the Master Servicer themselves").

- Plaintiffs argue that "[f]or six Trusts, BANA was required to provide a report on SEC Form 10-D" listing "covenant breaches."[67]  Plaintiffs cite no authority supporting their theory that such a report constitutes notice to the servicer, master servicer, or depositor for EOD purposes.  And, the six PSAs (for the MLMI and OWNIT Trusts) require only that "the [PSA] parties . . . [disclose] . . . any breaches of . . . transaction covenants of which the party has *written notice* . . . ."[68]  Plaintiffs have not cited any evidence that BANA received written notice concerning any of the alleged servicer breaches, and absent such notice, the PSAs are clear that the trustee has "*no duty* or liability for any failure hereunder to determine or prepare any additional information on Form 10-D."[69]

- Plaintiffs argue that "[f]or one trust, WMABS 2006-HE1," notice was

---

[63] Opp'n at 33.

[64] *See* Mot. at 33.

[65] Opp'n at 32.

[66] *See* Mot. at 30; Barry Decl. Ex. 7 (chart of PSA provisions defining an EOD).

[67] Opp'n at 33.

[68] *See* Donohue Decl. Ex. 6 (chart quoting PSA provisions regarding Form-10-D disclosures).

[69] *Id.*

unnecessary because an EOD can arise upon "actual knowledge of [the servicer's] failure by the servicer," and "the servicer was aware of its own conduct."[70] Plaintiff utterly ignores BANA's showing that it is not enough to show that the servicer *as an entity* had knowledge of its breach of duty; rather, Plaintiffs must show that a specifically defined "Servicing Officer of the Servicer" had such knowledge, and Plaintiffs have presented no such evidence.[71]

Because no authorized party provided the written notice to the servicer, master servicer, or depositor that is a predicate element of an EOD, no EOD occurred while BANA was trustee.[72]

### 2.   Plaintiffs Have No Evidence That a "Responsible Officer" of BANA Had "Written Notice" or "Actual Knowledge" of an EOD

The PSAs for the MLMI and OWNIT trusts provide that the trustee has no post-EOD duties unless a contractually defined Responsible Officer "shall have received written notice thereof"; and the PSAs for the remaining trusts provide that the trustee has no post-EOD duties unless a Responsible Officer shall have received "written notice" or "actually know[s]" of the EOD.[73]   Plaintiffs have no such evidence.   Instead, they float arguments contrary to the plain meaning of the contracts.[74]   Plaintiffs' arguments have been rejected in their other cases, and should be rejected here as well for the reasons stated in Defendants' opening papers and in U.S. Bank's reply brief.   *See, e.g.*, *Phoenix v. BNYM*, 2017 WL 3973951, at *16-17.

### CONCLUSION

For the reasons stated above, summary judgment for BANA should be granted.[75]

---

[70] Opp'n at 33.

[71] *See* Mot. at 30 n.83.

[72] Plaintiffs' depositor EOD theory regarding some of the Washington Mutual trusts (*see* Corrected Pls.' Counter-Statement of Undisputed Facts (ECF No.321) ¶¶ 207-225), fails for, *inter alia*, the reasons stated in U.S. Bank's reply brief.   (*See* U.S. Bank Reply, Part III.C.)

[73] *See* Mot. at 34-35 & evidence cited therein.

[74] Opp'n at 33-35.

[75] BANA joins in U.S. Bank's briefing showing that (i) Plaintiff C-BASS XVII's claims as to WMALT 2005-9 were released in the *Policemen's* settlement; and (ii) for the MSM, MLMI, and OWNIT trusts, Plaintiffs cannot recover the consequential damages they seek.

Respectfully submitted,

Dated: August 6, 2018              By: _____

MUNGER, TOLLES & OLSON LLP
James C. Rutten
Jacob S. Kreilkamp
Wesley T.L. Burrell
Adam P. Barry
Matthew K. Donohue
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071-3426
(213) 683-9100; (213) 687-3702 (fax)
james.rutten@mto.com
jacob.kreilkamp@mto.com
wesley.burrell@mto.com
adam.barry@mto.com
matthew.donohue@mto.com

SIDLEY AUSTIN LLP
David F. Graham
Mark C. Brown
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000; (312) 853-7036 (fax)
dgraham@sidley.com
mark.brown@sidley.com

SIDLEY AUSTIN LLP
Isaac S. Greaney
Daniel Gimmel
Jon W. Muenz
787 Seventh Avenue
New York, New York  10019
(212) 839-5300; (212) 853-5599 (fax)
igreaney@sidley.com
dgimmel@sidley.com
jmuenz@sidley.com

*Attorneys for Defendant Bank of America, N.A.*