```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
PHOENIX LIGHT SF LIMITED, et al.,                           :
                                                            :
                                   Plaintiffs,              :
                                                            :        14-CV-10116 (VSB)
                - v -                                       :
                                                            :        **OPINION & ORDER**
U.S. BANK NATIONAL ASSOCIATION,                             :
                                                            :
                                   Defendant.               :
                                                            :
------------------------------------------------------------X
```

Appearances:

David H. Wollmuth
Lyndon M. Tretter
Steven S. Fitzgerald
Roselind F. Hallinan
Wollmuth Maher & Deutsch LLP
New York, NY

*Counsel for Plaintiffs*

Louis A. Chaiten
Jones Day
Cleveland, OH

David F. Adler
Michael T. Marcucci
Jones Day
Boston, MA

Samuel L. Walling
Jones Day
Minneapolis, MN

Albert J. Rota
Jones Day
Dallas, TX

*Counsel for Defendant U.S. Bank National Association*

VERNON S. BRODERICK, United States District Judge:

Before me is Plaintiffs Phoenix Light SF Limited, Blue Heron Funding VI Ltd., Blue Heron Funding VII Ltd., Kleros Preferred Funding V PLC, Silver Elms CDO PLC, Silver Elms CDO II Limited, C-BASS CBO XIV Ltd., and C-BASS CBO XVII Ltd.'s (together "Plaintiffs") motion pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, (Doc. 423), seeking reconsideration of my March 18, 2020 Opinion & Order granting Defendant U.S. Bank's ("Defendant") motion for summary judgment, (Doc. 421), and alteration of the Clerk's judgment. For the reasons that follow, Plaintiffs' motion is DENIED.

I. **Procedural History**[1]

On April 15, 2020, Plaintiffs filed the instant motion for reconsideration and to alter the judgment, supported by a memorandum of law. (Docs. 423, 424.) Defendant filed a memorandum of law in opposition on May 14, 2020, (Doc. 430), and Plaintiffs filed their reply memorandum of law on June 1, 2020, (Doc. 432). In addition to these submissions, I consider the summary judgment record that was considered by me in connection with the Summary Judgment Opinion & Order, as well as Judge Forrest's two motion to dismiss opinions and the parties' submissions in connection with those opinions.

II. **Legal Standard**

Generally, a party seeking reconsideration must show either "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

---

[1] I assume the parties' familiarity with the background of this action, which is more fully set forth in Judge Katherine B. Forrest's two motion to dismiss opinions, *see Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116 KBF, 2015 WL 2359358, at *1 (S.D.N.Y. May 18, 2015) ("*Phoenix Light I*"); *Phoenix Light SF Ltd., et al. v. U.S. Bank Nat'l Ass'n*, No. 14-cv-10116 (KBF), 2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016) ("*Phoenix Light II*"), and my March 18, 2020 Opinion & Order granting Defendant U.S. Bank's motion for summary judgment, *see Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116 (VSB), 2020 WL 1285783 (S.D.N.Y. Mar. 18, 2020) ("Summary Judgment Opinion & Order").

manifest injustice.'" *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701–02 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting *Doe v. NYC Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983))). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'. . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) ("[A] party may not advance new facts, issues or arguments not previously presented to the Court." (citation omitted)). "Rather, 'the standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys, Inc.*, 684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  Where the motion "merely offers substantially the same arguments . . . offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Silverman v. Miranda*, 2017 WL 1434411, at *1 (S.D.N.Y. Apr. 10, 2017). The decision of whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753(KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

"Under Rule 59(e), a district court may 'alter or amend judgment to correct a clear error of law or prevent manifest injustice.'" *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (summary order) (quoting *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (internal quotation marks omitted)). "The

'manifest injustice' standard is, by definition, 'deferential to district courts and provide[s] relief only in the proverbial "rare case."'" *Id.* (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)).  However, as the Second Circuit has observed, "a judgment in a civil case does not constitute 'manifest injustice' where the movant's arguments for relief 'were available to the [party] [] and [the party] proffer[s] no reason for [its] failure to raise the arguments.'"  *Id.* (quoting *In re Johns–Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014) (internal quotation marks omitted)).

### III.  Discussion

Plaintiffs state that judgment was entered against them based upon "one thinly briefed issue:  how champerty supposedly deprived the Court of Article III jurisdiction back in 2015 when Plaintiffs' indenture trustees assigned their rights to bring claims against U.S. Bank and other RMBS trustees."  (Doc. 424, at 1.)  Throughout Plaintiffs' motion for reconsideration, however, Plaintiffs mischaracterize the record, fail to identify any controlling decisions or data that were overlooked in the Summary Judgment Opinion & Order, and resort to new arguments not originally presented or suggested in their summary judgment briefing without justification.

#### A.  *Plaintiffs' Litigation Strategy*

Plaintiffs' litigation strategy throughout this case is critical to my analysis of the instant motion for reconsideration.  As outlined by Judge Forrest in *Phoenix Light I*, Plaintiffs' CDO Indentures "indicate[d] that plaintiffs [were] contractually barred from directly asserting claims as to the [RMBS] certificates at issue in this action, and that such claims belong[ed] to the indenture trustees."  *Phoenix Light I*, 2015 WL 2359358, at *2.  Judge Forrest made this observation after concluding that the Granting Clauses in the CDO Indentures constituted a "full assignment" of Plaintiffs' rights, title, and interest in the RMBS Certificates.  *Id.* (citing *Banque*

4

*Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 152 (2d Cir. 1995) (under New York law, a contract granting all "rights, title and interest" to another results in a "transfer" of claims), and *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights . . . and leaves the assignor without standing to sue." (citation omitted)).  In an attempt to cure this standing defect, Plaintiffs obtained formal assignments from the CDO Indenture Trustees and filed a Second Amended Complaint.

When faced with a subsequent motion to dismiss brought in part on champerty grounds, although Plaintiffs had obtained formal assignments and argued that such assignments were sufficient to satisfy the Court's standing inquiry, Plaintiffs maintained that the assignments were not necessary, "respectfully submit[ting] . . . that the Granting Clauses to the [CDO I]ndentures merely create[d] a security interest," but did not deprive Plaintiffs of their rights in the RMBS certificates.  (Doc. 87, at 19.)  Judge Forrest squarely rejected this argument, stating that "[s]uch assignments were necessary" for Plaintiffs to pursue a third party beneficiary breach of contract claim, because—through the CDO Indentures—Plaintiffs had "'[g]rant[ed] to the Indenture Trustee[s]'" all their rights "in the underlying [RMBS] certificates."  *Phoenix Light II*, 2016 WL 1169515, at *7.  Foreshadowing for Plaintiffs the importance of developing an adequate factual record during discovery to support their argument of their standing to bring a third party beneficiary breach of contract claim, and the significance of presenting adequate legal arguments to address Defendant's champerty defense, Judge Forrest stated at the outset of *Phoenix Light II* that "[t]he bulk of the briefing, and the most difficult question for the Court . . . , is, as it had been in the first round of motion practice, standing." *Phoenix Light II*, 2016 WL 1169515, at *1.  Judge Forrest then denied the motion to dismiss on champerty grounds without prejudice, noting

5

that she could not resolve the "factually-based" affirmative defense on a motion to dismiss, and indicating that whether Plaintiffs "had a preexisting proprietary interest" in the RMBS certificates would be a dispositive issue on summary judgment. *Id.* (quoting *Tr. for the Certificate Holders of Merrill Lynch Mortg. Inv'rs, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 202 (2009) (answering certified question from Second Circuit)).

On summary judgment, however, Plaintiffs continued to press their already twice-rejected argument that the CDO Indenture's Granting Clauses did not effect a full assignment of their rights in the RMBS certificates, and relied solely on that strategy to oppose Defendant's champerty defense. More specifically, Plaintiffs argued that despite the Granting Clauses, they continued to "hold securities, including RMBS," (Pl. Mem. 4),[2] and that "while the Plaintiffs pledged their assets (*i.e.*, the RMBS) to their respective indenture trustees as collateral for their obligations under their own securities, the ownership of the RMBS remained with Plaintiffs." (Pl. Mem. 4.) On this basis, and only on this basis, Plaintiffs argued that they "ha[d] property interests in the RMBS certificates at issue," (Pl. Mem. 6), and that they "entered into the assignments to protect their pre-existing interests in the certificates," (*id.* at 7), such that the assignments were not champertous, (*id.* at 6–7). During Oral Argument, Plaintiffs continued to press this argument as the basis for standing:

> I think that the problem that we're having, the disconnect, the two trains passing in the night, is the misunderstanding of what the grant was. The grant was of a security interest, in other words, you have a CDO, an issuer, and it issues notes to various people, and those notes need to be secured by something, and they're secured by collateral, and the collateral happens to be the RMBS certificates. But the note issuer, the one who is getting the debt or getting the money, still owns it, it's pledging it. It's a pledge, as this document says, it's a grant in trust to an indenture trustee—which is not a real trust, it's not an express trust—. . . but the ownership, the fee remains at all times—even if not the possession—the ownership interest,

---

[2] "Pls. Mem." refers to Plaintiffs' Memorandum of Law in Opposition to Bank of America, N.A.'s Motion for Summary Judgment. (Doc. 320.)

6

>the propriety interest for our purposes, remains with the issuer at all times from the very beginning of the day that it issues notes.

(Oral Arg. Tr. 10:6-21.)[3]  This argument was not only addressed and defeated by Judge Forrest's two motion to dismiss opinions rejecting Plaintiffs' reading of the CDO Indentures—which I adopted as law of the case—the argument was also incorrect in light of the multiple analogous cases—which I will not recite again here—holding that the language in the Granting Clauses effected a complete transfer of Plaintiffs' rights.  (*See* Summary Judgment Opinion & Order 31–32.)[4]  It was based upon this background set forth in the record described above that I stated the following:

>Given the conclusion that the CDO Indentures effected a full transfer of Plaintiffs' right and title to the RMBS certificates at issue, and my adoption of that conclusion here, it follows that Plaintiffs conveyed any preexisting proprietary interest in the RMBS certificates to the CDO Indenture Trustees upon executing the CDO Indentures.  Thus, the reassignments back to Plaintiffs of the CDO Indenture Trustees' rights to sue on the RMBS certificates do not fall under the preexisting proprietary interest exception to the champerty doctrine articulated in *Love Funding Corporation*, 13 N.Y.3d at 195.  To the extent Plaintiffs could identify other preexisting proprietary interests in the RMBS certificates, they have not done so here.

(*Id.* 34–35.)[5]

---

[3] "Oral Arg. Tr." refers to the transcript of Oral Argument held on October 26, 2018.  (Doc. 380.)

[4] The fact that Plaintiffs continued to press an already twice-rejected strategy underscores a central theme of standing jurisprudence, which involves a "judicial effort to ensure, in every case or controversy, 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962) and citing *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) ("At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness" (internal quotation marks omitted)).  Plaintiffs failed to bring forth that concrete adverseness, which in the end was fatal to their claims.

[5] Also crucial to my Summary Judgment Opinion & Order was the fact that Plaintiffs' summary judgment opposition papers and Local Civil Rule 56.1 statement identified no genuine factual dispute regarding Plaintiffs' purpose in obtaining the assignments from the CDO Indenture Trustees.  Indeed, as summarized in the Summary Judgment Opinion & Order, Plaintiffs did not offer any properly supported factual assertions to meet Defendant's assertions on this score.  Instead, Plaintiffs continued to point to the Granting Clauses in the CDO Indentures, relying exclusively on the legal argument that they owned the relevant RMBS certificates in an attempt to satisfy the *Love Funding* exception to New York's champerty rule.

### B.  *Plaintiffs' New Summary Judgment Arguments*

Given the above history, I find unavailing Plaintiffs' contention that they "did not have reason to address many of the [standing] issues" raised in my Summary Judgment Opinion & Order.  (Doc. 424, at 5.)  In their motion for reconsideration, however, Plaintiffs press myriad new arguments as to why the *Love Funding* exception applies in this case, none of which I can consider.  In the Second Circuit, a party that fails to raise an argument in its opposition papers on a motion for summary judgment has waived that argument.  *See Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 Fed. Appx. 39, 40 (2d Cir. 2014) (summary order) ("[P]laintiff never raised these arguments in its opposition to defendants' motion for summary judgment.  Accordingly, these arguments were waived."); *Aiello v. Stamford Hosp.*, 487 Fed. Appx. 677, 678 (2d Cir. 2012) (summary order) ("The premise of our adversarial system is that courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argument by the parties before them." (quoting *Coalition on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009) (quotation marks omitted)); *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) ("[The plaintiff] failed to . . . raise this argument in his opposition to summary judgment.  Thus, this argument has been waived.").  Similarly, in the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3); *see also* Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P.

56(c)."); Fed. R. Civ. P. 56(c)(1)(a) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."). Furthermore, Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002). Instead, that was Plaintiffs' task on summary judgment, especially in this context where "[t]he party invoking federal jurisdiction bears the burden" to establish standing, *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992), and where Plaintiffs' lack of standing was forecast to be a dispositive issue on summary judgment after two motion to dismiss opinions addressing the potential pitfalls in Plaintiffs' standing argument. (*See also* Summary Judgment Opinion & Order 22 ("Although "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, . . . [i]n response to a summary judgment motion . . . the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts . . . " *Lujan*, 504 U.S. at 561 (internal quotations and citations omitted).").) Tellingly, Plaintiffs' motion for reconsideration does not even attempt to identify where in their summary judgment papers the arguments they are now urging me to consider were originally presented, and my review of those papers confirms that Plaintiffs rested entirely on their interpretation of the CDO Indentures' Granting Clauses when making their standing argument. Plaintiffs' new legal theories and factual propositions are thus improper on a motion for reconsideration.

Nor do Plaintiffs' arguments demonstrate manifest injustice, as Plaintiffs provide no real justification for their failure to raise these arguments—which were no doubt available earlier—in

9

their summary judgment briefing.  Instead, Plaintiffs state only that they "did not have reason to address," (Doc. 424, at 5), these issues in light of the "thinly briefed" nature of Defendant's opening brief, (*id.* at 1).  Again, however, the history of this case together with the litigation strategy Plaintiffs elected in response undermines any notion that Plaintiffs were justified in failing to raise these arguments.

### C.  *Plaintiffs' Attempt to Demonstrate Clear Error*

Plaintiffs make various arguments in an attempt to demonstrate clear error, each of which I find meritless.  However, for the sake of further clarifying the Summary Judgment Opinion & Order, I will address two of Plaintiffs' arguments.

Plaintiffs argue that I conflated Article III standing and prudential standing, stating that

> [c]onstitutional standing is jurisdictional; it is not dependent on what type of cause of action (contract or tort) the plaintiff may (or may not) be able to state as a matter of Fed. R. Civ. P. 12(b)(6) so long as the plaintiff has some legally protectable interest that may potentially be redressed if he, she or it also meets the requirements of prudential standing.

(Doc. 424, at 11.)  However, Article III standing jurisprudence is more nuanced than Plaintiffs represent.  In fact, "[s]tanding is not dispensed in gross[;] [r]ather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and citations omitted); *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 42 (2d Cir. 2015); (*see also* Summary Judgment Opinion & Order 22).  In this case, Plaintiffs asserted breach of contract claims—the contracts being the pooling and servicing agreements ("PSAs") that governed Defendant's duties—but because Plaintiffs were not parties to the PSAs, Plaintiffs' claims were premised on their status as third party beneficiaries to the PSAs by virtue of their alleged direct ownership of the RMBS certificates.  (Third Amended Complaint, Doc. 209 ¶¶ 10–17 (Plaintiff bring these

claims "in [their] own right as [ ] CDO Issuer[s] that hold[ ] Certificates that were issued by certain of the Covered Trusts . . . .").) Because Plaintiffs asserted only breach of contract claims premised on the direct ownership of the RMBS certificates, to "have legal title to, or a proprietary interest in, the [contract] claim[s] [at issue]," *Cortlandt St. Recovery Corp.*, 790 F.3d at 420 (quoting *W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 108), Plaintiffs would indeed need to directly own the RMBS certificates; such direct ownership being the only means by which Plaintiffs could be considered third party beneficiaries to the PSAs. Because the inevitable result of the Granting Clauses in the CDO Indentures was an absence of such ownership, Plaintiffs simply had no contract rights to vindicate, and therefore lacked Article III standing to bring breach of contract claims in the absence of a valid assignment. *See Cortlandt St. Recovery Corp.*, 790 F.3d at 422 ("[A]bsent a complete assignment of the only claims on which the lawsuit was based, there was no valid lawsuit pending before the district court in which to permit an amended complaint.").[6]

> Plaintiffs seek to escape this conclusion with the following argument:
>
> The plaintiff in *Cortlandt Street Recovery* claimed that it was an assignee for collection with Article III standing pursuant to *Sprint Commc'ns Co., L.P. v. APCC Services, Inc*, 554 U.S. 269 (2008). *See Cortlandt St. Recovery*, 790 F.3d at 417-18. It did not claim "direct injury," as Plaintiffs do here. *Id*. The Second Circuit held that because of a defect in language in the assignment for collection, the plaintiff there received only a power of attorney to sue, not a chose in action in which it acquired a proprietary interest; therefore, it could not allege injury-in-fact. *Id*. at 418. Although cited numerous times in the [Summary Judgment Opinion &] Order, *Cortlandt Street Recovery* is irrelevant to the constitutional standing of the CDO Issuers.

(Doc. 424, at 11 n.6.) Not so. Plaintiffs' error in reading the Summary Judgment Opinion &

---

[6] In Part III(A)(1) and at footnote 20 of the Summary Judgment Opinion & Order, I describe in more detail why—given the fact that Plaintiffs' only claims are breach of contract claims—Second Circuit precedent has relied on both Article III standing and prudential standing doctrines in this context. Plaintiffs' argument that I conflated these principles is of no moment, however, because the Summary Judgment Opinion & Order concluded that Plaintiffs lacked both constitutional and prudential standing to bring this breach of contract action.

11

Order lies in their Sisyphean attempt to continue arguing that they directly owned the RMBS certificates despite executing the CDO Indentures, which would establish a "direct injury." But again, the lack of such ownership left Plaintiffs with no contract rights to pursue such that a valid assignment was necessary to establish Article III standing per *Cortlandt Street Recovery* and *Sprint*.

Plaintiffs' next error is their assertion that I "concluded, erroneously, that the pre-existing proprietary interest that brings a plaintiff within the exception to champerty announced in *Love Funding* is identical to the injury-in-fact that is required to establish Article III standing." (Doc. 424, at 9.) I made no such conclusion. Instead, the Summary Judgment Opinion & Order assessed Plaintiffs' only attempt to identify a pre-existing proprietary interest—their alleged continued ownership of the RMBS certificates—and concluded that because Plaintiffs' argument was invalid, Plaintiff failed to identify any pre-existing proprietary interest sufficient to uphold the assignments under *Love Funding*. (*See* Summary Judgment Opinion & Order 34–35.) Accordingly, because the assignments that gave rise to Plaintiffs' standing were void under New York champerty law the two inquiries collapsed, but only by Plaintiffs' design. In fact, it was Plaintiffs that initially intertwined the pre-existing proprietary interest exception to champerty and Article III's injury-in-fact requirement by citing only their interpretation of the CDO Indentures' Granting Clauses to satisfy both tests.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for reconsideration and to amend the judgment is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Document 423.

SO ORDERED.

Dated: August 12, 2020
       New York, New York

Vernon S. Broderick
United States District Judge