UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
PHOENIX LIGHT SF DAC, BLUE HERON         )
FUNDING VI LTD., BLUE HERON              )
FUNDING VII LTD., KLEROS                 )
PREFERRED FUNDING V PLC, SILVER          )
ELMS CDO PLC, SILVER ELMS CDO II         )
LTD., C-BASS CBO XIV LTD. and C-BASS     )
CBO XVII LTD.,                           )    Case No. 14-cv-10116 (VSB) (DCF)
                                         )
                    Plaintiffs,          )
                                         )
            -against-                    )
                                         )
U.S. BANK NATIONAL ASSOCIATION ,         )
                                         )
                    Defendant.           )
                                         )
                                         )
                                         )
------------------------------------------------------ x
```

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REVIEW OF CLERK'S DECISION ON U.S. BANK NATIONAL ASSOCIATION'S BILL OF COSTS

JONES DAY
David F. Adler
Michael T. Marcucci
100 High Street, 21st Floor
Boston, Massachusetts 02110-1781
(617) 960-3939; (617) 449-6999 (fax)
dfadler@jonesday.com
mmarcucci@jonesday.com

Louis A. Chaiten (admitted *pro hac vice*)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-3939; (216) 579-0212 (fax)
lachaiten@jonesday.com

Albert J. Rota
2727 N. Harwood Street, Suite 500
Dallas, Texas 75201-1515
(214) 220-3939; (214) 969-5100 (fax)
ajrota@jonesday.com

Samuel L. Walling (admitted *pro hac vice*)
90 South Seventh Street, Suite 4950
Minneapolis, Minnesota 55402
(612) 217-8800; (844) 345-3178 (fax)
swalling@jonesday.com

*Attorneys for Defendant U.S. Bank National Association*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| INTRODUCTION AND BACKGROUND | | 1 |
| LEGAL STANDARD | | 3 |
| ARGUMENT | | 3 |
| I. | TRANSCRIPTS FOR ALL 63 DEPOSITIONS ARE TAXABLE | 3 |
| | A. The transcripts and related exhibit fees for all 63 depositions are taxable because they were reasonably necessary at the time they were taken | 4 |
| |     1. Depositions that Plaintiffs noticed (36 of 63) | 5 |
| |     2. Depositions for witnesses Plaintiffs identified in their initial disclosures and interrogatory responses (26 of 63) | 5 |
| |     3. Depositions otherwise relevant to claims and defenses (1 of 63) | 7 |
| | B. For 38 depositions, costs are independently taxable because the transcripts were submitted to the Court on summary judgment | 8 |
| II. | VIDEO COSTS ASSOCIATED WITH THE 63 TAXABLE DEPOSITIONS ARE LIKEWISE TAXABLE | 11 |
| III. | U.S. BANK IS ENTITLED TO THE STATUTORY DOCKET FEE UNDER 28 U.S.C. § 1923 | 12 |
| CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adkins v. Gen. Motors Corp.*,
 2007 WL 9697669 (E.D.N.Y. Aug. 22, 2007), *report and recommendation
 adopted in relevant part*, 2007 WL 9697666 (E.D.N.Y. Sept. 30, 2007)...............................10

*Advanced Video Techs., LLC v. HTC Corp.*,
 2016 WL 1253899 (S.D.N.Y. Feb. 23, 2016).................................................................3

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
 490 F. Supp. 3d 593 (E.D.N.Y. 2020) ...............................................................11, 12

*Anderson v. City of New York*,
 132 F. Supp. 2d 239 (S.D.N.Y. 2001)............................................................................4

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009)..........................................................12

*E.E.O.C. v. Hibbing Taconite Co.*,
 2020 WL 4237318 (D. Minn. Oct. 21, 2010) ...............................................................7

*Endo Pharm. Inc. v. Amneal Pharm., LLC*,
 2019 WL 2417386 (S.D.N.Y. June 10, 2019) ..............................................................4

*Farberware Licensing Co. LLC v. Meyer Mktg. Co.*,
 2009 WL 5173787 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 428 F. App'x 97 (2d Cir.
 2011) ......................................................................................................................3, 4

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
 2021 WL 1172335 (S.D.N.Y. Mar. 26, 2021) ............................................................47

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
 2021 WL 1536442 (S.D.N.Y. Feb. 22, 2021).....................................................5, 6, 7

*In re Omeprazole Pat. Litig.*,
 2012 WL 5427791 (S.D.N.Y. Nov. 7, 2012).........................................................3, 11

*McCoy v. Univ. of Virginia Med. Ctr.*,
 2021 WL 3282150 (W.D. Va. July 30, 2021)...............................................................7

*Merck Eprova AG v. Gnosis S.P.A.*,
    2013 WL 364213 (S.D.N.Y. Jan. 31, 2013), *aff'd*, 760 F.3d 247 (2d Cir. 2014) .................... 11

*Moon v. Gab Kwon*,
    2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002) .......................................................... 7

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
    2017 WL 473910 (N.D.N.Y. Feb. 3, 2017) ............................................................ 12

*Ramos v. City of New York*,
    2019 WL 3254964 (S.D.N.Y. July 21, 2019) .................................................. 3, 4, 6, 10

*Rosary-Take One Prod. Co. Ltd. Pshp. v. New Line Distrib.*,
    1996 U.S. Dist. LEXIS 8690 (S.D.N.Y. June 19, 1996) ............................................. 9

*Saget v. Trump*,
    351 F. Supp. 3d 251 (E.D.N.Y. 2019) ................................................................. 12

*Sim v. New York Mailers' Union No. 6*,
    1999 WL 674447 (S.D.N.Y. Aug. 30, 1999) .......................................................... 4

*Stanley v. Cottrell, Inc.*,
    784 F.3d 454 (8th Cir. 2015) ............................................................................ 11

*Sung Choi v. City of New York*,
    2013 WL 1387021 (S.D.N.Y. Apr. 5, 2013) ............................................................ 6

*Whitfield v. Scully*,
    241 F.3d 264 (2d Cir. 2001) ..................................................................... 9, 10, 11

**STATUTES**

28 U.S.C. § 1920 ......................................................................................... 3, 4, 11

28 U.S.C. § 1923 ............................................................................................. 3, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54 ................................................................................................ 2

LR 54.1 .................................................................................................. 3, 4, 9, 10

**INTRODUCTION AND BACKGROUND**

On March 18, 2020, Defendant U.S. Bank National Association prevailed on summary judgment in a case alleging that U.S. Bank breached its contractual duties in its role as trustee for 53 residential mortgage-backed securities ("RMBS") trusts. Plaintiffs were seeking hundreds of millions of dollars in purported damages. ECF No. 390 ¶ 9. U.S. Bank is now seeking a small fraction of the costs it incurred over the course of seven years defending an action that Plaintiffs never had the right to bring.

Plaintiffs filed their first complaint on December 24, 2014, after which the parties (which then included Defendant Bank of America) thoroughly litigated the case through the close of fact discovery in 2018. Plaintiffs asserted that U.S. Bank breached its obligations as RMBS trustee by failing to enforce other deal parties' obligations to repurchase loans with representation and warranty ("R&W") breaches or with missing or defective documents in the mortgage file. Plaintiffs separately contended that, for each of the 53 trusts, a contractually defined Event of Default triggered U.S. Bank's duty to act as a prudent person, a duty that Plaintiffs asserted required U.S. Bank to investigate and then force repurchase of loans. Because Plaintiffs asserted claims as to 53 distinct RMBS trusts relating to conduct covering over a decade of trust administration, discovery in this matter was necessarily wide ranging. U.S. Bank produced 2,727,538 pages of documents and agreed to produce 28 of its witnesses for depositions at Plaintiffs' request. Walling Decl. ¶ 3. Those witnesses were selected and produced as deponents after negotiations with Plaintiffs because they had information relevant to Plaintiffs' claims and U.S. Bank's defenses. *Id.*

U.S. Bank, in turn, took extensive discovery of Plaintiffs so that it could establish key defenses, including statute of limitations, mitigation of damages, and champerty. And the discovery U.S. Bank obtained was reasonable and necessary because of how Plaintiffs are structured. Plaintiffs are special purpose entities that issued notes backed by RMBS certificates

and other securities. *See* Op. & Order, ECF No. 421 ("Order") at 2-3. All but one is a CDO that was created, structured, and marketed by a German Bank, WestLB AG. When those CDOs failed, WestLB was left was with near-worthless CDO holdings and it created the last Plaintiff, Phoenix Light, as a special purpose vehicle to move risky assets off of WestLB's books. Phoenix Light, for its part, issued notes that were transferred through WestLB to a German government entity tasked with winding down WestLB's former assets. By design, Plaintiffs are shell entities that hold no assets or legal claims, and have no employees. Their RMBS holdings and other assets were and are managed by third-party collateral managers. U.S. Bank took discovery from each layer of Plaintiffs' elaborate organizational arrangement to support various defenses. What Plaintiffs and their constellation of contractually-appointed vendors knew and when they knew it was central to U.S. Bank's defenses. U.S. Bank used its discovery and the discovery Plaintiffs took to move for summary judgment, including based on its statute of limitations and champerty defenses. *See* ECF No. 244. U.S. Bank prevailed on its champerty defense, and the Second Circuit affirmed this Court's decision granting summary judgment in U.S. Bank's favor.

  U.S. Bank then filed a Bill of Costs, seeking taxable compensation for expenses related to the 63 depositions taken by the parties over the course of lengthy fact discovery. ECF Nos. 447-448. Plaintiffs filed extensive objections to U.S. Bank's Bill of Costs. ECF Nos. 449-450. On January 11, 2022 the Clerk entered its order, taxing only $5,173.50 of the $109,125.38 costs that U.S. Bank requested. ECF No. 451. The Clerk limited its grant of costs to the depositions of three individuals whose testimony the Court cited in its summary-judgment decision.

  Pursuant to Federal Rule of Civil Procedure 54(d)(1), U.S. Bank now requests that this Court review the Clerk's taxation of costs and award U.S. Bank's Bill of Costs in full. As discussed below, the Clerk erred in two ways in denying parts of U.S. Bank's Bill of Costs.

2

First, the Clerk failed to tax costs that U.S. Bank incurred to obtain a large number of deposition transcripts that were necessarily obtained for use in the case, some of which were also submitted by the parties on summary judgment. Second, the Clerk improperly declined to tax any costs U.S. Bank incurred in obtaining videotapes of those same depositions—video recordings that were intended to be used at trial for unavailable witnesses or impeachment purposes. The Court should correct the Clerk's errors and require Plaintiffs to pay the taxable costs that U.S. Bank incurred in defending a case that Plaintiffs had no right to bring.

## LEGAL STANDARD

On review of the Clerk of Court's award of costs, the district court reviews the award de novo. *Advanced Video Techs., LLC v. HTC Corp.*, 2016 WL 1253899, at *3 (S.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1271498 (S.D.N.Y. Mar. 30, 2016).

## ARGUMENT

Under 28 U.S.C. § 1920, 28 U.S.C. § 1923, and Local Civil Rule 54.1 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York ("LR 54.1"), U.S. Bank is entitled recover each of the costs it requested.[1]

## I. TRANSCRIPTS FOR ALL 63 DEPOSITIONS ARE TAXABLE.

U.S. Bank seeks deposition transcript costs (including related exhibit fees) for 63 depositions.[2] All of these costs are taxable. First, all 63 depositions were reasonably necessary at the time they were taken. And second, for 38 of the 63 depositions, the transcripts are taxable

---

[1] Exhibit 2 to the Declaration of Samuel L. Walling submitted with U.S. Bank's motion summarizes the grounds for taxing each of the 63 depositions.

[2] U.S. Bank has already excluded from its request court reporter attendance fees, expedited transcript fees, RealTime charges, CD charges, equipment rental costs, shipping and handling fees, and transcript costs attributable to word indexes. *See Farberware Licensing Co. v. Meyer Mktg. Co.*, 2009 WL 5173787, at *6 (S.D.N.Y. Dec. 30, 2009) (listing "untaxable costs"), *aff'd*, 428 F. App'x 97 (2d Cir. 2011); *Ramos*, 2019 WL 3254964, at *4 (holding that "transcript index pages are not taxable as prevailing party costs," and subtracting from total transcript costs the number of index pages, multiplied by the "per page transcript unit cost"). *But see In re Omeprazole Pat. Litig.*, 2012 WL 5427791, at *4 (S.D.N.Y. Nov. 7, 2012) ("[E]xhibit fees are taxable costs, as exhibits are a necessary part of an original deposition transcript."). U.S. Bank included its calculations with regards to word indexes in its Bill of Costs. See ECF No. 448-5, Appendix A to the Walling Declaration In Support of U.S. Bank's Bill of Costs.

3

for the independent reason that the parties submitted those transcripts at summary judgment. Accordingly, the Clerk erred in limiting costs to depositions of witnesses that the Court cited in its summary judgment opinion.

### A. The transcripts and related exhibit fees for all 63 depositions are taxable because they were reasonably necessary at the time they were taken.

Taken together, 28 U.S.C. § 1920 and LR 54.1 permit a party to recover the costs of deposition transcripts, plus exhibit costs, if the deposition appeared reasonably necessary at the time it was taken, regardless of whether the transcript was actually cited in the Court's opinion—and "[n]otwithstanding … the text of Local Rule 54.1." *Ramos v. City of New York*, 2019 WL 3254964, at *2 (S.D.N.Y. July 21, 2019). Thus, although "Local Rule 54.1 refers only to the recovery of costs related to deposition transcripts actually used during dispositive motion practice or trial, 'courts in this District have repeatedly construed the local rules as authorizing a court to tax the costs of a deposition transcript if, at the time the deposition was taken, the deponent's testimony appeared to be reasonably necessary to the litigation.'" *Id.* (quoting *Endo Pharms. Inc. v. Amneal Pharms., LLC*, 331 F.R.D. 575, 582 (S.D.N.Y. 2019); *see also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.,* No. 15-CV-4244, 2021 WL 1172335, at *6 (S.D.N.Y. Mar. 26, 2021) (taxing costs for depositions which were "necessary" at the time they were taken); *Farberware Licensing Co.*, 2009 WL 5173787, at *5 (same); *Anderson v. City of New York*, 132 F. Supp. 2d 239, 246 (S.D.N.Y. 2001) (same); *Sim v. N.Y. Mailers' Union No. 6*, No. 97 CIV. 2929, 1999 WL 674447, at *1 (S.D.N.Y. Aug. 30, 1999) (same).

Each of the 63 depositions for which U.S. Bank seeks transcript costs were reasonably necessary to the litigation at the time they were taken—Plaintiffs noticed 36 of these depositions; for 26 depositions, Plaintiffs identified the witness in initial disclosures or interrogatory responses; and the remaining deposition was relevant to Plaintiffs' claims and U.S. Bank's defenses. Thus, costs related to those depositions should be taxed.

4

### 1. Depositions that Plaintiffs noticed (36 of 63).

A deposition was reasonably necessary when taken—and thus the associated transcript costs are taxable—if the deposition was noticed by the opposing party. *Gym Door Repairs, Inc. v. Total Gym Repairs*, No. 15-CV-4244, 2021 WL 1536442, at *12-13 (S.D.N.Y. Feb. 22, 2021) (taxing "copies of those transcripts of plaintiff-noticed depositions" because they "are reasonably necessary for Defendants' defense."), *report and recommendation adopted as modified*, 2021 WL 1172335 (S.D.N.Y. Mar. 26, 2021).

Over the course of discovery, Plaintiffs noticed 28 depositions of U.S. Bank witnesses. Walling Decl. Ex. 3; Walling Decl. ¶ 10. Given the hundreds of millions of dollars in asserted damages, the dozens of trusts at issue, and the fact that each noticed U.S. Bank witness was deposed because of his or her role in administering the trusts and their activities, *see* Walling Decl. Ex. 4 ("U.S. Bank Employee Roles"), those depositions were "reasonably necessary to the litigation" at the time each was taken. U.S. Bank therefore is entitled to the transcript costs it incurred for those 28 depositions.

Plaintiffs also noticed eight depositions of Bank of America witnesses. Walling Decl. Ex. 3; Walling Decl. ¶ 10; *see also* Walling Decl. Ex. 4. Bank of America was U.S. Bank's co-defendant in this action, and U.S. Bank succeeded Bank of America as trustee for 22 trusts here. Walling Decl. ¶ 2. Because Plaintiffs sought to hold U.S. Bank liable for events that occurred while Bank of America was trustee for those trusts, *see* ECF No. 310 at 8-9, U.S. Bank's counsel needed to attend the depositions of Bank of America witnesses and ordered the transcripts of those depositions to prepare U.S. Bank's defenses.

### 2. Depositions for witnesses Plaintiffs identified in their initial disclosures and interrogatory responses (26 of 63).

Depositions are also "necessary to the litigation" if the plaintiff identified the witness in its initial disclosures or interrogatory responses. *Gym Door Repairs*, 2021 WL 1536442, at *12;

*see also Ramos*, 2019 WL 3254964, at *2 (deposition was necessary for an individual identified in plaintiff's interrogatory responses as a person who "witnessed, was present at, or had knowledge of the incidents at issue in this action."); *Sung Choi v. City of New York*, 2013 WL 1387021, at *3 (S.D.N.Y. Apr. 5, 2013). Here, in response to interrogatories seeking the identity of individuals "who first became aware of each specific Event of Default" and who "acted as advisors and/or otherwise made investment decisions" for Plaintiffs, Plaintiffs identified by name 14 individuals whom Defendants later deposed. *See* Walling Decl. Ex. 6, at 2-3, Exhibit C; Walling Decl. Ex. 2 Plaintiffs also named the organizations that acted as their collateral managers: WestLB/Brightwater Capital Management, Strategos Capital Management, NIC Capital Management, Princeton Advisory, Portigon AG, and C-BASS Investment Management. Walling Decl. Ex. 6, at 13. With that information, Defendants deposed eight additional witnesses from WestLB and C-BASS related to their roles as collateral managers.

Plaintiffs' Initial Disclosures identified one more witness who Defendants deposed—Alan Geraghty.[3] The disclosure stated that Mr. Geraghty was "likely to have discoverable information relating to the action that Plaintiffs may use to support their claims." *See* Walling Decl. Ex. 7 (Plaintiff's Initial Disclosures); *see also* Walling Decl. Ex. 2. In their Initial Disclosures, Plaintiffs also stated that representatives of various entities were "likely to have discoverable information relating to the action that Plaintiffs may use to support their claims." Walling Decl. Ex. 7. These entities were involved in, among other things, acquiring the at-issue certificates, transferring away ownership of the at-issue certificates, attempting to re-acquire legal claims, and administering collateral underlying the CDOs. *See id*. For example, Plaintiffs identified "a representative of Portigon AG." U.S. Bank later deposed seven witnesses from WestLB/Portigon. Each of the witnesses identified in the Initial Disclosures, other than Alan

---

[3] The Clerk properly taxed the transcript costs for the Geraghty deposition. ECF No. 451.

6

Geraghty, were also disclosed in Plaintiffs' Supplemental Interrogatory Responses. *See* Walling Decl. Ex. 2.

In sum, Plaintiffs identified in their initial disclosures and interrogatory responses—either by name or by employer—22 individuals with knowledge or information related to Plaintiffs' claims, leading Defendants to notice 25 depositions. *See id*. Because Plaintiffs could have used these witnesses to support their claims, U.S. Bank reasonably believed it was necessary to secure their deposition testimony and obtain transcripts as part of its preparation for trial. If Plaintiffs had called the witnesses to testify to support their claims, U.S. Bank would have needed the transcripts for cross-examination and impeachment purposes.

### 3. Depositions otherwise relevant to claims and defenses (1 of 63).

Depositions are reasonably necessary when used to determine facts pivotal to the claims or defenses at issue. *See Moon v. Gab Kwon*, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (depositions are necessary when used to determine factual positions "pivotal to [the plaintiff's] claim"); *Gym Door Repairs*, 2021 WL 1536442, at *13 (depositions are necessary where relevant to the plaintiff's claimed damages or "for Defendants' defense"); *see also McCoy v. Univ. of Va. Med. Ctr.*, 2021 WL 3282150, at *4 (W.D. Va. July 30, 2021) (finding a deposition necessary at the time it was taken where the testimony "was relevant to at least one of Plaintiff's claims"); *EEOC v. Hibbing Taconite Co.*, 2010 WL 4237318, at *2 (D. Minn. Oct. 21, 2010) (depositions are necessary where "relevant to the claims or defenses in th[e] case."). In his deposition, Karim Berichi testified regarding his work at Blackrock, where he performed a "Deep Dive" analysis of EAA's RMBS portfolio in order to assist EAA with potential litigation. Walling Decl. Ex. 8, at 188:5-190:10. EAA was Phoenix Light's controlling party, so the testimony shows that Plaintiffs were aware of potential R&W breaches, and did nothing to direct U.S. Bank as trustee to take any action. U.S. Bank noticed the Berichi deposition to determine key factual positions and to support its affirmative defense of Plaintiff's failure to mitigate

7

damages and comparative fault, and the associated costs are therefore taxable.[4]  *See* ECF No. 213 at 44.

In sum, transcript costs are taxable for each of the 63 depositions included in U.S. Bank's Bill of Costs because each deposition was "reasonably necessary to the litigation" at the time it was taken.  A majority of these depositions were noticed by Plaintiffs.  A large portion more were necessary because Plaintiffs identified the deponents as individuals "likely to have discoverable information relating to the action that Plaintiffs may use to support their claims."  *See* Walling Decl. Ex. 7 at 3.  U.S. Bank and Bank of America noticed the rest to get important information bearing directly on Plaintiffs' claims and Defendants' defenses.  For these reasons, U.S. Bank is entitled to the costs it has requested.

**B.      For 38 depositions, costs are independently taxable because the transcripts were submitted to the Court on summary judgment.**

If the Court taxes transcript costs for all 63 depositions on the grounds that they were reasonably necessary at the time they were taken, the Court can stop there.  But in the event that the Court disagrees that some or all of the depositions were reasonably necessary, transcript costs for 38 depositions are separately taxable because the parties submitted these transcripts at summary judgment.

A deposition transcript is taxable if it was submitted by the parties in connection with summary judgment, even if the Court does not cite it in a summary judgment decision.  Under Local Rule 54.1, costs for depositions are taxable "if they were *used* by the court in ruling on a motion for summary judgment."  LR 54.1(c)(2) (emphasis added).  And a "district court that rules on a motion for summary judgment must 'use' a filed deposition transcript to determine

---

[4] Mr. Berichi's deposition is the only one for which U.S. Bank seeks taxation of costs that was not otherwise reasonably necessary either because Plaintiffs noticed it or because Plaintiffs disclosed the witness in their initial disclosures or interrogatory responses. Each of the 63 depositions were relevant to Plaintiffs' claims and U.S. Bank's defenses, but in the interest of brevity the other 62 are not detailed here.

8

whether there is any genuine issue as to any material fact." *Whitfield v. Scully*, 241 F.3d 264, 272 (2d Cir. 2001). After the conclusion of fact discovery, U.S. Bank and Bank of America moved for summary judgment, submitting thorough briefing on numerous issues, including the champerty argument on which U.S. Bank eventually prevailed. ECF Nos. 241-246, 249, 250, 267, 337-340, 343-345. Plaintiffs responded with their own extensive materials in opposition. ECF Nos. 301-305, 310-311, 320-324. All told, the parties entered 38 depositions into the summary judgment record. *See* Walling Decl. Ex. 9. Under *Whitfield*, the Court necessarily "used" each of these 38 depositions. Accordingly, the transcript costs for these depositions are taxable.

Plaintiffs' contrary arguments are meritless. Plaintiffs argued in their objections to U.S. Bank's Bill of Costs that depositions not bearing on the dispositive issues actually decided by the Court on summary judgment should not be taxable. ECF No. 449 at 2. According to Plaintiffs, because the Court granted summary judgment for U.S. Bank on the grounds that the assignments of claims to Plaintiffs were champertous, U.S. Bank can recover only on those transcripts cited by the Court in its decision.[5] *See* Order at 27-29, 35. But nothing in *Whitfield* suggests costs are limited to depositions bearing on the ultimately dispositive issue. The Second Circuit, interpreting Local Rule 54.1, drew a clear divide between, on the one hand, taxable depositions submitted on summary judgment and therefore "used" by the court, and those "purely investigative depositions never actually submitted to the court for its use, on the other." *Whitfield*, 241 F.3d at 271. Each of the 38 depositions the parties submitted to the Court on summary judgment plainly falls on the taxable side of that divide.

---

[5] Plaintiffs' case, *Rosary-Take One Production Co. v. New Line Distribution,* is no longer good authority. The court there examined the summary judgment opinion to determine whether the prior judge "used" a deposition at issue for purposes of taxing deposition costs. *Rosary-Take One Prod. Co. v. New Line Distrib.*, 1996 U.S. Dist. LEXIS 8690, at *4 (S.D.N.Y. June 19, 1996). Fifteen years later *Whitfield* rejected that approach, abrogating Plaintiffs' authority.

Not satisfied with asserting an obsolete understanding of "use," Plaintiffs also argued that a party can tax only those transcript costs that *that party* submitted as part of the summary judgment record. ECF No. 449 at 3. But no court interpreting *Whitfield* has held as much. In fact, the opposite is true—it doesn't matter which party designated a transcript as a summary judgment exhibit so long as it was part of the summary judgment record. *See Adkins v. Gen. Motors Corp.,* 2007 WL 9697669, at *8 (E.D.N.Y. Aug. 22, 2007) (granting fees to the defendant for transcripts entered into the record by the plaintiff), *report and recommendation adopted in relevant part*, 2007 WL 9697666 (E.D.N.Y. Sept. 30, 2007). This follows both logically from *Whitfield* and textually from LR 54.1. A court must review all of the evidence before it on summary judgment, regardless of which party submitted it; and nothing in LR 54.1 even gestures towards the submitting party being a relevant consideration. U.S. Bank ordered the transcripts in question, and the transcripts were entered into the record. Therefore, U.S. Bank is entitled to recover the transcript costs associated with these 38 depositions.

As a final note, to be taxable, even depositions entered into the record on summary judgment cannot have been "taken solely for discovery." LR 54.1(c)(2). As discussed above, a deposition was not "taken for solely for discovery" if it "appeared reasonably necessary at the time [it] was taken." *Ramos*, 2019 WL 3254964, at *2. *Whitfield* characterizes the requirement more narrowly: a deposition is "taken solely for discovery" if it was a "purely investigative deposition[]." 241 F.3d at 271 (quoting LR 54.1). For the reasons discussed in Section I, each of the depositions for which U.S. Bank requests taxation of costs were necessary at the time they were taken, and none of the depositions Defendants noticed were "purely investigative."

*   *   *

In short, U.S. Bank is entitled to costs related to the 63 depositions for which it has requested taxation. Each of the depositions was reasonably necessary at the time it was taken—

because Plaintiffs noticed the depositions, because they disclosed that the deponent had relevant testimony, or because the deponent's testimony did in fact bear on Plaintiffs' claims and U.S. Bank's defenses. But even if the Court finds that certain depositions were not reasonably necessary, 38 depositions are independently taxable under *Whitfield* because they were submitted by the parties on summary judgment.

## II. VIDEO COSTS ASSOCIATED WITH THE 63 TAXABLE DEPOSITIONS ARE LIKEWISE TAXABLE.

The Clerk also erred by categorically disallowing taxation of costs related to the videotaping of depositions. Video fees are taxable "where there was an expectation among the parties that the video of the testimony might be presented at trial." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 639 (E.D.N.Y. 2020) (quoting *In re Omeprazole Pat. Litig.*, 2012 WL 5427791, at *4); *see also Stanley v. Cottrell, Inc.*, 784 F.3d 454, 467 (8th Cir. 2015) ("§ 1920(2) permits taxation of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript is necessarily obtained for use in a case.") (collecting cases from other circuits); *Merck Eprova AG v. Gnosis S.P.A.*, 2013 WL 364213, at *6 (S.D.N.Y. Jan. 31, 2013) (granting costs for deposition videos), *aff'd*, 760 F.3d 247 (2d Cir. 2014).

At the time each deposition was taken, it was impossible to know whether a witness would testify at trial, so U.S. Bank ordered videos to preserve the deponent's testimony. Walling Decl. ¶ 8. The purpose behind preserving the testimony depended on whether Defendants noticed the deposition or Plaintiffs did. For each of the depositions that U.S. Bank and Bank of America jointly noticed, they did so because the witness's testimony was highly relevant to their defenses, *see* Section I, *supra*, and U.S. Bank ordered deposition videos to preserve its ability to impeach the deponent at trial. *See Am. Tech. Ceramics Corp.*, 490 F. Supp. 3d at 639 (taxing costs for deposition videos "expected to be used at trial for impeachment purposes."). For the

11

depositions noticed by Plaintiffs, U.S. Bank ordered videos with the expectation that they might be necessary if witnesses became unavailable for trial. *See PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 2017 WL 473910, at *2 (N.D.N.Y. Feb. 3, 2017) (granting fees to plaintiff for video of the depositions of plaintiff's own witnesses because "a party to a civil case cannot necessarily anticipate a deponent's availability for trial, which may be beyond the court's subpoena power, and the party should be able to preserve their witness's testimony through video for trial."); *see also Saget v. Trump*, 351 F. Supp. 3d 251, 256 (E.D.N.Y. 2019) (a defendant need not attempt "to procure witnesses who reside outside of the Court's subpoena power before introducing their deposition testimony at trial" as an unavailable witness) (citing *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 2009 WL 3111766, at *20 (S.D.N.Y. Sept. 28, 2009)). When the parties took their depositions in 2017 and 2018, trial was potentially many months—even years—down the road. U.S. Bank sensibly preserved the testimony on videos. Accordingly, the video costs associated with the 63 depositions are taxable.

### III. U.S. BANK IS ENTITLED TO THE STATUTORY DOCKET FEE UNDER 28 U.S.C. § 1923.

The Clerk properly awarded U.S. Bank's request to tax the $20 statutory docket fee. Under 28 U.S.C. § 1923, a prevailing party is entitled to "$20 on trial or final hearing … in civil, criminal, or admiralty cases." U.S. Bank prevailed on summary judgment, and is therefore entitled to the $20 statutory fee.

### CONCLUSION

The Court should award the full amount U.S. Bank seeks in its Bill of Costs.

Dated: February 2, 2022					Respectfully Submitted,

					*/s/   Samuel L. Walling*
					JONES DAY
					David F. Adler
					Michael T. Marcucci
					100 High Street, 21st Floor
					Boston, Massachusetts 02110-1781
					(617) 960-3939; (617) 449-6999 (fax)
					dfadler@jonesday.com
					mmarcucci@jonesday.com

					Louis A. Chaiten (admitted *pro hac vice*)
					North Point
					901 Lakeside Avenue
					Cleveland, Ohio 44114-1190
					(216) 586-3939; (216) 579-0212 (fax)
					lachaiten@jonesday.com

					Albert J. Rota
					2727 N. Harwood Street, Suite 500
					Dallas, Texas 75201-1515
					(214) 220-3939; (214) 969-5100 (fax)
					ajrota@jonesday.com

					Samuel L. Walling (admitted *pro hac vice*)
					90 South Seventh Street, Suite 4950
					Minneapolis, Minnesota 55402
					(612) 217-8800; (844) 345-3178 (fax)
					swalling@jonesday.com

					*Attorneys for Defendant U.S. Bank*
					*National Association*